<u>**EXHIBITS**</u>

A -     Plaintiff's OCRC Charge and Amendments with Exhibits

B -     First Data's OCRC Position Statement

C -     Plaintiff's OCRC Rebuttal

D -     Right to Sue Letter

E -     Plaintiff's Resignation E-mail to Barger

F -     Plaintiff's Resignation E-mail to Ording

# EXHIBIT A

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>___ EEOC | |

| Ohio Civil Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr. Ms. Mrs.)<br>**Mrs. Julie Kelly** | Home Phone (Incl. Area Code)<br>**(513) 806-4893** | Date of Birth<br>**11/07/1977** |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| **823 Dorgene Lane, Cincinnati, OH 45244** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**First Data Corporation** | No. Employees, Members<br>**20,000 +** | Phone No. (Include Area Code)<br>**(866) 382-8643** |
|---|---|---|
| Street Address | City, State and ZIP Code | |
| **5565 Glenridge Connector #2000, Atlanta, GA 30342** | | |

| Name<br>**First Data Corporation** | No. Employees, Members<br>**20,000+** | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |
| **11311 Cornell Park Drive, Cincinnati, OH 45242** | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE __ COLOR _X_ SEX __ RELIGION __ NATIONAL ORIGIN<br><br>_X_ RETALIATION __ AGE _X_ DISABILITY __ OTHER (Specify below.) | Earliest          Latest<br>                    **11/302017**<br><br>__ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

**See accompanying letter from The Law Office of Shawn Shearer, P.C., counsel for the complainant, and the attached supporting affidavit of Julie Kelly.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br><br>MICHAEL REITENBACH<br>Notary Public, State of Ohio<br>My Commission Expires September 23, 2018 |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br><br>5/16/18<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)          05 - 16 - 18 |

## COMPLAINANT AFFIDAVIT

Date: May 16, 2018

Re: Julie Kelly ADA Charge v. First Data Corporation

1. My name is Julie Kelly.

2. My address is: 823 Dorgene Lane Cincinnati OH, 45244.

3. My phone numbers is 513-806-4893.

4. My birthdate is 11/07/1977 and I am 40 years old.

5. My charges of discrimination under, and violations of, the American's with Disabilities Act (42 U.S.C. §12101 et seq.), sex discrimination under Title VII (42 USC §2000e et seq.), and the corresponding charges under, and violations of, the Ohio Fair Employment Law (OH Rev. Code §4112.01 et seq.), including retaliation and harassment, are based upon the following facts.

6. I started my employment with First Data Corporation ("First Data") in 1998. My employment with First Data terminated on November 30, 2017. Over nearly 20 years with First Data, I held several positions, primarily in the fields of training and development of First Data's employees. The last four positions I held were the following:

   | | |
   |---|---|
   | 2005-2011 | Instructional Design & Development Manager – Sales Training |
   | 2011-2013 | Learning Solutions Manager – Global Talent Management |
   | 2013-2017 | Instructional Design & Development Leader – Sales Transformation |
   | Feb. 2017 | Director, Organizational Development – Talent Management |

7. During the times relevant to this EEOC Charge, my direct supervisors were Bryan Fricke VP Sales Training/Transformation (Sept 2013 to April 2014), Steven Barger SVP Sales Transformation (April 2014 to November 2016), and Robin Ording VP Human Resources and Training (November 2016 to November 2017).

8. In April of 2005, I was promoted into the position of Instructional Design & Development Manager and began worked remotely and exclusively from my home office. I managed a team of 10 Instructional Developers, web and video producers who created learning program and materials for 2,000 internal employees and 5,000 external sales representatives.

9. On December 12th, 2012 I gave birth to twins and returned to work after FMLA leave in March of 2013. In March of 2013 I returned from FMLA leave with no changes to my position. I continued to work remotely.

10. On April 29th, 2013, First Data brought onboard a new Chief Executive Officer that unsettled the Global Talent Management team. Immediately following, high-ranking leaders (Peter Boucher, SVP Human Resources, David Kuhl, SVP Global Talent Management) were terminated. While the team was in split in and in 'limbo', trying to find a place in the organization, I reported directly to Karen Whalen, SVP Human Resources.

11. In late 2013 Bryan Fricke VP Sales Training, was assigned to lead the Sales Training / Sales Transformation Team, reporting to Joe Plumeri, Co-Chairman of First Data. First Data conducts their payroll through various company codes. This meant that because of all the reporting changes in 2013, employees in my group would have numerous W2s to report earnings for 2013. My group's positions continued as work from home employees. Travel was required due to my leadership position and I made accommodations to travel with my twins and their nanny. My job responsibilities remained the same respected reporting to senior leadership.

12. In mid 2014, Bryan Fricke suddenly resigned from the company with no notice. Steve Barger, who we were then working with as a consultant, was brought on as an employee and become the SVP of Sales Transformation.

13. My twins were born in December 2012. In October of 2014 I was pregnant and my OBGYN ordered no travel or I would be subjected to full bedrest due to my high-risk pregnancy and preexisting conditions from a twin pregnancy, prior c-section, myomectomy and age. I completed and submitted Workplace Accommodation Request, with the guidance of my then manager Mr. Barger and HR Manager, James Britt. This request for accommodation was approved, and I was able to work up until my scheduled c-section date with no loss to productivity.

14. In January 2015 (approx.), First Data's Chief Executive Officer changed First Data's work from home policy. This policy change required all employees to work in an office. This was not a popular decision with employees and during every town hall meeting held by the new CEO, this topic would come up and he would always state that because he could not work productively from home, he felt no one else could (these meetings are recorded)

15. On February 20, 2015 I gave birth to my son. The pregnancy was quite difficult, as I was high risk due to preexisting conditions and age. My son was born through a scheduled c-section at approximately 38 weeks of gestation.

16. The delivery was complicated, and my son was held in the Neonatal Intensive Care Unit for 3 days due to breathing issues with underdeveloped lungs. My son was also born with a Vascular Malformation, which required immediate attention and

numerous appointments over the next year to the Cincinnati Children's Hospital Hemangioma and Vascular Malformation Center in downtown Cincinnati, Ohio

17. Following the birth of my son, I was also brought back into the hospital for a c-section infection that nearly killed me. I suffered severe post-partum depression. This depression caused me to not be able to breast feed my son after only 4 weeks. My medical conditions included blood infection, post-partum depression, severe recti diastasis, and umbilical hernia.

18. On April 23, 2015, I returned to work 8 weeks after the birth of my son under the standard 8 weeks for a c-section. Upon return from that leave, my job remained essentially the same; however, I was now impacted with the new policy prohibiting work from home.

19. Between March 2015 – August 2015, the new work from home policy was enforced on the employees in the Sales Transformation team. The policy was targeted to work from home employees (from First Data's PeopleSoft data) other than direct sales employees. Working with James Britt, Human Resources Manager, employees were contacted and provided with distinct options such as relocation to Atlanta, GA or accept a severance package once an end date was decided upon. All vacated positions had to be rehired in Atlanta, GA.

20. The change in the work from home policy would require me to go to the Cincinnati First Data office daily, an 1 – 1.5 hour commute each way. This office had approximately 35 people assigned to it, all unrelated to my position and team.

21. In April of 2015, I officially wrote a forced resignation letter to Mr. Barger, which was standard operating procedure, advised by James Britt, Manager HR, that I would not be able to make the commute due to health and family and would accept severance. Mr. Barger and I discussed my specific situation, which included my need for an accommodation for my post-partum depression and medical conditions following the birth of my twins in December 2012 and most recently my son in February 2015. Mr. Barger approved my request to continue working from home as my role did not have any connection whatsoever to the Cincinnati office.

22. I continued to work from home, with absolutely no negative impact to my performance.

23. Between April of 2016 and July of 2016, I was hospitalized for health issues. This lead to numerous tests and biopsies to diagnose Non-Alcoholic Fatty Liver Disease (NAFLD), high blood pressure and stress disorder.

24. In September of 2016, I had my first interaction with Ms. Robin Ording. I was assigned to a project by Mr. Barger to attend a face-to-face conference to provide a proposal on how to translate the learning programs into virtual course(s) to eliminate the extravagant costs the program of in-person learning was incurring. While Ms.

3

Ording was aware of why I was attending the program, she made no acknowledgement of me or my tasks and proceeded to conduct herself in a nonprofessional way during the program, showing coworkers photos on her phone and speaking in a crude manner. Our proposal was submitted, with ways to fully measure the effectiveness and retention of the content, to Ms. Ording and her direct report Christopher Calta (Director of Training). This proposal only received a brief response that they liked the format. Ms. Ording continued the extreme program, with no measurement, accountability or ROI.

25. In November 2016, Mr. Barger took FMLA leave while he recovered from cancer surgery. Ms. Ording became interim leader of the Training Group and became my direct supervisor. Mr. Barger's employment was terminated in February 2017 before he could return from leave and Ms. Ording became my permanent and last direct supervisor.

26. My experience and the reputation of Ms. Ording's at First Data was one of having extremely high attrition with her direct reports, creating an uncooperative, hostile work environment and being ignorant of sales and adult learning & development methodology. I knew right away she looked down on me and most of her subordinates. She was condescending to me, rude, unprofessional and often extremely disrespectful and down right mean to me.

27. Ms. Ording began taking over for Mr. Barger by enforcing the prohibition on working from home. She monitored my attendance by "swipe-ins" (monitoring use of my security badge to enter First Data's offices). This swipe-in information was reported out by Karen Beck, SVP Human Resources, for Tony Marino's (Executive Vice President of Human Resources) organization monthly. If an employee's percentage of swipe-ins over the month was below a threshold, disciplinary action would take place.

28. During January 2017, I rearranged my entire life to accommodate the new policy. This included hiring extra day care for my three children under the age of 4. Transportation for my 17-year-old daughter (who needed to driven to/from school 30 min away), care providers for my live in mother-in-law (85) and assistance for my brother (36) with learning disabilities. Due to my husband's career, he was unable to assist as he travels extensively throughout the work week. Note that while I worked from home, I had these items taken care of, but being out of the home required more strategic thinking, much more money due to the extensive unproductive time sitting in traffic and commuting to / from an office space.

29. In January 2017, Ms. Ording made me write my own job description. This turned into her stating that I would probably need to relocate to Atlanta or another major office should I continue with the company. I felt threatened and intimidated that she had this type of control over me.

30. In January of 2017 our team went through a massive reorganization that included the termination of 30% of the team which was alleged to create a cost savings of $3.3

million. Ms. Ording continuously bragged about this number and made offensive slurs about past leadership and workers. At the time, I was assigned to be the interim manager over a group in Hagerstown, MD. The employees that were on this team communicated to me that I was the first person who gave them any attention since Mr. Barger.

31. On January 24, 2017, Mr. Tony Marino granted me 962 shares of restricted stock my leadership and execution during the massive team reduction. The restriction on these shares were lifted in three tranches, with the first vesting to occur on January 24th, 2018.

32. At times, the drive to and from the office would take 1.5 - 2 hours each way. My team was aware of the strain this was putting on me and my family and often asked how I was able to remain at such a high level of productivity.

33. I advised Ms. Ording of the difficulty the situation was causing. I felt she was doing this to drive me out of the company. She refused to allow me to work from home or even to allow some days at home and some days in the office. The requirements of my position could easily be satisfied working from home. Ms. Ording's management style was quite harsh, threatening and intimidating. I felt that to keep my job, I needed to comply despite the impacts on my health and well-being. With her being at such a high level within HR, I felt there was no one else I could speak to.

34. In my position, I managed a staff of Instructional Development Manager, Instructional Developers, Project Manager and Training Coordinator. I also developed training programs, curriculum, and training materials. Ms. Ording began assigning more and more projects to me outside of my job responsibilities, including performing her responsibilities as the new leader of the Training Group. For example, I would put together data, analysis, templates and communications for the entire team, that she would then take and present to senior leadership as her own. She would often ask me to do last minute tasks, after hours, because a Management Committee member needed something done. She knew my family situation and continued to press these tasks on me numerous times.

35. In February 2017 I was promoted from Manager to Director and received a raise of $8,000 per year. My final annual salary at First Data was $107,500.

36. My new position included all my responsibilities of my Manager position with the addition of duties normally assigned by First Data to Vice Presidents, and areas outside of my training and education responsibilities, including the following:

   a. VP & SVP Promotion Process
   b. Company Wide Performance Evaluation Process
   c. Executive Succession Planning
   d. Audits of Performance Management data for companies such as Ernst & Young and PWC

    e.  360 Assessment Tool Process with external vendors.

37. On July 27, 2017, I was directed by Tony Mario (EVP of HR) and Ms. Ording (VP of HR) to use material from other companies (Citi Bank and Chase Paymentech) for our internal process. I felt this was a breach of ethics but was ordered to do it anyway. I clearly came to the realization that the First Data promotion process and criteria were plagiarized from those establishments. I was not in a position to object for fear of retaliation from Ms.Ording.

38. On July 28, 2017, I was directed by Ms.Ording to hide certain files so that the internal audit team did not see them and want to review them. I was then told to move the files back after the audit took place. I was not in a position to object for fear of my job.

39. On October 5, 2017, I needed to leave the office and go to the emergency room for chest pains arising out of my medical conditions that continued from the stress of the continuing medical condition exacerbated by the commute and newly assigned duties in addition to my former training and education duties.

40. I was under the care of medical doctors and psychiatrists the entire time from the birth of my twins to the end of my employment at First Data (2012 through November 2017). I was prescribed numerous pharmaceuticals to address my medical condition for anxiety, focus and stress.

41. The situation at First Data with daily commutes, combined with the additional duties Ms. Ording imposed on me, her hostile work ethic, intimidation and abusive behavior toward me and my medical conditions, continuation of my employment at First Data became too burdensome and I had no choice but to resign. Ms. Ording would not accommodate my medical conditions. I was constructively discharged.

42. I requested severance similar to the packages First Data had been providing to employees terminated earlier in the year. Ms. Ording laughed in my face and stated 'you quit, you get nothing', using her position to ridicule and intimidate me.

43. My last day of employment with First Data was November 30, 2017. All of my equity awards were forfeited. I did not receive an exit interview, I did not sign any papers upon my departure, I ordered my own box to return the laptop and other devises I used that were issued by First Data.

44. On December 5, 2017, I received a threat letter from Lori Graesser, in-house counsel for First Data in its Omaha office, stating that I had post-employment obligations, including an alleged 24 month non-compete, non-solicit, and other restrictions. I responded asking for a copy of what I signed containing these restrictions, because I did not sign anything. I never received a response.

45. In August 2017, Mr. Barger filed suit against First Data alleging that First Data violated the FMLA, and subsequently he added a claim for violations of the ADA.

46. In April and May 2018, my counsel wrote to the in-house legal department asserting that First Data had violated Title VII and the ADA by terminating my employment and by failing to continue the work-from-home accommodation that had been granted by Mr. Fricke and Mr. Barger while they were my supervisors.

47. Just days after my ADA issues were brought to the attention of First Data's legal counsel, my counsel received notice that First Data would be taking my deposition in the Barger v. First Data case.

48. I was advised by Mr. Barger's counsel that no other depositions in the Barger v. First Data case had been scheduled and that I would be the first witness deposed by First Data in that case.

49. I believe that the notice of my deposition was designed to harass me for raising my ADA claims and in direct retaliation for my counsel's indication to First Data that I would be submitting this Charge with the EEOC. In direct response to this notice of deposition in a case in which I am not a party, I have been forced to seek legal counsel.

## DECLARATION

I, the undersigned, declare under penalty of perjury that the statements made in the above affidavit (including the attachments herewith, if any) are true and correct to the best of my knowledge, information, and belief.

DATED: May _16_, 2018

Julie K. Kelly

7

# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
SHAWN@SHEARERLAW.PRO

May 16, 2018

**VIA USPS RETURN RECEIPT REQUESTED**

Equal Employment Opportunity Commission
Director
Cincinnati District Office
John W. Peck Federal Office Building
550 Main Street, 10th Floor
Cincinnati, OH 45202

> RE: Title VII, ADA and Ohio Fair Employment Charges by Julie Kelly against First
> Data Corporation
> NEW CHARGE FILING

Dear Sir or Madam:

I represent Julie Kelly ("Ms. Kelly") in connection with the termination of her employment with
First Data Corporation and its subsidiaries and affiliates ("First Data"), and in the filing and
prosecution of charges by Ms. Kelly under the American's with Disabilities Act (42 U.S.C.
§12101 et seq.) ("ADA"), sex discrimination under Title VIMs. Kelly's (42 USC §2000e et
seq.), and the corresponding charges under and violations of, the Ohio Fair Employment
Practices Act (OH Rev. Code §4112.01 et seq.), including retaliation and harassment/hostile
environment.

Please accept this letter, the attached Charge Forms, and Ms. Kelly's attached supporting
affidavit (with exhibits), together, as an official charge of discrimination against First Data under
the ADA, Title VII, and Ohio's Fair Employment laws in connection with its adverse
employment action taken against Ms. Kelly.

Also, please accept this letter as an appearance by Shawn Shearer of The Law Office of Shawn
Shearer, P.C. on behalf of Ms. Kelly. Ms. Kelly's contact information is included both on the
Charge Form and Ms. Kelly's supporting affidavit attached to this letter. Ms. Kelly's would ask,
however, that all correspondence be directed to Shawn Shearer as Ms. Kelly's counsel, using the
contact information above.

Set forth below are the general facts surrounding Ms. Kelly's employment with First Data and
her constructive termination by First Data. Following the factual description is the legal analysis

EEOC – Cincinnati Division
May 16, 2018                                                                                                    Page 2

justifying a finding that First Data violated Title VII, the ADA, and the corresponding laws of
the State of Ohio in its treatment and termination of Ms. Kelly.

## FACTUAL BACKGROUND – KELLY/FIRST DATA

Ms. Kelly started her employment with First Data Corporation in 1998. From 1998 through
November 2017, Ms. Kelly was employed by First Data, and various of its subsidiaries and
affiliates (together "First Data"). Ms. Kelly's employment with First Data terminated on
November 30, 2017. Over nearly 20 years with First Data, Ms. Kelly held several positions,
primarily in the fields of training and development of First Data's employees. The last four
positions Ms. Kelly held were the following:

| | | |
|---|---|---|
| 2005-2011 | Instructional Design & Development Manager – Sales Training | |
| 2011-2013 | Learning Solutions Manager – Global Talent Management | |
| 2013-2017 | Instructional Design & Development Leader – Sales Transformation | |
| Feb. 2017 | Director, Organizational Development – Talent Management | |

During the times relevant to this EEOC Charge, Ms. Kelly's direct supervisors were Bryan
Fricke VP Sales Training/Transformation (Sept 2013 to April 2014), Steven Barger SVP Sales
Transformation (April 2014 to November 2016), and Robin Ording VP Human Resources and
Training (November 2016 to November 2017).

In April of 2005, Ms. Kelly was promoted into the position of Instructional Design &
Development Manager and began working remotely and exclusively from Ms. Kelly's home
office. Ms. Kelly managed a team of 10 Instructional Developers, web and video producers who
created learning program and materials for 2,000 internal employees and 5,000 external sales
representatives.

On December 12, 2012, Ms. Kelly gave birth to twins. The pregnancy, delivery, and medical
issues following were serious and difficult. Ms. Kelly returned to work after her FMLA
pregnancy leave in March of 2013 at which time she returned from leave with no changes to her
position or responsibilities. Upon return from her leave, Ms. Kelly continued to work remotely
from her home office. The medical complications from delivery, including post-partum
depression, and the physical ailments described more thoroughly below, have been treated by
physicians ever since that pregnancy and delivery.

On April 29, 2013, First Data hired a new Chief Executive Officer, Frank Bisignano. This hiring
unsettled First Data's Global Talent Management team in which Ms. Kelly worked because of
Mr. Bisignano's history of management in prior positions and his management style of a merry-
go-round of terminations and hiring new "blood" as a management style of intimidating
employees. Immediately following the hiring of the new CEO, high-ranking leaders of First Data
(Peter Boucher, SVP Human Resources, David Kuhl, SVP Global Talent Management) were
terminated. The Global Management Team was leaderless after these terminations and was in

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

'limbo', trying to find a place in the organization. During this period of transition, Ms. Kelly reported directly to Karen Whalen, SVP Human Resources.

In late 2013 Bryan Fricke VP Sales Training, was assigned to lead the Sales Training / Sales Transformation Team, and he reported to Joe Plumeri, Co-Chairman of First Data. First Data conducts their payroll through various company codes. This meant that because of all the reporting changes in 2013, employees in Ms. Kelly's group received numerous W2s to report earnings for 2013. Under the management of Mr. Fricke, Ms. Kelly's group's positions continued as work from home employees. Travel was required due to Ms. Kelly's leadership position and Ms. Kelly met those obligations, even traveling on First Data business and taking her twins and nanny on trips, and using meeting breaks while on travel to feed her infants. During this period, Ms. Kelly's job responsibilities remained the same with respected reporting to senior leadership.

In mid-2014, Ms. Kelly's supervisor, Bryan Fricke, suddenly resigned from the company with no notice. Steve Barger, who they were then working with as a consultant, was brought on as an employee and became the SVP of Sales Transformation.

In October of 2014, Ms. Kelly was pregnant, and her OB-GYN ordered no travel or Ms. Kelly would be subjected to full bedrest due her high-risk pregnancy, preexisting medical conditions that were continuing from her pregnancy and birth of her twins two years prior, her prior c-section, her myomectomy and her age. Ms. Kelly completed and submitted Workplace Accommodation Request, with the guidance of Ms. Kelly's then manager Mr. Barger and HR Manager, James Britt. This request for accommodation by working from home was approved, and Ms. Kelly was able to work up until her scheduled c-section date with no loss to productivity.

In January 2015 (approx.), First Data's Chief Executive Officer changed First Data's work from home policy. This policy change required all employees to work in an office. This was not a popular decision with employees and during every "town hall meeting" held by the new CEO to discuss issues with First Data employees, the topic would arise for discussion and the CEO would always state in response to employee questions about the work from home policy that he could not work productively from home, and therefore he felt no one else could do so (these meetings are recorded).

On February 20, 2015, Ms. Kelly gave birth to her son. Ms. Kelly's son was born through a scheduled c-section at approximately 38 weeks of gestation. The delivery was complicated, and Ms. Kelly's son was held in the Neonatal Intensive Care Unit for 3 days due to breathing issues with underdeveloped lungs. Ms. Kelly's son was also born with a Vascular Malformation, which required immediate attention and numerous appointments over the next year to the Cincinnati Children's Hospital Hemangioma and Vascular Malformation Center in downtown Cincinnati, Ohio

EEOC – Cincinnati Division
May 16, 2018

Page 4

Following the birth of Ms. Kelly's son, Ms. Kelly was brought back into the hospital for a c-section infection that nearly killed her. Ms. Kelly suffered severe post-partum depression. This depression caused Ms. Kelly to be unable to breast feed her son after only 4 weeks. Ms. Kelly's medical conditions included blood infection, post-partum depression, severe recti diastasis, and umbilical hernia.

On April 23, 2015, despite these medical complications, Ms. Kelly returned to work 8 weeks after the birth of her son under First Data's standard 8-week leave following a c-section. Upon return from that leave, Ms. Kelly's job remained essentially the same; however, Ms. Kelly was now impacted with the new policy prohibiting work from home.

Between March 2015 – August 2015, the new work from home policy was enforced on the employees in the Sales Transformation team. The policy was targeted to work from home employees (from First Data's PeopleSoft data) other than those employees that were involved in direct sales in the field. At the direction of James Britt, Human Resources Manager, work from home employees were contacted and provided with distinct options such as relocating to Atlanta, GA (if no First Data office was in their area) or accepting a severance package once an end date was decided upon. All vacated positions had to be rehired in Atlanta, GA. The change in the work from home policy required Ms. Kelly to begin going to the First Data office in Cincinnati daily, an 1 – 1.5 hour commute each way. There were only approximately 35 employees of First Data assigned to the Cincinnati office, none of whom were at all related to Ms. Kelly's position and team. In other words, no one in the Cincinnati office directly interacted with Ms. Kelly in connection with her responsibilities within the training and education group.

In April of 2015, Ms. Kelly wrote a resignation letter to her supervisor, Mr. Barger (SVP Sales Transformation), which was standard operating procedure as Ms. Kelly was advised by James Britt (Manager HR). Ms. Kelly advised Mr. Barger that she would not be able to make the commute due to health and family and would accept the offered severance package. Mr. Barger and Ms. Kelly engaged in an interactive process and discussed Ms. Kelly's specific situation, which included Ms. Kelly's need for an accommodation for Ms. Kelly's post-partum depression and other medical conditions following the birth of Ms. Kelly's twins in December 2012 and most recently Ms. Kelly's son in February 2015. Ms. Kelly's request to continue working from home as an accommodation was approved because her role did not have any connection whatsoever to the Cincinnati office personnel, as he job functions were in support of First Data's world-wide operation. With the technology available to Ms. Kelly, she could perform her job function from nearly any location with an internet connection without any reduction in productivity.

Ms. Kelly continued to work from home under Mr. Barger, with absolutely no negative impact to Ms. Kelly's performance and no negative performance reviews.

About a year later, between April of 2016 and July of 2016, Ms. Kelly was hospitalized for health issues. This lead to numerous tests and biopsies to diagnose Non-Alcoholic Fatty Liver Disease (NAFLD), high blood pressure and stress disorder. All of which could be continuing

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

conditions arising from her difficult pregnancies.

In September of 2016, Ms. Kelly had her first interaction with Ms. Robin Ording. Ms. Kelly had been assigned to a project by Mr. Barger to attend a face-to-face conference to provide the Sales Transformation and Training Group's proposal to translate the learning programs from in-person interactive courses into virtual courses to eliminate the extravagant costs the interactive programs. While Ms. Ording was aware of why Ms. Kelly was attending the conference to discuss proposals, Ms. Ording never acknowledged the importance of Ms. Kelly's tasks and Ms. Ording conducted herself in an unprofessional way, showing coworkers photos on her phone and speaking in a crude manner. The Sales Transformation and Training Group proposal was submitted, with descriptions and evidence of the ways to fully measure the effectiveness of the virtual courses and retention of the content by those taking virtual courses in comparison to the then current interactive courses, to Ms. Ording and her direct report Christopher Calta (Director of Training). Th group's proposal only received a brief response that Ms. Ording and Mr. Calta liked the format of the proposal, but no comment on its content. Ms. Ording continued the existing program, with no measurement, accountability, or return on investment analysis.

In November 2016, Mr. Barger took FMLA leave while he recovered from cancer surgery. Ms. Ording became interim leader of the Training Group and became Ms. Kelly's direct supervisor. Mr. Barger's employment was terminated in February 2017 before he could return from leave and Ms. Ording became Ms. Kelly's permanent and last direct supervisor.

Based on Ms. Kelly's experience, and the reputation of Ms. Ording at First Data was one of having extremely high attrition with her direct reports, creating an uncooperative, hostile work environment and being ignorant of sales and adult learning & development methodology, Ms. Kelly knew Ms. Ording looked down on her and the other subordinates of Ms. Ording. This belief was proven. Ms. Ording was always condescending to Ms. Kelly, and unprofessional and often extremely disrespectful and mean to Ms. Kelly.

Ms. Ording began taking over for Mr. Barger by enforcing the prohibition on working from home. She monitored Ms. Kelly's attendance by "swipe-ins" (monitoring use of Ms. Kelly's security badge to enter First Data's offices). This swipe-in information was reported out by Karen Beck, SVP Human Resources, for Tony Marino's (Executive Vice President of Human Resources) organization monthly. If an employee's percentage of swipe-ins over the month was below a threshold, disciplinary action would take place. Ms. Kelly, despite the accomodations granted by her previous two supervisors, was now forced under threat of adverse employment action, to "swipe-in" on a daily basis and no longer could work from home.

During January 2017, Ms. Kelly rearranged her entire life and schedule to accommodate the new policy (exactly the opposite of what is required under the ADA and Ohio Fair Employment Law) under which Ms. Ording should have been accommodating Ms. Kelly as her previous two supervisors had done). Ms. Kelly's adjustments included hiring extra daycare for her three children under the age of 4. Arranging transportation for her 17-year-old step-daughter over which her and her husband had full custody from his prior marriage (she needed to be driven

EEOC – Cincinnati Division
May 16, 2018

Page 6

to/from school 30 minutes away from the family home), care providers for Ms. Kelly's live in mother-in-law (85), and assistance for Ms. Kelly's brother (36) with learning disabilities. Due to Ms. Kelly's husband's career, he was unable to assist as he travels extensively throughout the work week. Note that while Ms. Kelly's was working from home under the supervision of Mr. Fricke and Mr. Barger, these domestic and family care concerns were handled without interruption of her job performance and productivity. The unjustified policy of requiring swipe-ins without any reference to the job functions of the employee, especially when Ms. Kelly did not work directly with the employees in Cincinnati, required Ms. Kelly to think hard, often, and more strategically as to how to handle her family responsibilities and her responsibilities to her employer and her job, and the impact of these stresses on her medical conditions. In addition, her required adjustments cost her significantly more amounts to cover for her daily extensive unproductive time sitting in traffic and commuting to / from an office space where she did not need to be to satisfy her job duties.

In January 2017, Ms. Ording made Ms. Kelly draft her own job description. Based on Ms. Kelly's description, Ms. Ording indicated that she would need to relocate to Atlanta or another major office should Ms. Kelly continue with the company – effectively a constructive discharge. Ms. Kelly felt threatened and intimidated by Ms. Ording's demeanor, response, and lack of engagement in an interactive process.

In late January of 2017, the Sales Transformation and Training team went through a large reorganization that included the termination of 30% of the team which was alleged to create a cost savings of $3.3 million. Ms. Kelly was not included in that group of terminations. Ms.Ording continuously bragged to Ms. Kelly and the others on the team about this "significant" alleged cost savings on the backs of many terminated families, and Ms. Ording made offensive slurs about past leadership and terminated employees. At the time, Ms. Kelly was assigned to be the interim manager of a group in Hagerstown, MD. The employees on this team communicated to Ms. Kelly that she was the first person who gave them any attention since Mr.Barger.

On January 24, 2017, Mr. Anthony Marino (EVP of HR) granted Ms. Kelly 962 shares of restricted stock for leadership and execution during the transition. The restriction on these shares were to be lifted in three tranches, with the first vesting to occur on January 24, 2018. In other words, based on the value of the shares at that time, Ms. Kelly would receive an additional $1,500 to $2,000 each of one, two, and three years later.

In Ms. Kelly's position, Ms. Kelly managed a staff of Instructional Development Manager, Instructional Developers, Project Manager and Training Coordinator. Ms. Kelly also developed training programs, curriculum, and training materials. Ms. Ording began assigning more and more projects to her outside of her regular job responsibilities, including asking Ms. Kelly to perform Ms. Ording's responsibilities as a Vice President and leader of the Training Group. For example, Ms. Kelly was asked to, and did, put together data, analysis, templates and communications for the entire team, that Ms. Ording would take and present to senior leadership as her own. These administrative tasks of an officer like Ms. Ording were not within the job of a Director with responsibilities to develop and implement training programs for the company. Ms.

THE LAW OFFICE OF SHAWN SHEARER, P.C.

Ording could not fulfill her duties and asked Ms. Kelly to continue to perform her assigned job functions and to take addition work that belonged to Ms. Ording that should could not, or was unable to, complete. Ms. Ording often asked Ms. Kelly to do last minute tasks, after hours, because a Management Committee member needed something done. She knew Ms. Kelly's health and family situation but paid no regard and continued to press and demand that these extra tasks be performed by Ms. Kelly.

In February 2017 Ms. Kelly was promoted from Manager to Director and received a raise of $8,000 per year. Ms. Kelly's final annual salary at First Data was $107,500. Ms. Kelly's new position included all Ms. Kelly's responsibilities of her previous Manager position plus the addition of duties normally assigned by First Data to Vice Presidents, and areas outside of Ms. Kelly's training and education responsibilities, including the following:

- a. VP & SVP Promotion Process
- b. Company-wide Performance Evaluation Process
- c. Executive Succession Planning
- d. Audits of Performance Management data for companies such as Ernst & Young and PWC
- e. 360 Assessment Tool Process with external vendors.

At times, the drive to and from the office would take Ms. Kelly 1.5 - 2 hours each way. Ms. Kelly's team was aware of the strain this was putting on her, her health, and her family, and Ms. Kelly was often asked how she was able to remain at such a high level of productivity with all of the demands placed upon her.

Ms. Kelly advised Ms. Ording of the difficulty the situation was causing. Ms. Kelly felt was trying to drive her out of the company, force her to quit so that the company did not need to incur further severance expense. Ms. Ording flatly refused to allow Ms. Kelly to work from home or even to allow some days at home and some days in the office, despite Ms. Kelly's prior supervisors granting such accommodations. The requirements of Ms. Kelly's position could easily be satisfied working from home. Ms. Ording's management style was quite harsh, threatening and intimidating. Ms. Kelly felt that to keep her job, she needed to comply with Ms. Ordings demands despite the impact they were having on her health and well-being. With Ms. Ording serving in the role of Vice President of Human Resources, a high level within the First Data HR department, Ms. Kelly felt there was no one to whom she could speak that had authority to engage in an interactive process without suffering Ms. Ording's wrath.

On July 27, 2017, Ms. Kelly as directed by Anthony Mario (EVP of HR) and Ms. Ording (VP of HR) to use material Ms. Ording had taken from her prior employers and other companies (CitiBank and Chase Paymentech) to use for First Data's internal processes. Ms. Kelly felt this was a breach of ethics but was ordered to do it anyway. Ms. Kelly came to the realization that the First Data promotion process and criteria were plagiarized from those establishments. Ms. Kelly was not in a position to object for fear of retaliation from Ms. Ording and Mr. Marino.

EEOC – Cincinnati Division
May 16, 2018                                                                                    Page 8

On July 28, 2017, Ms. Kelly was directed by Ms. Ording to hide certain files so that the internal audit team did not see them and want to review them. Ms. Kelly was then told to move the files back after the audit took place. Ms. Kelly was not able to object for fear of her job; especially given the resistance she had received in her prior interactions with Ms. Ording on her accommodation requests.

On October 5, 2017, Ms. Kelly needed to leave the office and go to the emergency room for chest pains arising out of her medical conditions that continued from her pregnancies, as exacerbated by the stress of her commute and excessive, newly assigned duties placed upon her, unrealistically, in addition to her former training and education duties. Ms. Ording's failure to accommodate, and then imposition of additional responsibilities, and threats of termination if functions were not performed, had finally taken a real physical toll on Ms. Kelly.

Ms. Kelly had been under the care of medical doctors and psychiatrists the entire time between the birth of her twins until the end of Ms. Kelly's employment at First Data (2012 through November 2017). During this time, Ms. Kelly was prescribed numerous pharmaceuticals to address her medical conditions, anxiety, focus and stress.

The situation at First Data with daily commutes, combined with the additional duties Ms. Ording imposed, Ms. Ording's hostile work ethic, intimidation and abusive behavior toward Ms. Kelly, and Ms. Kelly's medical conditions, Ms. Kelly determined that approaching Ms. Ording again for an accommodation would be met with hostility (possibly loss of her job), and that the impact of employment at First Data without requested accommodations was too greatly impacting her health. Ms. Kelly concluded that based upon Ms. Ording's treatment of her, and lack of caring for her physical health, she had no choice but to resign. Ms. Ording would not accommodate Ms. Kelly's medical conditions. Ms. Kelly was constructively discharged.

Ms. Kelly advised Ms. Ording of her resignation and requested severance similar to the packages First Data had been providing to employees previously terminated, and similar to the package she thought of accepting earlier, but did not because her prior supervisor, Mr. Barger agreed that her work from home accommodation was reasonable and not a hardship on the company. When Ms. Ording heard this request, Ms. Ording laughed in Ms. Kelly's face and stated 'you quit, you get nothing' and used her superior position to even further ridicule and intimidate.

Ms. Kelly's last day of employment with First Data was November 30, 2017. All of Ms. Kelly's equity awards were forfeited. Ms. Kelly did not receive an exit interview. Ms. Kelly did not sign any papers upon her departure. Ms. Kelly even had to order her own shipping materials, at her expense, to return the laptop and other devises in her possession that issued by First Data.

Upon Ms. Kelly's departure, Ms. Ording (based in Melville, NY and also with an office in Altanta, GA) transferred Ms. Kelly's job responsibilities to two individuals in her department located in the United Kingdom.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

On December 5, 2017, Ms. Kelly's received a threat letter from Lori Graesser, in-house counsel for First Data in its Omaha office, stating that Ms. Kelly had alleged post-employment obligations, including an alleged 24 month non-compete, non-solicit, and other restrictions prohibiting her from seeking employment in the only industry in which she had worked for 20-years. Ms. Kelly has not sought employment, despite opportunities in the Cincinnati area, with any company that could be considered a competitor due to Ms. Graesser's illegal and retaliatory threats. Ms. Kelly responded asking for a copy of what Ms. Kelly signed containing these restrictions, because Ms. Kelly did not sign anything. Ms. Kelly never received a response.

In August 2017, Mr. Barger (Ms. Kelly's supervisor prior to Ms. Ording) filed suit against First Data alleging that First Data violated the FMLA in connection with his termination while on FMLA leave recovering from cancer surgery, and in that case, Mr. Barger subsequently added a claim for First Data's violations of the ADA related to his treatment while undergoing cancer treatment, surgery and recovery.

During the last week of April and the first week of May 2018, I wrote to First Data's in-house legal department asserting that First Data had violated Title VII and the ADA by terminating Ms. Kelly's employment and by failing to continue the work-from-home accommodation that had been granted by Mr. Fricke and Mr. Barger while they were Ms. Kelly's supervisors. In response to my first request, First Data's response was that Ms. Kelly should send documents to the severance and equity plan administrators – conveniently, those plan administrators are First Data and are supported by the same in-house lawyers that had received my original letter. In response, I wrote and indicated that this EEOC Charge would be forthcoming. No response from First Data has been received over the past two weeks.

Just days after Ms. Kelly's ADA issues were brought to the attention of First Data's in-house legal counsel, undersigned counsel received notice that First Data would be taking Ms. Kelly's deposition in the *Barger v. First Data* case pending in the Eastern District of New York (1:17-cv-4869). A very odd reaction, and clear retaliation against Ms. Kelly for raising issues subject of the EEOC's jurisdiction. NO depositions have occurred in the *Barger v. First Data* case – the Plaintiff in that case has not even been noticed for a deposition and none of the defendants in that case have been deposed. Ms. Kelly is a fringe witness at best in Mr. Barger's claims against First Data (he was her supervisor) and certainly she is not a possible target to be the very first deponent by any litigator's standards. Ms. Kelly is not a party in the *Barger v First Data* case. The notice of Ms. Kelly's deposition was designed to harass her for raising her claims and an attempt to intimidate her from bringing this Charge to the EEOC. In direct response to this retaliation, Ms. Kelly has been forced to seek legal counsel.

EEOC – Cincinnati Division
May 16, 2018

Page 10

## AMERICAN'S WITH DISABILITIES ACT CHARGE AGAINST FIRST DATA

The Americans with Disabilities Act 42 U.S.C. §12112(a) provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms and conditions of employment.

The Americans with Disabilities Act 42 U.S.C. §12112(b) provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes - . . .
> (3) utilizing standards, criteria, or methods of administration –
>
> > (A) that have the effect of discrimination on the basis of disability; or
> >
> > (B) that perpetuate the discrimination of others who are subject to common administrative control;
>
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of a known disability of an individual with whom the qualified individual is known to have a relationship or association;
>
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate the such an accommodation would impose an undue hardship on the operation of the business of such covered entity. . . .

For ADA purposes, (i) First Data is a "covered entity" as it has more than 22,000 employees (see First Data Corporation Form 10-K filed with The U.S. Securities and Exchange Commission), 2017); (ii) Ms. Kelly was an "employee" of First Data, and First Data was the "employer of Ms. Kelly; and (iii) Ms. Kelly was and is a "qualified individual." The medical and mental condition of Ms. Kelly arising out of two difficult pregnancies, conditions that continued for years after those pregnancies, were "disabilities" for purposes of the ADA.

The treatment of Ms. Kelly, and her resulting constructive discharge, violated 42 U.S.C. §12112(b)(3),(4) & (5).

The physical and mental conditions resulting from Ms. Kelly's two pregnancies are "disabilities" within the meaning of the ADA. First Data's and Ms. Ording's administration of Ms. Kelly's employment by revoking the work from home policy and then revoking her previous supervisors' grant of an exception to the revocation as an accommodation for her personal medical and mental issues, and to the disabilities of the individuals she was known to be

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

associated with (her 85 year old mother-in-law, her learning disabled brother, and the medical conditions of her children, all living in her home) had the effect of discriminating against the disabled (Ms. Kelly) and against her as being associated with those disabled. Remote work as a reasonable accommodation in Ms. Kelly's situation. See *Equal Employment Opportunity Commission (EEOC) v. Ford Motor Company* (6th Cir. 2014). Ms. Kelly's position had been designated a work-from-home position for years, and Ms. Kelly's two supervisors prior to Ms. Ording accommodated her by allowing work-from-home. Ms. Kelly worked from home for many years and during that time she received promotions, salary increases, and had no negative performance reviews. Attendance at the office clearly was not an "essential function" of Ms. Kelly's position.

Ms. Ording and First Data further violated 42 U.S.C. §12112(b)(5) by revoking a previously granted reasonable accommodation under which Ms. Kelly had worked under the supervision of Mr. Fricke and Mr. Barger. This revocation was not due to an undue hardship on First Data. The revocation was based on CEO Bisignano's belief that because he cannot work productively at home, others cannot work productively in the home. This declared statement by the CEO demonstrates the clear lack of understanding of the needs of the disabled creating an atmosphere designed to exclude disabled employees and designed to force resignations and constructive discharges. Moreover, in the case of Ms. Kelly, Mr. Bisignano's statement regarding the prohibition on work from home, and Ms. Ording's enforcement of that policy, is based on provable false assumptions. Ms. Kelly worked effectively from home, satisfying all of her responsibilities and taking on increasing responsibilities for more than 5 years with no negative, and in fact very positive, performance reviews, and promotions and raises. There was no business justification, let alone an undue burden, for First Data and Ms. Ording to continue the accommodation that had been in place over such an extended period with no issues arising. Ms. Kelly's accommodation was revoked based on a clear institutional bias against the disabled and those associated with the disabled.[1]

In Ms. Kelly's case, telecommuting was a reasonable accommodation and physical presence in First Data's 35-person Cincinnati office where none of those employees were in the training group (when Ms. Kelly is working on training programs for employees and partners across the globe). Moreover, Ms. Kelly's supervisors during all relevant periods were located in New York or Atlanta, not in Cincinnati. And even further, Ms. Kelly's position was defined as a remote position for years until the change of policy. Ms. Kelly performed more than effectively remotely, and Mr. Barger approved her accommodation to work remotely while he was her supervisor and she received excellent reviews from him. It was not until Ms. Ording became her supervisor that the her job, previously administered to be a work-from-home, and then a work-from-home accommodation, was required to demonstrate attendance by "swipe-ins" or face adverse employment action.

---

[1] First Data's policy also is selectively enforced. See Exhibit A showing some of the work-at-home positions advertised since Ms. Kelly's termination.

Ms. Kelly tried for a year (November 2016 to November 2017) to comply with the new policy implemented by Ms. Ording revoking the previously granted accommodation. More and more projects outside of the scope of her position were placed on her, more and more demands were placed on her, her pay was not increased in any meaningful way, she suffered medical conditions from the stress and had resulting hospital visits.

Physical attendance at the small First Data Cincinnati office (in a company with 22,000 employees) was not an essential function of Ms. Kelly's position. Ms. Ording, Ms. Kelly's supervisor had an office in Melville, NY, and occasionally was in the Atlanta, GA office. Ms. Kelly would not be seeing Ms. Ording at all when she went to the small Cincinnati, OH office. Moreover, upon Ms. Kelly's termination, her job responsibilities were sent to employees in the United Kingdom. Attendance at the Cincinnati office of First Data is not an essential function of the position held by Ms. Kelly.

There was absolutely no justifiable reason for revoking the previously granted accommodation and such revocation, and Ms. Ording's failure to engage in any discussions regarding Ms. Kelly's requests to continue the accommodation, violate that ADA. The revocation of that accommodation resulted in the creation of an atmosphere of harassment and exacerbation of her medical conditions such that her only choice was her health (and the care of those disabled living in her home) or her job. This forced choice is the definition of a constructive discharge actionable as a violation of the ADA. [2] Moreover, the harassment of Ms. Kelly (including the actions of Ms. Ording and Ms. Graesser described above) based on her medical condition and those with whom she associated created a hostile environment to those with disabilities and is also actionable.

Given the hostile environment, Ms. Kelly does not believe reinstatement is a viable option, and therefore she seeks front-pay, in addition to her back-pay.

## TITLE VII CHARGE AGAINST FIRST DATA – DISCRIMINATION ON THE BASIS OF SEX/PREGNANCY DISCRIMINATION ACT

42 U.S.C. § 2000e-2(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

The Pregnancy Discrimination ACT (PDA) makes clear that discrimination based on pregnancy, childbirth, or <u>related medical conditions</u> is a form of sex discrimination prohibited by Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e(k) provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or <u>related medical conditions</u>;

---

[2] A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that she is forced into an involuntary resignation.'" Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987)

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise.

Ms. Kelly's medical conditions arising out of her two pregnancies, some very personal in nature, were known to all her supervisors. Mr. Fricke and Mr. Barger took all the necessary actions to address those issues and concerns, provided Ms. Kelly all opportunities to advance, and Ms. Kelly performed admirably under all performance reviews.

Ms. Ording, on the other hand, did discriminate against Ms. Kelly, and harassed her based on the medical conditions arising out of her pregnancies. All the details of that harassment and treatment are set forth above. Ms. Ording and First Data violated the prohibition against discrimination based on sex because of the differing treatment Ms. Ording received following her request to continue her accommodation under the ADA because of medical conditions arising out of her pregnancy.

Moreover, the harassment of Ms. Kelly (including the actions of Ms. Ording and Ms. Graesser described above) based on her medical condition and those with whom she associated created a hostile environment actionable under Title VII.

Given the hostile environment, Ms. Kelly does not believe reinstatement is a viable option, and therefore she seeks front-pay, in addition to her back-pay.

## RETALIATION

Merely because the undersigned counsel raised the prospect of this charge being filed as a possibility in my communications with First Data's in-house counsel in an attempt to begin discussions, First Data immediately sought to serve a subpoena on Ms. Kelly to testify in the *Barger v. First Data* FMLA and ADA case pending before the Eastern District of New York. First Data has not noticed any other deposition in that case, and the case has been pending for nearly nine months. First Data has not even noticed plaintiff Barger for a deposition in that case. First Data's threatened Notice of Deposition of Ms. Kelly, given the temporal proximity of her raising the issues set forth in this letter, in litigation in which she is not even a part (but to which First Data is a defendant) gives rise to a presumption, if not in itself proof, of retaliation and harassment for asserting her rights under the ADA and Title VII. Because of that threat, Ms. Kelly has been required to seek legal counsel and has incurred monetary obligations for legal fees and advice. Moreover, such threats may further exacerbate her medical conditions that are subject of this letter.

THE LAW OFFICE OF SHAWN SHEARER, P.C.

EEOC – Cincinnati Division
May 16, 2018

Page 14

## OHIO FAIR EMPLOYMENT PRACTICES ACT

All the above describes conduct and claims are also actionable under the Ohio Fair Employment Practices Act OH Rev. Code §4112.01 et seq. based on discrimination against the disabled and based on sex.

I can be reached at (972) 803-4499 or on my cell (817) 915-8757 if you have any questions or require additional information.

Very truly yours,

Shawn E. Shearer

Attachments:

EEOC Charge Form 5
Affidavit of Julie Kelly
First Data Remote Job Openings

cc:     Julie Kelly

        Duffy Jamieson, Regional Director
        Ohio Civil Rights Commission
        Mid-Point Towers
        7162 Reading Road, Suite 1005
        Cincinnati, OH 45237

THE LAW OFFICE OF SHAWN SHEARER, P.C.



(/PressReviews.aspx)          (/PressReviews.aspx)

# First Data Jobs with Remote, Part-Time or Freelance Work

Overview     Blog Posts

**Check out great remote, part-time, freelance, and other flexible jobs with First Data! Here's an introduction to First Data as an employer:**

First Data, based in Atlanta, Georgia, is a global payment-processing company founded in 1971. Throughout the world, First Data secures and processes more than 2,500 transactions per second, translating to nearly $2 trillion per year. This company is dedicated to remaining an industry leader and works continuously to innovate modern commerce technology solutions to help clients gain insights into consumer spending patterns, detect fraud, and build customer loyalty.

First Data maintains a team of nearly 25,000 owner-associates to provide payment technology and processing solutions to over 6 million customers. First Data customers include small businesses, large merchants, global and national financial institutions, community financial institutions, government clients, and clients in various industries worldwide. The company's comprehensive service catalog features business overviews, as well as strategies and solutions for credit and debit cards, security and fraud, marketing, analytics and reporting, commercial payments, remittance, digital and mobile banking, customer communications, consumer lending, gambling and gaming, and much more.

As an employer, First Data is interested in employment candidates who pay close attention to detail and who possess exceptional communication, multitasking, and technology skills. This employer offers a comprehensive benefits package to eligible team members, which includes medical coverage, generous paid time off, tuition reimbursement, and commuter benefits. In the past, First Data has offered jobs with part-time and telecommuting flexibility. Explore FlexJobs' job category pages to find more great companies offering flexible work in consulting, coaching (https://www.flexjobs.com/jobs/consulting-coaching), (https://www.flexjobs.com/jobs/consulting-coaching) and sales (https://www.flexjobs.com/jobs/sales-business-development)!

*Researched & Written by FlexJobs Staff*

5/14/2018                                    First Data Jobs with Remote, Part-Time or Freelance Options



**Accolades & Awards:**

**Headquarters:** Atlanta, Georgia

**Website:** www.firstdata.com (http://www.firstdata.com)

**Social:**  (https://twitter.com/FirstData)  (https://www.facebook.com/FirstData)

(https://www.linkedin.com/company/first-data-corporation) (https://www.youtube.com/user/firstdata)

## Current Flexible Jobs at First Data

To view and apply to all of First Data's current flexible job postings, **sign up for FlexJobs today. (https://www.flexjobs.com/Members/Flexers/Register.aspx)**

Current job data is reserved for active FlexJobs members. Please **log in (/login)** or **register (/Members/Flexers/Register.aspx)** now to access this specific information. However, we have included some of their past telecommuting jobs, to provide you an idea of the types of jobs First Data has hired for in the past (and which they may be likely to hire for again!).

## Past Flexible Jobs at First Data

**Job Listing**

**Account Executive**                                                                    May 10
Full-Time Telecommute Job **Paterson, NJ**

Account Executive needed. This is a full-time position. Generate leads and retain clients. Grow portfolios via cross consulting and relationship management. Benefits offered. Must have cold-calling skills and be technologically savvy.

**Account Executive**                                                                    Apr 28
Full-Time Telecommute Job **Newark, NJ**

Account Executive needed. This is a full-time role. Generate leads in B2B setting. Leverage partner relationships for sales opportunities. Interact with prospects. Grow portfolios. Must be self-motivated and aggressive. Listening required.

**Business Advisor**                                                                     Apr 20
Full-Time Telecommute Job **Philadelphia, PA**

Business advisor sought for a full-time, mostly remote position responsible for building industry relationships, supporting and making sales. Must have strong customer service skills, computer proficiency.

**Account Executive - Financial Technology**                                             Apr 19
Full-Time Telecommute Job **Boston, MA**

Full-time job, mostly remote job. Needs experience in a sales environment and has strong cold calling skills. Generate leads in a business to business environment, interact with prospects, obtain referrals from working relationships, retain clients.

### Account Executive - Financial Technology
Full-Time Telecommute Job **Baltimore, MD**

Apr 19

Generate leads, sources opportunities, and retain current clients through consultive sales methods. Must have experience meeting sales goals, proficient with technology, and have a hunter mentality. Telecommute option.

### Short Cycle Salesperson
Full-Time Telecommute Job **San Antonio, TX**

Apr 11

Seeking a salesperson for a full-time, remote option position responsible for building relationships, generating and developing sales leads, evaluating needs, making sales. Computer proficiency, professional demeanor required.

### Business Development Consultant
Full-Time Telecommute Job **Dallas, TX**

Apr 11

Full-time, remote job. Needs a bachelor's degree and five years' business to business sales experience. Develop leads for new business generation, meet with merchants, manage the entire sales cycle form lead generation to close and qualify sales.

### Business Development Consultant
Full-Time Telecommute Job **Houston, TX**

Apr 11

Development consultant sought for a full-time, partially remote job responsible for seeking out and developing leads, liaising with merchants, building relationships, identify sales opportunities. BA/BS, five+ years' sales experience required.

### Account Executive
Full-Time Telecommute Job **Melville, NY**

Apr 09

Unlock growth potential of clients. Stay updated and knowledgeable with changes. Must be resourceful and entrepreneurial. Must be organized and efficient. Mostly work from home. Full-time with benefits. Fun team environment.

### Short Cycle Salesperson
Full-Time Telecommute Job **New York, NY**

Apr 07

Full-time, mostly telecommuting opportunity. Generate leads, develop partner relationships, interact with prospects, and work to retain clients. Must be technologically savvy and have strong self sourcing skills.

### Business Consultant
Full-Time Telecommute Job **Dayton, OH**

Apr 07

Full-time, mostly remote position. Responsibilities include generating leads, retaining clients, and growing portfolios via relationship management & cross selling. The ideal candidate will have demonstrated success achieving aggressive sales goals.

### Regional Sales Director
Full-Time Telecommute Job **Reading, PA**

Apr 05

Works in a home based office developing a team of Business Consultants, retaining productive sales talent, providing leadership and coaching, and rolling out new product and program training. Bachelors required. Full-time with limited travel.

### Sales Executive - Commercial Middle Market
Full-Time Telecommute Job **Nashville, TN**

Apr 05

Full-time, remote sales executive will develop comprehensive and holistic sales strategies for strategic bank clients to maximize revenue opportunities and will perform all other tasks. Bachelor's degree and 4 yrs sales experience required.

### Short Cycle Salesperson
Full-Time Telecommute Job **Las Vegas, NV**

Apr 05

Salesperson sought for a full-time, mostly remote position responsible for building relationships, evaluating needs, promoting products/services, making sales, and meeting revenue goals.

### Sales Executive
Full-Time Job **Minneapolis, MN**

Apr 04

Full-time, mostly remote opportunity. Will be responsible for developing new accounts with large, complex customers that have longer sales cycles. The ideal candidate will have a bachelor's degree. 10 years of sales-related experience preferred.

### Government Consultant - Child Support
Full-Time Telecommute Job **Hartford, CT**

Apr 03

Be responsible for interacting with SMEs and business stakeholders to better understand the needs and problems of the business. Will elicit and translate requirements and complete tasks relating to project deliverables. Work from home position.

### Business Consultant - Merchant Sales
Full-Time Telecommute Job **Hartford, CT**

Apr 02

Full-time business consultant will generate own leads in the business to business environment, promote solutions, leverage co-branded marketing collateral and will perform all other tasks. Option to telecommute. Prior relevant experience required.

### Government Project Manager
Full-Time Telecommute Job **Honolulu, HI**

Apr 02

Full-time government project manager will track all deliverables, monitor budget versus actual expenses, identify opportunities to improve the processes/quality of work products and will perform all other tasks. Some telecommute. 5 yrs exp required.

### Business Sales Consultant
Full-Time Telecommute Job **New York, NY**

Mar 29

Generate prospective clients in a B2B environment, and retain clients by growing relationships. Must have experience achieving quotas and aggressive sales targets and making cold calls. Telecommute position with travel required.

### Short Cycle Salesperson
Full-Time Telecommute Job **Atlanta, GA**

Mar 26

Will work within an assigned territory handling a short sales cycle, performing new account development tasks, and handling territory planning. At least 3 yrs of experience in sales preferred. Degree required. Full-time with option for remote work.

### Short Cycle Salesperson
Full-Time Telecommute Job **Roanoke, VA**

Mar 26

Short Cycle Salesperson needed. Remote work option. Retain clients. Grow portfolios and build relationships via cross consulting and relationship management. Listening skills required. Must be self-motivated and energetic. Full-time.

### Call Center Opportunities
Full-Time Flexible Schedule Job **Omaha, NE**

Mar 23

Full-time position offering flexible scheduling. Duties include answering inbound calls, providing information & support related to financial statements & credit card processing, resolving issues, educating customers, & documenting interactions.

**Account Executive**                                                                                    Mar 22
Full-Time Telecommute Job **Dallas, TX**

Account Executive needed. Retain clients through growing portfolios via cross consulting and relationship management. Must be self-motivated and be technology savvy. Benefits offered. Cold-calling skills and self-sourcing skills req.

**Business Consultant - Outside Sales**                                                                  Mar 22
Full-Time Telecommute Job **Dallas, TX**

Seeking a business consultant for a full-time, mostly remote position responsible for generating and developing leads, building client relationships, evaluating needs, making recommendations. Must have computer proficiency, cold calling skills.

**Business Consultant - Outside Sales**                                                                  Mar 22
Full-Time Telecommute Job **Miami, FL**

Seeking candidate with strong cold-calling skills for position generating your own leads, promoting company solutions, leveraging partner relationships to source sales opportunities, and growing portfolios. Remote based with limited travel.

Prev    1    2 (/jobs/telecommuting-jobs-at-first_data?page=2)

3 (/jobs/telecommuting-jobs-at-first_data?page=3)

4 (/jobs/telecommuting-jobs-at-first_data?page=4)

5 (/jobs/telecommuting-jobs-at-first_data?page=5)

6 (/jobs/telecommuting-jobs-at-first_data?page=6)

7 (/jobs/telecommuting-jobs-at-first_data?page=7)      ...

82 (/jobs/telecommuting-jobs-at-first_data?page=82)

83 (/jobs/telecommuting-jobs-at-first_data?page=83)

Next (/jobs/telecommuting-jobs-at-first_data?page=2)

# Join FlexJobs for Full Job Details and to Apply!

To apply to the specific job postings, please **log in (/login)** or **become a FlexJobs member (/Members/Flexers/Register.aspx)**.

If you have any questions, please feel free to give us a call toll-free at 1-866-991-9222.



**Accolades & Awards:**

**Headquarters:** Atlanta, Georgia

**Website:** www.firstdata.com (http://www.firstdata.com)

**Social:** (https://twitter.com/FirstData)   (https://www.facebook.com/FirstData)
(https://www.linkedin.com/company/first-data-corporation)
(https://www.youtube.com/user/firstdata)


## Current Flexible Jobs at First Data

To view and apply to all of First Data's current flexible job postings, **sign up for FlexJobs today.**
**(https://www.flexjobs.com/Members/Flexers/Register.aspx)**

Current job data is reserved for active FlexJobs members. Please **log in (/login)** or **register**
**(/Members/Flexers/Register.aspx)** now to access this specific information. However, we have included
some of their past telecommuting jobs, to provide you an idea of the types of jobs First Data has hired for in
the past (and which they may be likely to hire for again!).

## Past Flexible Jobs at First Data

**Job Listing**

**Account Executive I**                                                          Mar 19
Full-Time Telecommute Job San Diego, CA

Seeking an Account Executive for a full-time remote opportunity. Candidate will generate new demand, revenue,
profit margin, and retention for assigned clients. Must possess strong negotiation skills. Prior relevant
experience is required.

**Business Consultant**                                                          Mar 14
Full-Time Telecommute Job Toledo, OH

Seeking a business consultant for a full-time, remote option position responsible for generating and developing
business leads, implementing strategy, building relationships. Computer proficiency, exceptional communication
skills required.

**Account Executive**                                                           Mar 14
Full-Time Telecommute Job Mobile, AL

Full-time mostly telecommuting opportunity developing new accounts in the assigned territory. Requires
applicant with a bachelor's degree, 3+ years' related experience (preferred), prospecting skills, and awareness of
product line.

**Account Executive**                                                           Mar 14

Full-Time Telecommute Job **Jersey City, NJ**

Account executive needed for a full-time, mostly remote job responsible for building business relationships, following leads, evaluating needs, promoting products/services, making sales. Computer proficiency, excellent interpersonal skills a must.

**Merchant Services Sales Representative**                          Mar 14
Full-Time Telecommute Job **Albany, NY**

Remote, full-time job. Needs a bachelor's degree and three years' sales experience. Develop new accounts in assigned territory for the organizations lower complexity products and/or services with shorter sales cycles and may involve planning.

**Account Executive**                                               Mar 13
Full-Time Telecommute Job **Tallahassee, FL**

Full-time opportunity with the option for telecommuting. Will be responsible for working to develop new accounts and completing account and territory planning activities. Bachelor's degree and a minimum of 2 years of sales experience preferred.

**Account Executive**                                               Mar 13
Full-Time Telecommute Job **Boca Raton, FL**

Account executive needed for a full-time job opportunity with some telecommuting. Will be responsible for developing new accounting in an assigned territory. Bachelor's degree and 3+ years' sales experience desired.

**Sales Executive**                                                 Mar 13
Full-Time Telecommute Job **Miami, FL, Chicago, IL, Los Angeles, CA, Dallas, TX, Atlanta, GA, New York City, NY**

Full-time opportunity with the option of remote work. The sales executive will develop new C-level accounts with large, complex customers. The ideal candidate will have a bachelor's degree and at least 10 years of related experience.

**Sales Executive Hotels, Travel and Leisure Vertical**            Mar 13
Full-Time Telecommute Job **Los Angeles, CA, Sacramento, CA, Walnut Creek, CA, San Diego, CA, San Francisco, CA**

Will work on generating new demand and revenue, leading multiple opportunities, building a territory plan, preparing client proposals, and leading and development account strategies. 3+ yrs of experience required. FT, work at home with 30-40% travel.

**Short Cycle Salesperson**                                         Mar 13
Full-Time Telecommute Job **Austin, TX**

Full-time opportunity with the option of remote work. Will be responsible for developing new accounts in an established region. Bachelor's degree & 3+ years of sales experience preferred. Strong cold calling skills required.

**Short Cycle Salesperson**                                         Mar 13
Full-Time Telecommute Job **Alexandria, VA**

Option for telecommuting. Candidate will generate relationships & build portfolios through relationship management & cross consulting, and source sales opportunities. Must have experience in a quota driven self sourcing sales environment.

**Short Cycle Salesperson**                                         Mar 08
Full-Time Telecommute Job **Raleigh, NC**

Full-time, mostly remote position. Responsibilities include generating leads, retaining clients, and growing portfolios. The ideal candidate will have prior experience in a quota-driven, sales-sourcing environment & a record of achieving sales goals.

### Account Executive
Mar 08
Full-Time Telecommute Job **Los Angeles, CA**

Account executive needed. Generate new demand and profit margin. Lead initiatives concurrently. Insure proactive accountability. 4-year degree or 5 years of sales exp. preferred. Must negotiate. Mostly work from home. Full-time position.

### Account Executive-Financial Technology Sales
Mar 08
Full-Time Telecommute Job **Richmond, VA**

Account Executive needed. Be responsible for account development in established territory. 4-year degree and 3 plus years of sales exp. preferred. Prospecting and field sales skills will be required. Full-time and mostly remote work.

### Account Executive-Financial Technology Sales
Mar 08
Full-Time Telecommute Job **Newark, NJ**

Account Executive needed. Full-time position. Be responsible for account development in territory. Short sales cycle. 4-year degree and three plus years of sales exp. preferred. Sales closing and field sales exp. req. Must know product line.

### Business Consultant
Mar 08
Full-Time Telecommute Job **Toledo, OH**

Business Consultant is needed for a remote opportunity. Candidate is responsible for retaining clients by building relationships and growing portfolios. Must be able to achieve sales goals. Prior related experience is requird.

### Business Development Consultant
Mar 08
Full-Time Telecommute Job **Miami, FL**

Business Development Consultant needed. Some remote work. Full-time. Develop leads for business generation and manage sales cycle. Build customer confidence. Achieve revenue targets. Stay updated with changes. 4-year degree required.

### Merchant Services Sales Representative
Mar 08
Full-Time Telecommute Job **Oklahoma City, OK**

Develop new small & medium size business accounts for a geographic area. Generate leads, obtain referrals, and work with others to source opportunities. Requires a bachelor's degree, 3 years of sales experience, and motivation. Remote with travel.

### Regional Sales Director
Mar 08
Full-Time Telecommute Job **Houston, TX**

Regional Sales Directorneeded. Mostly work from home. Leadership abilities required. Small business banking past exposure required. Must be technologically savvy. Must be motivated. 4-year degree and quantitative skills required.

### Sales Executive
Mar 07
Full-Time Telecommute Job **Houston, TX**

Handles tasks such as creating strategic relationships with senior business leaders, generating new demand and revenue, leading multiple opportunities, and building a territory plan. 10+ yrs of exp. preferred. FT, work at home with limited travel.

### Account Executive - Financial Technology Sales
Mar 07
Full-Time Telecommute Job **San Diego, CA**

Generate leads within a B2B environment, build relationships, and grow portfolios. Mostly remote position. B2B sales, relationship management, or account management experience is required, along with strong cold-calling skills.

5/14/2018                                    Page_2 of First Data Jobs

### Business Consultant - Merchant Sales                                    Mar 04
Full-Time Telecommute Job Seattle, WA

Remote candidate will produce leads in the business to business environment, and maintain clients by building relationships & growing portfolios through relationship management. Must have strong cold calling skills, and self sourcing sales exp.

### Senior Direct Sales Advisor Q4                                          Mar 04
Full-Time Telecommute Job Philadelphia, PA

Full-time, mostly remote position. Duties include qualifying new leads and leveraging an existing industry network to obtain & manage key accounts. The ideal candidate will have a proven track record of meeting or exceeding revenue targets.

### Senior Talent Acquisition Advisor                                       Mar 04
Full-Time Temporary Job Essex 🔲

Temporary position. Duties include providing recruiting support for internal customer groups, advising hiring managers on recruitment issues, managing the candidate experience, developing creative sourcing strategies, & ensuring database accuracy.

### Business Consultant                                                     Feb 26
Full-Time Telecommute Job Louisville, KY

Mostly remote, full-time opportunity. Responsibilities include generating leads, building a pipeline, generating top line revenue growth, retaining clients, building relationships, and cross consulting. Strong cold calling skills are required.

Prev (/jobs/telecommuting-jobs-at-first_data?page=1)

1 (/jobs/telecommuting-jobs-at-first_data?page=1)   | 2 |

3 (/jobs/telecommuting-jobs-at-first_data?page=3)

4 (/jobs/telecommuting-jobs-at-first_data?page=4)

5 (/jobs/telecommuting-jobs-at-first_data?page=5)

6 (/jobs/telecommuting-jobs-at-first_data?page=6)

7 (/jobs/telecommuting-jobs-at-first_data?page=7)    ...

82 (/jobs/telecommuting-jobs-at-first_data?page=82)

83 (/jobs/telecommuting-jobs-at-first_data?page=83)

Next (/jobs/telecommuting-jobs-at-first_data?page=3)

# Join FlexJobs for Full Job Details and to Apply!

To apply to the specific job postings, please **log in (/login)** or **become a FlexJobs member (/Members/Flexers/Register.aspx)**.

If you have any questions, please feel free to give us a call toll-free at 1-866-991-9222.



**Accolades & Awards:**

**Headquarters:** Atlanta, Georgia

**Website:** www.firstdata.com (http://www.firstdata.com)

**Social:**  (https://twitter.com/FirstData)  (https://www.facebook.com/FirstData) 

(https://www.linkedin.com/company/first-data-corporation) [You Tube]
(https://www.youtube.com/user/firstdata)

## Current Flexible Jobs at First Data

To view and apply to all of First Data's current flexible job postings, **sign up for FlexJobs today.**
**(https://www.flexjobs.com/Members/Flexers/Register.aspx)**

Current job data is reserved for active FlexJobs members. Please **log in (/login)** or **register
(/Members/Flexers/Register.aspx)** now to access this specific information. However, we have included
some of their past telecommuting jobs, to provide you an idea of the types of jobs First Data has hired for in
the past (and which they may be likely to hire for again!).

## Past Flexible Jobs at First Data

**Job Listing**

**Merchant Service Account Executive**                                      Feb 23
Full-Time Telecommute Job **Austin, TX**

Account executive sought for a full-time, mostly remote job responsible for seeking out and building leads,
developing relationships, making sales, evaluating needs. Multi-tasking ability, excellent interpersonal skills
required.

**Merchant Services Sale Representative**                                   Feb 23
Full-Time Telecommute Job **San Antonio, TX**

Seeking team oriented candidate for position offering clients solutions to grow their business, self-sourcing
leads in a B2B environment, generating new business, and maintaining a client base. Full-time, stay at home with
occasional travel.

**Account Executive I**                                                      Feb 22
Full-Time Telecommute Job **Roanoke, VA**

Account executive will build relationships, make sales, evaluate and support account needs, meet goals. BA/BS,
five+ years' experience in sales preferred. Must have strong sales skills, account management experience. Full-
time, mostly remote.

**Account Executive**                                                        Feb 19

Full-Time Telecommute Job **Phoenix, AZ**

Develop new accounts for lower complexity products or services with short sales cycles. Perform cross-selling, prospecting, qualification of leads, and other sales related tasks. A bachelor's degree and 3 years of sales exp. are preferred. Remote.

### Account Executive                                                                Feb 19
Full-Time Telecommute Job **Austin, TX**

Will work within an assigned territory handling new account development, generating leads in a B2B environment, performing territory and account planning, and promoting company solutions. Bachelors required. FT, work at home with limited travel.

### Business Consultant - Merchant Services                                          Feb 19
Full-Time Telecommute Job **Alexandria, VA**

Seeking tech savvy candidate for position generating leads in a B2B environment, building relationships with growing portfolios, and generating top line revenue growth. Prior experience is required. Full-time, work at home with limited travel.

### Account Executive                                                                Feb 17
Full-Time Telecommute Job **Denver, CO**

Will be responsible for working with an assigned portfolio expanding existing accounts and assisting clients better detect fraud. Must have at least 10 years of sales experience. Bachelors required. Full-time, work at home with occasional travel.

### Account Executive                                                                Feb 17
Full-Time Telecommute Job **St. Augustine, FL**

Account executive needed. Mostly work from home. Unlock growth potential of clients. Offer solutions for business growth. Must be resourceful. Will generate new business. Ethics and integrity required. Will build professional relationships.

### Account Executive                                                                Feb 17
Full-Time Telecommute Job **Knoxville, TN**

Account executive will build relationships, evaluate needs, promote products/services, make sales, me. Must have exceptional interpersonal skills, sales networking ability, strong communication skills required. Full-time, mostly remote.

### Account Executive                                                                Feb 17
Full-Time Telecommute Job **Chattanooga, TN**

Account executive needed. Full-time role. Benefits offered. Must be resourceful. Will generate new business. Must be ethical. Self-source leads in the B2B setting. Must be organized and efficient. Sales networking abilities are req.

### Account Executive - 2244885                                                      Feb 17
Full-Time Telecommute Job **New York, NY**

Account executive sought for a full-time, mostly remote job requiring a BA/BS, ten+ years' sales-based experience. Will build account relationships, promote products / services, make sales, and meet revenue goals.

### Account Executive II                                                             Feb 17
Full-Time Telecommute Job **Chicago, IL**

Full-time, remote job. Needs a bachelor's degree and ten years' sales experience. Expand existing accounts with an assigned portfolio for key or large complex customers, work with minimal guidance and will perform C level sales.

### Business Consultant - Financial Technology Sales                                 Feb 17
Full-Time Telecommute Job **Charleston, SC**

Business consultant needed. Mostly work from home. Full-time. Be accountable for account development in established region. May involve territory related planning. 4-year degree and 3 plus years of sales experience would be preferred.

**Customer Service POS Technical Support**                                    Feb 17
Part-Time Job **Omaha, NE**

Be responsible for responding to incoming calls relating to applications, software products and IT hardware. Will diagnose/resolve problems and gather customer information. 1+ years of relevant experience is needed. Part-time position.

**Merchant Services Business Development Representative**                     Feb 17
Full-Time Telecommute Job **Miami, FL**

Representative sought for a full-time, mostly remote position building client relationships, evaluating client needs, making sales, and meeting goals. Must have exceptional communication skills, multi-tasking.

**Sales Executive**                                                          Feb 17
Full-Time Telecommute Job **Louisville, KY**

Work at home position. Responsible for assisting client with better defect fraud, building customer loyalty, and handling new C-level account development with large complex customers. 10+ yrs of exp. preferred. Bachelors required. Limited travel.

**Business Consultant**                                                      Feb 16
Full-Time Telecommute Job **Washington, DC**

Seeking a candidate with technical savvy to generate leads and leverage partnerships. Will retain clients, build relationships and grow portfolios. Option for remote position.

**Business Consultant**                                                      Feb 16
Full-Time Telecommute Job **Hartford, CT**

Handles responsibilities including generating your own leads, gaining referrals from working relationships, and retaining clients by building relationships and growing portfolios. Prior quota driven exp. required. FT, remote with limited travel.

**Sales Executive - Commercial Middle Market**                              Feb 16
Full-Time Telecommute Job **Detroit, MI**

Seeking candidate with strong negotiation skills for position developing strong working partnerships with commercial bankers, self-sourcing referrals and leads, and developing holistic sales strategies. FT, work at home with limited travel.

**Sales Executive**                                                          Feb 09
Full-Time Telecommute Job **Miami, FL**

Will be responsible for prospecting, networking, and territory development activities. Must have a bachelor's degree and a minimum of 4 years of sales experience. Strong prospecting abilities needed. Mostly telecommuting.

**Account Executive-Financial Technology Sales**                            Feb 07
Full-Time Telecommute Job **Miami, FL**

Incumbent will work within an assigned territory handling a short sales cycle for the organization's lower complexity products and services as well as participating in territory and account planning. Full-time, work at home with limited travel.

**Director, ISO Channel**                                                    Feb 07
Full-Time Telecommute Job **Atlanta, GA**

5/14/2018                                    Results Page_3 of First Data Jobs

Full-time, remote job. Needs a bachelor's degree and proven experience in sales. Create interest in company's products and services, develop and maintain a sales pipeline, generate interest through various means of contact and lead sales process.

**Business Consultant**                                                    Jan 30
Full-Time Telecommute Job **Louisville, KY**

Seeking a business consultant for a full-time mostly telecommuting job. Meets client needs through a short-cycle merchant services sales team. Qualifications include self-motivation, prior related experience, and cold-calling abilities.

**Merchant Services Sales Representative**                                 Jan 30
Full-Time Telecommute Job **Fort Worth, TX**

Merchant services sales representative will promotes solutions to develop client business. Requirements include entrepreneurial spirit, multitasking abilities, competitive nature, and ability to close deals. Mostly telecommuting position.

**Business Consultant**                                                    Jan 26
Full-Time Telecommute Job **New Haven, CT**

Full-time role. Generate leads, build relationships, and work to retain clients. The ideal candidate is technologically savvy and has strong cold calling and self-sourcing abilities. Mostly telecommuting.

Prev (/jobs/telecommuting-jobs-at-first_data?page=2)

1 (/jobs/telecommuting-jobs-at-first_data?page=1)

2 (/jobs/telecommuting-jobs-at-first_data?page=2)          3

4 (/jobs/telecommuting-jobs-at-first_data?page=4)

5 (/jobs/telecommuting-jobs-at-first_data?page=5)

6 (/jobs/telecommuting-jobs-at-first_data?page=6)

7 (/jobs/telecommuting-jobs-at-first_data?page=7)        ...

82 (/jobs/telecommuting-jobs-at-first_data?page=82)

83 (/jobs/telecommuting-jobs-at-first_data?page=83)

Next (/jobs/telecommuting-jobs-at-first_data?page=4)

# Join FlexJobs for Full Job Details and to Apply!

To apply to the specific job postings, please **log in (/login)** or **become a FlexJobs member (/Members/Flexers/Register.aspx)**.

If you have any questions, please feel free to give us a call toll-free at 1-866-991-9222.





**Accolades & Awards:**

**Headquarters:** Atlanta, Georgia

**Website:** www.firstdata.com (http://www.firstdata.com)

**Social:**  (https://twitter.com/FirstData)    (https://www.facebook.com/FirstData)

(https://www.linkedin.com/company/first-data-corporation)
(https://www.youtube.com/user/firstdata)

## Current Flexible Jobs at First Data

To view and apply to all of First Data's current flexible job postings, **sign up for FlexJobs today. (https://www.flexjobs.com/Members/Flexers/Register.aspx)**

Current job data is reserved for active FlexJobs members. Please **log in (/login)** or **register (/Members/Flexers/Register.aspx)** now to access this specific information. However, we have included some of their past telecommuting jobs, to provide you an idea of the types of jobs First Data has hired for in the past (and which they may be likely to hire for again!).

## Past Flexible Jobs at First Data

Job List

**Business Consultant - Financial Technology Sales**                          Jan 26
Full-Time Telecommute Job **Washington, DC**

Create new accounts in a particular territory, reaching sales targets and growing company sales. Bachelors degree and 3 years of sales experience are preferred. Must have good cold calling ability and be self-motivated. Telecommute option.

**Account Executive**                                                         Jan 26
Full-Time Telecommute Job **Dallas, TX**

Develop leads and relationships to create successful B2B sales closings. Retain clients, grow portfolios, and offer consulting on short cycle sales. Must have experience in self-sourcing leads in a quota driven role, and be tech savvy. Remote option.

**Account Executive**                                                         Jan 26
Full-Time Telecommute Job **Houston, TX**

Full-time, mostly telecommuting Position. Will be responsible for developing new accounts in an assigned territory. Candidates with a bachelor's degree and three years of sales experience are preferred.

### Join FlexJobs to View All
### First Data Flexible Jobs! (/Members/Flexers/Register.aspx)

**Business Consultant - Financial Technology Sales**                          Jan 26
Full-Time Telecommute Job **Walnut Creek, CA**

Develop new accounts in an assigned region for products and services with short sales cycles. A bachelors degree is required; 3 years of sales experience is preferred. Must have prospecting, scoping, and closing skills. Telecommute option.

### Business Consultant - Merchant Sales
Full-Time Telecommute Job **San Francisco, CA**

Jan 26

Full-time, mostly telecommuting opportunity. Will be responsible for new account development and territory planning tasks. Strong prospecting and cross-selling skills are needed. Bachelor's degree and 3 + years sales experience preferred.

### Account Executive
Full-Time Telecommute Job **Philadelphia, PA**

Jan 21

Serve as the client's strategic advisor. Help businesses grow by leading large project and sales teams. A bachelor's degree and 5+ yrs' related sales experience are preferred. Full-time, mostly remote/home-based position with travel req.

### Account Executive
Full-Time Telecommute Job **Jackson, MS**

Jan 21

Work at home opportunity. Will work in a B2B environment self-sourcing leads, unlocking the potential of clients, generating new business, and serving as a trusted business consultant. Must be team oriented. Full-time with occasional travel.

### Business Consultant
Full-Time Telecommute Job **Winston Salem, NC**

Jan 21

Business consultant sought for a full-time, mostly remote job responsible for evaluating the needs of clients, making growth and improvement recommendations. Computer proficiency, excellent interpersonal skills, travel required.

### Merchant Services Sales Representative
Full-Time Telecommute Job **Sugar Land, TX**

Jan 21

Seeking a tech savvy for a field based consultant position. Must be able to listen to clients and have previous experience in self-sourcing sales for small/medium size clients. Work mostly remote.

### Business Services Consultant
Full-Time Telecommute Job **Miami, FL**

Jan 19

Consultant will build client relationships, generate and develop leads, liaise with industry professionals. Must have computer proficiency, exceptional interpersonal communication, strong phone-based skills. Full-time, mostly rem...

### Business Consultant - Merchant Sales
Full-Time Telecommute Job **Los Angeles, CA**

Jan 19

Develop new accounts and perform planning activities within a territory. Full-time, mostly telecommuting position. It's preferred to have a bachelor's degree or equivalent and 3+ years' sales experience. Sales and prospecting skills required.

### Account Executive
Full-Time Telecommute Job **Miami, FL**

Jan 19

Account executive needed. Full-time and mostly work from home. Benefits offered. Will generate own leads in B2B setting. Leverage partner relationships. Listening skills required. Must have strong skills with cold-calling. Track record req.

## Join FlexJobs to View All
## First Data Flexible Jobs! (/Members/Flexers/Register.aspx)

### Business Consultant
Full-Time Telecommute Job **Cincinnati, OH**

Jan 19

Remote candidate will produce leads in this business to business environment, and create relationships & grow portfolios through relationship management & cross consulting. Must have experience in a quota driven self-sourcing sales environment.

### Business Consultant - Merchant Sales
Full-Time Telecommute Job **Hartford, CT**

Jan 19

Will work within an assigned territory handling new account development and territory planning as well as executing a short sales cycle. At least 3 yrs of sales experience is preferred. Bachelors required. Full-time, work at home with limited travel.

### Business Consultant
Full-Time Telecommute Job **Miami, FL**

Jan 12

Full-time, mostly remote position. Will be responsible for generating leads in a B2B environment, retaining clients, building relationships, and growing portfolios. The ideal candidate will have the ability to travel throughout an assigned region.

### Business Consultant
Full-Time Telecommute Job **Chicago, IL**

Jan 12

Be responsible for generating leads for B2B, build/develop relationships and grow portfolio. Must have previous experience, be technology savvy and have hunter expertise. Remote job with travel.

### Sales Executive - Commercial Middle Market
Full-Time Telecommute Job **Boston, MA**

Jan 12

Be responsible for developing partnerships with bank officers and partners and collaborating with relationship teams to develop sales strategies for bank clients. Four years of experience in financial services sales is needed. Remote job with travel.

### Account Executive
Full-Time Telecommute Job **Paterson, NJ**

Jan 09

Full-time account executive needed for a mostly remote job responsible for following account leads, building relationships, making sales, meeting revenue goals. BA/BS or three+ years' experience a plus. Must have sales skills.

### Account Executive Financial Technology Sales
Full-Time Telecommute Job **Newark, NJ**

Jan 09

Responsible for the development of new accounts within an assigned territory. May participate in account and territory planning. 3+ yrs of experience in sales is preferred. Skills in cross-selling and prospecting are needed. Full-time remote job.

### Business Consultant
Full-Time Telecommute Job **Grand Rapids, MI**

Jan 09

Seeking a business consultant for a full-time, mostly remote job responsible for seeking out leads, building client relationships, evaluating needs. Computer proficiency, travel ability, exceptional communication skills required.

### Account Executive - Financial Technology Sales
Full-Time Telecommute Job **Raleigh, NC**

Jan

Remote candidate will generate leads in this business to business environment, connect with prospects at strategic partner locations, and promote company solutions. Must have experience in a quota driven self sourcing sales environment.

### Business Consultant
Full-Time Telecommute Job **First Data, Flexible**

**Join FlexJobs to View All First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**

Jan 05

Business consultant needed. Generate own business leads and retain clients. Grow portfolios through cross consulting and relationship management. Previous self-sourcing sales experience and cold-calling abilities preferred. Great benefits.

**Business Consultant**                                                                                           Jan 05
Full-Time Telecommute Job **Fort Wayne, IN**

Will work in a home based office handling short sales cycles, performing territory and account planning, and handling new account development. At least 3 yrs of experience in sales and Bachelors are preferred. Full-time with occasional travel.

**Account Executive**                                                                                           Dec 29
Full-Time Telecommute Job **Miami, FL**

Account executive needed for a full-time mostly telecommuting opportunity. Generates new business opportunities and provides solutions to meet clients needs. Requires resourcefulness and ability to establish and maintain relationships.

**Account Executive**                                                                                           Dec 29
Full-Time Telecommute Job **Memphis, TN**

Account executive sought for a full-time mostly telecommuting opportunity. Applicant must have ability to establish professional relationships, entrepreneurial spirit, multitasking abilities, and ability to close sales deals.

Prev (/jobs/telecommuting-jobs-at-first_data?page=3)

1 (/jobs/telecommuting-jobs-at-first_data?page=1)

2 (/jobs/telecommuting-jobs-at-first_data?page=2)

3 (/jobs/telecommuting-jobs-at-first_data?page=3)      4

5 (/jobs/telecommuting-jobs-at-first_data?page=5)

6 (/jobs/telecom        -first_data?page=6)

7 (/jo      .elecommuting-jobs-at-first      ?a?page=7)      ...

82 (/jobs/tel ommu ng-jobs-at-first_data. page=82)

83 (/jobs/           mu ng-jo      st_d ?pa 83)

Next (/jobs/t ecom utir           st_d age=5

## Join FlexJobs for Full Job Details and t nnly!

To apply to the specific job postings, please **log in (/login)** or **become a FlexJobs member (/Members/Flexers/Register.aspx)**.

If you have any questions, please feel free to give us a call toll free at 1-866-991-9222.
**Join FlexJobs to View All**
**First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**

✔ Find a job faster!

Full-Time Telecommute Job **Newark, NJ**

Full-time, mostly remote job in North Bergen. Bachelor's required. Duties include developing new accounts within an established geographic region for lower complexity products & services with shorter sales cycles. 3 years of experience preferred.

**Account Executive**                                                          Dec 24
Full-Time Telecommute Job **Baltimore, MD**

Be accountable for account development in established region. 4-year degree and three plus years of sales experience would be preferred. Must have cross-selling and prospecting skills. Field sales experience req. Mostly work from home.

**Business Consultant**                                                        Dec 24
Full-Time Telecommute Job **New York, NY**

Generate leads in a B2B environment, build relationships with clients, and manage relationships. Full-time, mostly telecommuting position with some travel. Must have relationship building experience and a successful sales background.

**Partner Sales Manager**                                                      Dec 21
Full-Time Telecommute Job **Los Angeles, CA**

Full-time, mostly remote position. Duties include creating unique & creative channel strategies to increase production levels, driving revenue from existing partnerships, developing new opportunities, and presenting business solutions to executives.

**Account Executive - Financial Technology Sales**                             Dec 15
Full-Time Telecommute Job **Los Angeles, CA**

Full-time, mostly remote opportunity. Responsibilities include developing new accounts in an established geographic region and territory planning. A bachelor's degree and at least 3 years of sales experience are preferred.

**Business Consultant**                                                        Dec 15
Full-Time Telecommute Job **Knoxville, TN**

Business consult___ ___ ___ full-time, mostly remote position responsible for building relationships, evaluating ___, making recom___ ___tions. Travel ability, past experience in sales, exceptional communication requir___

**B___iness Con___tant - ___rchant Sales, Bilingu___ Korean**                Dec 15
Full-Time Tele___ nmute ___b Los Angeles, CA

Full-time mos___ telec___muti___ positi___ dev___pin___ ew a___un___ ___ ___ as___ ___ ter___ ry. ___qui___ candidate wit___ bach___r's___ gree. 3+ ___ars' ___ experie___ e (___ eferred), ___ sp___ ting abili___ s, ___ awareness of product lin___

**Government ___nior Consultant**                                             Dec 15
Full-Time Telecommute Job **Omaha, NE**

Senior consultant sought for a full-time job with mostly ___ ote hou___ ___S Office proficiency, PMP certificatio___ three+ years' management experience, and a BA/BS required. Will over ___ ___eliverables, maintain proced___ compliance, resolve issues.

**Vice President ISO Channel**                                                 Dec 13
Full-Time Telecommute Job **Sarasota, FL**

Be responsible for optimizing and managing growth of an ISO channel. Will develop channel strategies that will increase production levels for assigned portfolios. Mostly remote job.

**View Flexjobs to View All First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**

**Director, Financial Institution Sales**                                      Dec 13
Full-Time Telecommute Job **Richmond, VA**

Full-time, mostly remote opportunity. Position responsibilities include managing & optimizing revenue growth within an assigned portfolio and collaborating with financial institutions to develop qualified leads & new merchant relationships.

**Sales Executive - Commercial Middle Market**                                        Dec 11
Full-Time Telecommute Job **Columbus, OH**

Responsible for developing strong working partnership, self-sourcing referrals and leads, driving the execution of commercial middle market long cycle sales and revenue objectives, and developing sales strategies. Full-time, remote with travel.

**Business Consultant**                                                                Dec 07
Full-Time Telecommute Job **Columbus, OH**

Generate B2B leads, build partnerships, and retain clients. Requires strong cold-calling and solution-selling experience. Financial or merchant service, and B2B and B2C experience are preferred. Remote option with regional travel required.

**Business Consultant**                                                                Dec 07
Full-Time Telecommute Job **Milwaukee, WI**

Business consultant needed. Be accountable for new account development in established region. May involve some territory planning. 4-year degree and three plus years of sales exp. preferred. Must have cross-selling skills. Mostly work from home.

**Account Executive**                                                                  Dec 07
Full-Time Telecommute Job **Melville, NY**

Create and maintain a strong client base, self-source B2B leads, stay abreast of commerce technology and payment field, and help clients grow their businesses. Must have demonstrated experience, organization, and solid networking skills. Remote.

**Account Executive**                                                                  Dec 07
Full-Time Telecommute Job **Coral Springs, FL**

Seeking an account executive for a full-time, mostly remote job responsible for building account relationships, following and developing leads, making sales, evaluating client needs. Multi-tasking skills, excellent interpersonal a must.

**Account Executive Financial Technology S**                                           Dec 07
Full-Time Telecommute Job San Francisco, CA

Account executive sought for a full-time, mostly remote job responsible for generating and developing leads, building and relationships making leads, making sales. BA years experience plus.

**Government Technical Consultant**                                                     Dec 07
Full-Time Telecommute Job Omaha, IL

Technical consultant will conduct study, monitor performance an program, making recommendation implement plans. Five+ years' related experience, BA/BS, experience with Medicaid and IV&V required. Full-time, mostly remote job.

**Government Technical Consultant Architecture and Security**                          Dec 07
Full-Time Telecommute Job **Austin, TX**

Analyze architecture and security to identify optimization opportunities. Validate security policies. Must have a bachelor's degree or equivalent exp. Security certifications are preferred. Full-time, remote optional position with travel required.

## Join FlexJobs to View All
Sales Executive, C **First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**       Dec 07
Full-Time Telecommute Job **Las Vegas, NV**

Will work in a home based office self-sourcing referrals and leads, developing strong referral partnerships, and driving the execution of departmental sales and revenue objectives. 4+ yrs of experience preferred. Full-time with limited travel.

### State HHS Business Intelligence Lead                                                    Dec 07
Full-Time Telecommute Job **Hartford, CT**

Lead workload planning, and design, development, and implementation of technologies. Must have communication skills and successful leadership/PM experience. Requires EIS exp. Full-time, mostly remote/home-based position.

### State Human Services Fiscal Lead                                                        Dec 07
Full-Time Telecommute Job **Hartford, CT**

Lead fiscal officer sought for a full-time, mostly remote position responsible for overseeing team needs, resolving issues, maintaining communications, coordinating activities. BA/BS, MS Office proficiency, exceptional organization required.

### Contact Center Representative                                                            Nov 25
Full-Time Flexible Schedule Job **Hagerstown, MD**

Full-time position working flexible hours. Responsibilities include providing quality customer service, answering inbound calls, assisting customers with questions related to financial statements & credit card processing, and solving problems.

Prev (/jobs/telecommuting-jobs-at-first_data?page=4)

1 (/jobs/telecommuting-jobs-at-first_data?page=1)

2 (/jobs/telecommuting-jobs-at-first_data?page=2)

3 (/jobs/telecommuting-jobs-at-first_data?page=3)

4 (/jobs/telecommuting-jobs-at-first_data?page=4)          5

6 (/jobs/telecommuting-jobs-at-first_data?page=6)

7 (/jobs/telecommuting-jobs-at-first_data?page=7)

8 (/jobs/telecommuting-jobs-at-first_data?page=8)          ...

82 (/jobs/telecommuting-jobs-at-first_data?page=82)

83 (/jobs/telecommuting-jobs-at-first_data?page=83)

Next (/jobs/telecommuting-jobs-at-first_data?page=6)



# Join FlexJobs for Full Job Details and to Apply!

To apply to the specific job postings, please log in/login or **become a FlexJobs member** (/Members/Flexers/Register.aspx).

**Join FlexJobs to View All First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**

If you have any questions, please feel free to give us a call toll-free at 1-866-991-9222.

Seeking candidate with strong cross-selling skills for position working within an assigned territory handling a short sales cycle as well as performing territory planning and account development tasks. Full-time, work at home with occasional travel.

### Account Executive - Financial Technology Sales                              Nov 25
Full-Time Telecommute Job **Newark, NJ**

Be accountable for account development in established region. May include territory planning. Field sales, prospecting, and cross-selling skills required. Product line knowledge and sales closing req. Full-time and mostly remote role.

### Account Executive Financial Technology Sales                               Nov 25
Full-Time Telecommute Job **Fairfax, VA**

Will work within an assigned territory handling new account development ass well as handling a short sales cycle. Candidate must have at least 3 years of experience in sales. Bachelors degree required. Full-time, work at home with limited travel.

### Account Executive Financial Technology Sales                               Nov 25
Full-Time Telecommute Job **Brooklyn, NY**

Develop new accounts within a territory and drive sales of financial technology solutions. Full-time, mostly telecommuting role with some travel. Bachelor's degree or equivalent and 3+ years' previous sales experience preferred.

### Account Executive Financial Technology Sales                               Nov 25
Full-Time Telecommute Job **Newark, NJ**

Perform new account development tasks. May include territory planning. 4-year degree or an equivalent with three plus years of sales exp. preferred. Must have prospecting and cross-selling skills. Field sales and scoping skills req.

### Business Consultant                                                        Nov 25
Full-Time Telecommute Job **Nashville, TN**

Be responsible for the development of new accounts within an assigned territory, generate leads in a B2B environment and interface with prospects. 3+ years of experience in sales is preferred along with skills in cold-calling. Rem...

### Business Consultant                                                        Nov 25
Full-Time Telecommute Job **Raleigh, NC**

Generate own leads in 2B setting. Retain clients through building relationships and portfolio growth. Strong cold-calling... preferred. Pr... self-scoring s... exp. prefer... el is... ostly... m home.

### Regional Sales Director                                                    Nov 25
Full-Time Telecommute Job **Los... CA**

Seeking tech savvy candidate for position managing transactional sales directly to end-users, managing a team of business consultants, and carrying a roll up quota. Pr... merchant services experience required. FT, stay at home with occasional travel.

### Regional Sales Director                                                    Nov 25
Full-Time Telecommute Job **Hartford, CT**

Manage the transactional sales for end-users and oversee the sales executives in this full-time, mostly remote role. Bachelor's degree or the equivalent, 5+ years' sales experience, and a leadership background preferred.

**Join FlexJobs to View All**

### Sales Executive: Cl~~First Data~~ Fl~~exible~~ Jobs! (/Members/Flexers/Register.aspx)                              Nov 19
Full-Time Telecommute Job **Minneapolis, MN**

Commercial middle market sales executive sought for a full-time mostly telecommuting job. Applicant must have a bachelor's degree, knowledge of payments industry, exceptional communication skills, and willingness to travel.

### Business Consultant
Full-Time Telecommute Job **Toledo, OH**

Nov 17

Full-time, remote job. Skilled at generating leads in business and experience building working relationships. Listen to clients, understand needs and determine how to meet their goals, tech savvy, comfortable with cold calls and self source leads.

### Account Executive
Full-Time Telecommute Job **New York, NY**

Nov 17

Mostly remote, full-time opportunity. Bachelor's degree and 3+ years of sales experience preferred. Will be responsible for new account development in an assigned, established geographic territory for products & services with shorter sales cycles.

### Sales Executive
Full-Time Telecommute Job **Atlanta, GA**

Nov 17

Sales executive will be responsible for new account development and acquisition. Requirements include a bachelor's degree and 10 years' related experience (preferred) and organizational skills. Full-time mostly telecommuting position.

### Account Executive - Merchant Sales
Full-Time Telecommute Job **Los Angeles, CA**

Nov 17

Seeking candidate with a bachelor's degree, 3+ years' sales experience, awareness of product line, and prospecting skills to fill a full-time mostly telecommuting opportunity as an account executive, merchant sales.

### Account Executive
Full-Time Telecommute Job **Philadelphia, PA**

Nov 09

Be responsible for account development within a geographic territory and handle the short sales cycle. Must have a Bachelor's degree and 3+ years of experience in sales (preferred). Work from home.

### Account Exe
Full-Time Telecommute Job **Atlanta, GA**

Nov 09

Se     g organi       ha    savvy candidate i    sition providing strategic and co       ltative management for new a    existing c    nts, ex    nding existing accou    , and leadi    large, multi-discip    ed project teams. FT, work at home with lim    ed tra

### Account Exec    ve
Full-Time Tele    nmute    b C

Nov 09

Source new B    client    nd g    w relati    nship    to r    n cu    nt    tfolios    qu    self-s    ing quot    riven sales experie    e. Mus    e biling    ngli    and Spa    sh,    ofessio    nd tec    savv    eld-bas    note position with travel.

### Merchant Services Sales Representative
Full-Time Telecommute Job **Dallas, TX**

O

Will work in a remote environment self-sourcing leads in a B2B environment, gen    ss, serving as a trusted business consultant, and providing solutions to grow client businesses. Must team oriented. Full-time with limited travel.

### Account Executive
Full-Time Telecomm **First Data Flexible Jobs! (/Members/Flexers/Register.aspx)**

**Join FlexJobs to View All**

Oct 27

Full-time, mostly remote position. Will be responsible for generating new demand, revenue, profit margin, & retention, conducting regular communications with clients, leading & developing account strategy, and efficiently troubleshooting issues.

**Account Executive-Financial Technology Sales**                                    Oct 27
Full-Time Telecommute Job Greensboro, NC

Full-time, mostly remote opportunity. Will be responsible for developing new accounts within an established geographic region. At least 3 years of sales experience and a bachelor's degree are preferred.

**Account Executive**                                                               Oct 27
Full-Time Telecommute Job Coral Springs, FL

Full-time, mostly remote job. Responsible for offering clients solutions to grow their business, self-sourcing leads, and staying current on industry changes & developments. Must have the ability to create demand & build professional relationships.

**Account Executive**                                                               Oct 26
Full-Time Telecommute Job Philadelphia, PA

Full-time, mostly telecommuting opportunity. Will be responsible for generating new demand and working to meet revenue, retention, and profit margins. Must have a bachelor's degree or equivalent and 5 years of sales experience.

Prev (/jobs/telecommuting-jobs-at-first_data?page=5)

1 (/jobs/telecommuting-jobs-at-first_data?page=1)

2 (/jobs/telecommuting-jobs-at-first_data?page=2)

3 (/jobs/telecommuting-jobs-at-first_data?page=3)

4 (/jobs/telecommuting-jobs-at-first_data?page=4)

5 (/jobs/teleco-              -first_data?page=5)        6

7 (/jo+   .elecommuting-jobs-at-firs   a?page=7)

8 (/jobs/tele  mmut g-jobs-at-first_data?page=8)

9 (/jobs/te    mut  g-job        dat  pag   )

82 (/jobs/tel  ommu  ng-       data    e=82)

83 (/jobs/tel  ommu  ng-job     a?page  3)

Next (/jobs/telecommuting-jobs-at-first_data?page=

## Join FlexJobs for Full Job Details and to Apply!

Join FlexJobs to View All

To apply to the spe First Data Flexible Jobs (/Members/Flexers/Register.aspx) or (/Members/Flexers/Register.aspx).

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|
| X FEPA | DAYB6(27240)05172016 |
| EEOC | AMENDED |

Ohio Civil Rights Commission
_State or local Agency, if any_ _____ and EEOC

| Name (indicate Mr. Ms. Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mrs. Julie Kelly** | (513) 806-4893 | 11/07/1977 |

Street Address: **823 Dorgene Lane, Cincinnati, OH 45244**    City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (_If more than two, list under PARTICULARS below._)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **First Data Corporation** | 20,000 + | (866) 382-8843 |

Street Address: **5565 Glenridge Connector #2000, Atlanta, GA 30342**    City, State and ZIP Code

Ohio Civil Rights Commission

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **First Data Corporation** | 20,000+ | |

Street Address: **11311 Cornell Park Drive, Cincinnati, OH 45242**    City, State and ZIP Code

JUL 18 2018

DISCRIMINATION BASED ON (Check appropriate box(es).)

__ RACE  __ COLOR  X SEX  __ RELIGION  __ NATIONAL ORIGIN

X RETALIATION  __ AGE  X DISABILITY  __ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  Received  Latest

X CONTINUING ACTION

THE PARTICULARS ARE (_If additional paper is needed, attached extra sheet(s)_):

This serves as an Amended Charge of Discrimination. A Charge of Discrimination was filed in the above referenced Charge Number with the OCRC on May 16, 2018 ("Original Charge"). The Dates of Discrimination have been amended from November 30, 2017 to a Continuing Action. Since the filing of the Original Charge, additional events of retaliation have occurred. Charging Party brought these subsequent retaliatory actions to the OCRC's attention by letters and e-mails on the following dates: May 25, 2018, May 29, 2018, July 10, 2018, and July 11, 2018 – those communications, along with the original Charge of Discrimination, are incorporated herein by this reference. The above described correspondence documented continuing harassment and retaliation against Charging Party for raising the sex and disability discrimination claims set forth in the Original Charge. Charging Party seeks that the OCRC include in its investigation all claims of retaliation, including those raised in the communications contained in the correspondence outlined above. Any right-to-sue letter issued in connection with this investigation should include the allegations of continuing retaliation set forth in this amendment.

To the extent the OCRC will not consider this to be an amended Charger of Discrimination, the Charging Party files this Charge as a new Charge of Discrimination related to the events described in the correspondence set forth above that have occurred during the period between May 2018 and July 2018, and are continuing, and seeks a separate investigation into this continuing retaliation.

Contact regarding this Amended Charge of Discrimination/Charge of Discrimination should be directed to counsel for the Charging Party – Shawn Shearer, The Law Office of Shawn Shearer, P.C., 3839 McKinney Ave. #155-254, Dallas, TX 75204, (972) 803-4499, shawn@shearerlaw.pro

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - *When necessary for State and Local Agency Requirements*

**KRYSTLE IRETON**
Notary Public, State of Ohio
My Commission Expires
February 8, 2023

I declare under penalty of perjury that the above is true and correct.

Date 7/18/18

*Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

**SIGNATURE OF COMPLANANT**

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

Ohio Civil Rights Commission
Cincinnati Satellite Office

JUL 18 2018

Received

# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
SHAWN@SHEARERLAW.PRO

May 25, 2018

**HAND-DELIVERY**

Veronica Y. Bedinger
Civil Rights Investigator
Ohio Civil Rights Commission
Cincinnati Satellite Office
Mid-Pointe Towers
7162 Reading Road, Suite 1005
Cincinnati, OH 45237

      RE:    Julie Kelly v. First Data Corporation
              DAYB6(27240)05172016
              **Evidence of Retaliation to Filing of Charge of Discrimination**

Dear Ms. Bedinger:

I represent Julie Kelly ("Ms. Kelly") in connection with the above referenced charge of discrimination. By letter to the EEOC dated May 16, 2018, Ms. Kelly alleges First Data Corporation ("First Data") violated the ADA, the PDA and Title VII with respect to discrimination based on sex in the course of Ms. Kelly's employment and termination (the "Charge Letter").

    **This letter is to advise you of an urgent issue for your consideration as it impacts Ms. Kelly and could negatively impact the OCRC's ability to conduct a proper investigation of Ms. Kelly's claims.**

First Data has engaged in clear retaliatory conduct in reaction to Ms. Kelly raising claims of discrimination to First Data's in-house counsel and just this week retaliated against Ms. Kelly for filing her Charge of Discrimination that the OCRC just began to investigate last week. The details are set forth below. First Data's retaliatory conduct this week will likely impact the OCRC's investigation.

Background

On April 27, 2018, on behalf of Ms. Kelly I delivered a letter to First Data in-house counsel, Jill Poole, Senior Counsel. I asserted that Ms. Kelly was entitled the amount of benefits

Veronica Y. Bedinger
May 25, 2018

Page 2

and payments from First Data that she would have received under First Data's severance plan and stock option plan had she been terminated without cause – the same benefits that First Data has paid to numerous employees.

On May 1, 2018, First Data responded by letter directing Ms. Kelly to file her complaint with First Data severance and option plan administrators, which just happen to be First Data's office in Colorado which is also supported by Ms. Poole as in-house counsel. Simply a run-around tactic.

On May 3, 2018, I delivered another letter to Ms. Poole indicating Ms. Kelly was not making a claim under the severance plan and option plan, merely using those awards to terminated employees as a measure of the damages to settle the matter quickly. In this letter I also advised Ms. Poole that an EEOC Charge against First Data was in the process of being prepared, and Ms. Kelly increased the demanded amount to settle her claims based on the remedies available for violations of the ADA and Title VII. A copy of this May 3rd letter is attached as Exhibit A.

### May 10, 2018 & May 23, 2018 - Retaliation by First Data for Filing Charge

May 10, 2018 Retaliation - Threatening Ms. Kelly with Third-Party Subpoena

The incident of retaliation that is occurred on May 10, 2018 was a threat from First Data to issue a third-party deposition subpoena to Ms. Kelly in a case in which she was not a party. This threat to depose an unemployed mother of four, care taker of an elderly mother-in-law, and caretaker of a learning disabled brother, was directly retaliation for raising discrimination issues on May 3rd. These evets are outlined in the Charge Letter on page 9 and page 13. Below is a quick recap.

On May 10, 2018, 7-days after the delivery of the Ms. Kelly's May 3rd demand letter to First Data indicating an EEOC charge was being prepared, I received an e-mail from First Data's outside counsel (Saul Ewing Arnstein & Lehr) advising me that First Data was going to issue a third-party subpoena for the deposition of Ms. Kelly in the case of *Steven B. Barger v. First Data Corporation, et al.* This case was filed in August 2017 and is still pending in the Eastern District of New York (Case No. 1:17-cv-4869). In that case Plaintiff Barger is asserting that First Data violated the FMLA and ADA in the termination of Mr. Barger's employment in January 2017.[1]

On May 10, 2018, I further advised Saul Ewing that the threat of serving a third-party deposition subpoena on Ms. Kelly in the *Barger v. First* Data case was clear retaliation against Ms. Kelly for raising her claims of discrimination with in-house counsel at First Data and informed First Data that she was beginning the preparation of a charge with the EEOC.

---

[1] Prior to filing this case, Mr. Barger filed a Charge of Discrimination under the ADA and ADEA with the EEOC Atlanta, Georgia District Office (Case No. 410-2017-02839).

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Veronica Y. Bedinger
May 25, 2018

Page 3

I am lead Plaintiff's counsel in the *Barger v. First Data* case. Saul Ewing is lead counsel for the Defendants in the *Barger v. First Data* case. Saul Ewing has yet to indicate to me that they are counsel to First Data in connection with Ms. Kelly's claims against First Data.

Further communications I had with Saul Ewing on May 10th are attached as Exhibit B. In these communications, I indicate that I am counsel for Plaintiff Barger in the *Barger v. First Data* case, and that I am counsel for Ms. Kelly in her charges of discrimination to be filed with the EEOC. I also indicate that I had not been authorized to accept service on behalf of Ms. Kelly in the *Barger v. First Data* case, and that First Data would need to serve Ms. Kelly directly. I also indicated that service of a third-party deposition subpoena on Ms. Kelly would be considered retaliation for raising her claims of discrimination on May 3rd.

Ms. Kelly's charges of discrimination subject of the OCRC's investigation and described in the Charge Letter are wholly unrelated to the events leading to Mr. Barger's termination that are subject of *Barger v. First Data*. Mr. Barger was advised of his termination (while on leave recovering from laryngectomy surgery) on January 13, 2017. Ms. Kelly's last day of work at First Data was November 30, 2017, nearly one year after Mr. Barger was terminated. The circumstances surrounding the termination of Mr. Barger and Ms. Kelly have nothing to do with each other.

Mr. Barger was Ms. Kelly's direct supervisor at First Data from April 2014 through November 2016 and he had granted Ms. Kelly a reasonable accommodation of working from home despite the change to First Data's work at home policy (as described in the Charge Letter). Ms. Kelly had other supervisors prior to Mr. Barger that also accommodated her. It was only after Mr. Barger's departure that Ms. Kelly's accommodation was revoked by Ms. Robin Ording, VP of HR.

Ms. Kelly is not a party to the *Barger v. First Data* case. Ms. Kelly's testimony in the *Barger v. First Data* case is wholly irrelevant to the illegal termination of Mr. Barger while he was on approved FMLA leave. She has no documents or information that would illuminate any aspect of Defendant First Data's position in that case. Defendant First Data is arguing Mr. Barger was terminated in a reduction-in-force – Ms. Kelly was not privy to any information regarding the planning or execution of a reduction-in-force, if one occurred, given her position in the company. Moreover, to date, not even the Plaintiff himself has received a subpoena to give a deposition in the *Barger v. First Data* case.

Saul Ewing's May 10th threat to issue a third-party subpoena to Ms. Kelly was directly related to the demand letter First Data received from Ms. Kelly on May 3rd. The temporal proximity between the events is enough to reach the conclusion that the motive for threatening a third-party subpoena in a case unrelated to Ms. Kelly's claims of discrimination was retaliation for her raising discrimination claims.

Veronica Y. Bedinger
May 25, 2018

Page 4

May 23, 2018 – Retaliatory Service of Subpoena

On May 23, 2018, Ms. Kelly was personally served, at her home around 7:30 pm, with a third-party subpoena in the *Barger v. First Data* case. A copy of the third-party subpoena and cover letter she received is attached as Exhibit C. The deposition subpoena orders Ms. Kelly to appear for deposition on June 25, 2018.

An item of note, the cover letter to Ms. Kelly containing the third-party subpoena for deposition in the *Barger v. First Data* case is dated May 16, 2018. This date is not the correct date of service, Ms. Kelly did not receive service of the subpoena until May 23, 2018.[2]

On May 17, 2018, I delivered a copy of Ms. Kelly's Charge of Discrimination to First Data's in-house counsel (Saul Ewing to this date has not indicated they are representing Ms. Kelly with respect to her claims against First Data). The e-mail delivering the Charge is attached as Exhibit D

Saul Ewing clearly contemplated my statement in my May 10th e-mail that I considered service of the subpoena on Ms. Kelly to be direct retaliation for Ms. Kelly raising discrimination issues and demands on May 3rd. In addition, on May 17th, First Data received a copy of the Charge of Discrimination filed with the EEOC. Despite my May 10th warning against retaliation and my May 17th delivery of the EEOC Charge to First Data, Saul Ewing, on behalf of First Data, chose to serve a subpoena on Ms. Kelly a week later, on May 23rd.

First Data's retaliation by serving Ms. Kelly was an intentional, knowing act taken with full warning that the service would be considered to be retaliation against Ms. Kelly for asserting and filing her claims, and the subpoena was served with First Data's full knowledge that the EEOC Charge that the OCRC is now investigating had already been filed.

Questionable Circumstances of Service

Ms. Kelly currently remains unemployed and is the sole caretaker of her three children under the age of 6, her learning-disabled brother, and her 83-year old mother-in-law.

At or around 7:30 p.m. on May 23rd, Ms. Kelly was supervising her children swimming. A man dressed in a FedEx uniform and holding a FedEx box came to Ms. Kelly's door. Ms.

---

[2] Saul Ewing's cover letter is out of bounds. Saul Ewing had been advised that I did not represent Ms. Kelly in the *Barger v. First Data*. Yet, Saul Ewing tried to direct Ms. Kelly, an unrepresented non-lawyer, to discuss any questions she had about the subpoena with me. Saul Ewing, First Data's counsel in *Barger v. First Data*, has no business directing Ms. Kelly to me as an attorney to defend her deposition in that case. MRCP Rule 4.3 "The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel. . ." This does not include the right of adverse counsel issuing a subpoena to interfere with Ms. Kelly's right to hire the counsel of choice to defend her deposition in that case. Such steering of unrepresented parties raises numerous ethical issues.

Veronica Y. Bedinger
May 25, 2018

Kelly's husband answered the door and the "FedEx worker" asked where Julie Kelly was. Mr. Kelly indicated that his wife was in back with the children. The "FedEx worker" asked if he could go in back. Mr. Kelly refused and Ms. Kelly came to the door with some of her children. The "FedEx worker" then asked if she was Julie Kelly, to which she responded "yes." The "FedEx worker" then reached into the box (which apparently had been unsealed and open the entire time as a subterfuge) and pulled out the third-party deposition subpoena and handed it to her and said "you have been served." The "FedEx worker" then left, taking the box with him.

Needless to say, this "FedEx worker" was clearly a processes server, unrelated to the real FedEx, disguising himself in a Fed Ex uniform and carrying a decoy FedEx box. He did not give his name or affiliation, and he left carrying the FedEx box he used to obscure the subpoena.

Ms. Kelly has never evaded service. Ms. Kelly was aware that First Data had threatened to serve her. There was absolutely no reason to use such deceptive tactics.

Ms. Kelly called FedEx customer service the evening of May 23, 2018 and FedEx confirmed that its employees do not serve subpoenas. FedEx also indicated that it would be investigating who is impersonating FedEx employees for purposes of serving process in Cincinnati.

Ms. Kelly's three minor children, were upset by the interaction between their parents and the FedEx impersonator. This type of impersonation not only serves to harass and upset, it is also a dangerous practice that could by criminals to dupe unsuspecting people into opening their doors.

These types of deceptive tactics and the resulting damage to Ms. Kelly's children epitomizes and demonstrates the lengths First Data is willing to go to harass and intimidate employees and ex-employees that raise issues of discrimination, and especially ones who dare to file charges of discrimination.

## Implications

### Cost & Expense to Ms. Kelly

I am not Ms. Kelly's counsel in connection with the *Barger v First Data* case in which she has been subpoenaed by First Data to give a deposition. Since her termination from employment in November, despite her efforts, she has not been able to secure employment. In part, the problem is that in-house counsel for First Data, Lori Graesser, wrote to Ms. Kelly, less than a week after Ms. Kelly's employment ended, advising Ms. Kelly that she was subject to a covenant not to work for a competitor of First Data for a 24-month period after her termination and a covenant not to solicit First Data customers over that same 24-month period. A copy of Ms. Graesser's letter is attached as Exhibit E. Ms. Kelly asked First Data for clarification of these covenants, and for copies of the relevant documents allegedly imposing those restrictions. No clarification or documents have been provided to date.

Veronica Y. Bedinger
May 25, 2018

For nearly 20 years, the entirety of Ms. Kelly's adult career, Ms. Kelly was employed by First Data. The industry in which First Data operates is the only industry in which Ms. Kelly has experience and contacts. First Data's threats of enforcing a 24-month non-compete and non-solicit on a former employee who was not an officer, received little equity incentives or similar compensation, was not involved in corporate policy making and decision, and has no experience outside of First Data's industry, is offensive and inhuman, and creates a significant financial burden for Ms. Kelly by limiting her potential job search, and is unjustified threat to Ms. Kelly's assets when First Data was responsible for the elimination of her income.

With the loss of Ms. Kelly's income, the burden and expense on the Kelly family to obtain counsel to defend her deposition in the *Barger v. First Data* case, which is wholly unrelated to her charge of discrimination against First Data being investigated by the OCRC, may be cost prohibitive.

Does the OCRC provide any services or referrals for counsel that could assist Ms. Kelly and represent her to defend the deposition?

Could the OCRC seek a protective order or motion to quash the subpoena of Ms. Kelly in the *Barger v. First Data* case?

<u>First Data's Use of Third-Party Deposition to Depose Ms. Kelly on her Discrimination Claims</u>

If Ms. Kelly does provide sworn deposition testimony as a third-party witness in the *Barger v. First Data* case as subpoenaed, there is very little protection against First Data using that deposition as an opportunity to question Ms. Kelly about the circumstances of her employment and termination with respect to the Charge of Discrimination that the OCRC is now investigating. The implications of Ms. Kelly attending such a deposition in the next couple of months, unrepresented, should be viewed as problematic for the integrity of the OCRC's investigation process.

The OCRC should also be very concerned about Ms. Kelly being compelled to give sworn testimony in a wholly separate case against First Data. Ms. Kelly's sworn deposition in the *Barger v. First Data* case has significant potential for directly interfering with the OCRC's ongoing investigation into Ms. Kelly's allegations contained in her Charge of Discrimination (DAYB6(27240)05172018)

This type of harassment clearly is actionable under the *Burlington Northern* standard.

Please remember, Plaintiff Barger in *Barger v. First Data* has not even received a notice for the taking of his deposition by First Data. There is absolutely no reason for Ms. Kelly to be deposed other than to harass her and retaliate against her for raising and bringing charges of discrimination against First Data.

Veronica Y. Bedinger
May 25, 2018                                                                                    Page 7

   Thank you for taking the time to review these significant issues. If you could get back to me with your reactions and whether there are any resources to obtain counsel for Ms. Kelly, it would be greatly appreciated.

   I can be reached at the office (972) 803-4499. I will be traveling taking depositions over the next month, and can also be reached on my cell at (817) 915-8757.

                                        Very truly yours,

                                        Shawn E. Shearer

Attachments:

Exhibit A:     May 3, 2018 Demand Letter from Mr. Shearer to Ms. Poole (First Data in-house)

Exhibit B:     May 10, 2018 E-mail Exchange and Letter from Saul Ewing (Defendants' counsel in *Barger v. First Data*) to Mr. Shearer (Plaintiff's counsel in *Barger v. First Data*)

Exhibit C:     Third Party Subpoena served on May 23, 2018 (cover letter dated May 16, 2018)

Exhibit D:     May 17, 2018 delivery of EEOC Charge to First Data

Exhibit E:     Letter from First Data to Ms. Kelly dated December 5, 2017 re: non-compete and non-solicit

Exhibit F:     Statement of Matt Kelly re: Service of Process

cc:     Julie Kelly

May 25, 2018 Letter to OCRC (Kelly v. First Data)

# EXHIBIT A

# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 MCKINNEY AVENUE, SUITE #155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
SHAWN@SHEARERLAW.PRO

May 3, 2018

Jill Poole
Senior Counsel
First Data Corporation
6855 Pacific Street
Omaha, NE 68106

      Re:   Julie Kelly Termination

Ms. Poole:

I have received your letter dated May 1, 2018 in response to my letter to you dated April 27, 2018.

I think you have a misunderstanding of the demands contained in my original letter. I was requesting a settlement on behalf of Ms. Kelly involving payment to her for a release of her claims against First Data Corporation. My references to the treatment of employees under First Data's alleged RIF was nothing more than a benchmark against which I was measuring Ms. Kelly's claims for purposes of a quick settlement.

You seem to have taken my correspondence differently, so to the extent you need to do so, please consider my letter of April 27, 2018 to you to be notice to the Plan Administrator under both the Severance Plan and the Incentive Compensation Plan (both as defined in your letter of May 1, 2018).

There is no need to play games on this issue, First Data Corporation is the Plan Administrator for both plans and you are counsel for First Data Corporation. Your receipt of my letter on May 1 is sufficient notice of Ms. Kelly's claim under both plans.

I am in the process of preparing an EEOC Complaint against First Data on behalf of Ms. Kelly. My April 27th letter was an attempt to reach an amicable resolution and settlement based on an amount commensurate with the treatment of other employees included in this supposed "RIF". From your response, it is clear that First Data's position is that Ms. Kelly was not included in the "RIF". If she was, treat her commensurately. If you do not, the only logical conclusion is that Ms. Kelly was not included in the RIF, and therefore a RIF defense to her claims will not be available.

THE LAW OFFICE OF SHAWN SHEARER, P.C.

Jill Poole
First Data Corporation
May 3, 2018                                                                Page 2

Because I have had to write you again, and you gave me the run-around demanding that a separate letter be sent to First Data at its Greenwood, CO location that is supported by you and Ms. Graesser as counsel (I understand the stall tactics of First Data and such an exercise has no legal meaning under the plans or the law), on behalf of Ms. Kelly, **I hereby demand payment by First Data to Ms. Kelly in the amount of $170,000** (calculated using estimates of back-pay, lost equity, lost bonuses, attorney's fees, and, for you and First Data, the convenience of avoiding another round of litigation). If this process drags on, my demands will continue to increase.

Please respond to me promptly because an EEOC Complaint is headed to First Data, and I like the prospects of being in the 6th Circuit on these claims.

I can be reached at (972) 803-4499 or (817) 915-8757.

Very truly yours,

Shawn E. Shearer

THE LAW OFFICE OF SHAWN SHEARER, P.C.

May 25, 2018 Letter to OCRC (Kelly v. First Data)

# EXHIBIT B

## Shawn Shearer

| | |
|---|---|
| **From:** | Eidelman, Gary B. <Gary.Eidelman@saul.com> |
| **Sent:** | Thursday, May 10, 2018 9:57 AM |
| **To:** | 'Shawn Shearer' |
| **Cc:** | David@zeitlinlawfirm.com; Kennedy, Lindsey C.; Cooper, Gillian A.; Eidelman, Gary B. |
| **Subject:** | RE: Deposition of Julie Kelly |

Thank you for your email. Please let me know by Monday, May 14, 2018 if you are authorized to accept service so we don't have to bother Ms. Kelly. As mentioned in my letter, we will work with you and her on a date for her deposition that is convenient.

**Gary B. Eidelman, Esq.**
Saul Ewing Arnstein & Lehr LLP
Office: 410.332.8975
Mobile: 410.303.8832

**From:** Shawn Shearer [mailto:shawn@shearerlaw.pro]
**Sent:** Thursday, May 10, 2018 5:58 AM
**To:** Eidelman, Gary B.
**Cc:** David@zeitlinlawfirm.com; Kennedy, Lindsey C.; Cooper, Gillian A.
**Subject:** Re: Deposition of Julie Kelly

Gary - I have more than "any questions", so I am letting you know.

Unlike Saul Ewing, I am able to keep my representations straight. Up until this point, you have taken on the representation of every ex-employee of First Data that has become relevant in the Barger v. First Data case. What makes you think I represent Ms. Kelly in the Barger v First Data matter? Given your conduct to date, I would assume you are Ms. Kelly's counsel in the Barger case, but apparently you are not. It's interesting how you choose which ex-employee to represent and which ex-employee to harass.

Here is my representation status as of today:

I represent Steve Barger in the Barger v. First Data case pending in the EDNY.

I represent Julie Kelly with respect to her claims for discrimination arising out of her termination of employment by First Data. A week ago I advised in-house counsel at First Data that I was preparing an EEOC charge on Ms. Kelly's behalf. In response, you have tried to send a deposition notice in the Barger v. First Data case to her through me. Very curious, and clear retaliation given every other ex-employee that has become involved in the Barger v. First Data case has quickly become your client, except Ms. Kelly who just recently advised First Data that she would be filing an EEOC charge.

You have not represented to me that you are counsel for First Data with respect to Ms. Kelly's claims against First Data. I don't know why I should be discussing her case with you.

Ms. Kelly has not given me authorization to accept service of process on her behalf in any matter.

I will say this on behalf of Ms. Kelly and Mr. Barger, if you serve Ms. Kelly (a mother of four and 20+ year employee of First Data) with this deposition notice, I will seek a protective order and we can talk with Judge

Bloom. In addition, even if you decide not to serve Ms. Kelly with this deposition notice, your conduct in choosing, and threatening, Ms. Kelly as your first witness to be deposed in the Barger v. First Data case, just days after First Data was notified of the preparation of her complaint to be filed with the EEOC, is undeniable, intentional retaliation against her for raising EEOC issues and will be so noted and alleged in her EEOC charge.

Until I let you know that I have authority to accept service on behalf of Ms. Kelly in the Barger v. First Data case, you should proceed to properly serve her. Try not to do it in front of the children you cared so much about in the matter of the Voycheske affidavit.

Shawn Shearer
The Law Office of Shawn Shearer

On Wed, May 9, 2018, 11:37 PM Eidelman, Gary B. <Gary.Eidelman@saul.com> wrote:

Shawn, please see the attached. Let me know if you have any questions.



**Gary B. Eidelman**
**SAUL EWING ARNSTEIN & LEHR LLP**
500 E. Pratt Street
Suite 900 | Baltimore, MD 21202-3133
Tel: 410.332.8975 | Fax: 410.332.8976 | Mobile: 410.303.8832

Gary.Eidelman@saul.com | www.saul.com



*Follow our blog, WISE: Workplace Initiatives and Strategies for Employers, here*

* Please note that our Firm name and my email address have changed.

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~~~~+

This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~~~~+



**SAUL EWING**

**ARNSTEIN**

**& LEHR** LLP

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

May 10, 2018

**Via Electronic and First Class Mail**

Shawn E. Shearer, Esquire
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204

> Re:   *Steven B. Barger v. First Data Corporation et al.*
>        **Civil Case No. 1:17-cv-4869**

Dear Shawn:

In our Initial Disclosures, we identified Julie Kelly as an individual possibly having knowledge related to some of the issues in this case. I have come to learn that you now represent Ms. Kelly. So as not to run afoul of the Rules of Professional Conduct by contacting her, I have gone ahead and noticed her deposition for Cincinnati, Ohio on Monday, June 25, 2018. A Notice of Deposition and Subpoena is enclosed. This date is simply a placeholder subject to us finding a mutually agreeable date. Does this date work for you? Once we finalize the date, I will have the witness fee check prepared for Ms. Kelly.

Will you accept the subpoena on her behalf? Otherwise we will arrange to have her served. Please let me know if you have any questions.

Very truly yours,

*Gary B. Eidel*

Gary B. Eidelman

Enclosures

cc: Counsel of Record

24542543.1  05/10/2018

500 E. Pratt Street ◦ Suite 900 ◦ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ◦ Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

May 25, 2018 Letter to OCRC (Kelly v. First Data)

# EXHIBIT C



**SAUL EWING ARNSTEIN & LEHR** ᴸᴸᴾ

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

May 16, 2018

**Via Hand Delivery**
Ms. Julie Kelly
823 Dorgene Lane
Cincinnati, OH 45244

   **Re:** *Steven B. Barger v. First Data Corporation et al.*
      **Civil Case No. 1:17-cv-4869**

Dear Ms. Kelly:

  This firm represents Defendants First Data Corporation, Frank Bisignano, Dan Charron, Karen Whalen, Rhonda Johnson, and Anthony Marino in connection with the above-referenced matter which is pending in the United States District Court for the Eastern District of New York. Enclosed please find a subpoena compelling your attendance at a deposition in this case which is scheduled for **Monday, June 25, 2018 at 10:00 AM** at the offices of Cook & Logothetis, LLC, 30 Garfield Place, Suite 540, Cincinnati, Ohio 45202.

  We understand that you are represented by Shawn Shearer, who is also Mr. Barger's counsel, in connection with your employment at First Data. We contacted Mr. Shearer about this subpoena and he advised that we should serve you personally. We also advised Mr. Shearer that if this date is inconvenient, we will work with you to find a better date. We will also provide you with the statutory witness and mileage fee at your deposition.

  If you have any questions about the date, please inform Mr. Shearer and he can provide us with alternative dates when you are available. Thank you for your anticipated cooperation.

          Very truly yours,

          *Gary B. Eidel*

          Gary B. Eidelman

500 E. Pratt Street ♦ Suite 900 ♦ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ♦ Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| Steven B. Barger | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:17-cv-04869 |
| First Data Corporation, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Julie Kelly, 823 Dorgene Lane, Cincinnati, OH 45244

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Cook & Logothetis, LLC<br>30 Garfield Place - Suite 540<br>Cincinnati, OH 45202 | Date and Time:<br>06/25/2018 10:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographically and will continue day to day until complete

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/16/2018

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Gary B. Eidelman |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants, _____ , who issues or requests this subpoena, are:
Gary B. Eidelman, Esq., 500 E. Pratt St., Ste. 800, Baltimore, MD 21202; gary.eidelman@saul.com; 410-332-8975

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:17-cv-04869

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SAUL EWING**
**ARNSTEIN**
**& LEHR** LLP

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

May 16, 2018

**Via Hand Delivery**
Ms. Julie Kelly
823 Dorgene Lane
Cincinnati, OH 45244

> **Re:** *Steven B. Barger v. First Data Corporation et al.*
> **Civil Case No. 1:17-cv-4869**

Dear Ms. Kelly:

This firm represents Defendants First Data Corporation, Frank Bisignano, Dan Charron, Karen Whalen, Rhonda Johnson, and Anthony Marino in connection with the above-referenced matter which is pending in the United States District Court for the Eastern District of New York. Enclosed please find a subpoena compelling your attendance at a deposition in this case which is scheduled for **Monday, June 25, 2018 at 10:00 AM** at the offices of Cook & Logothetis, LLC, 30 Garfield Place, Suite 540, Cincinnati, Ohio 45202.

We understand that you are represented by Shawn Shearer, who is also Mr. Barger's counsel, in connection with your employment at First Data. We contacted Mr. Shearer about this subpoena and he advised that we should serve you personally. We also advised Mr. Shearer that if this date is inconvenient, we will work with you to find a better date. We will also provide you with the statutory witness and mileage fee at your deposition.

If you have any questions about the date, please inform Mr. Shearer and he can provide us with alternative dates when you are available. Thank you for your anticipated cooperation.

Very truly yours,

Gary B. Eidelman

Gary B. Eidelman

500 E. Pratt Street ♦ Suite 900 ♦ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ♦ Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

Shawn E. Shearer, Esq.
April 25, 2018
Page 2

Enclosures
cc:    Shawn Shearer, Esq.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

STEVEN B. BARGER, an individual,                Civil Case No.: 1:17-cv-04869-FB-LB

       Plaintiff,

v.                                              **NOTICE OF INTENTION TO TAKE
                                                ORAL DEPOSITION BY SUBPOENA OF
                                                JULIE KELLY**

FIRST DATA CORPORATION, a Delaware
corporation; FRANK BISIGNANO, an
individual; DAN CHARRON, an individual;
ANTHONY MARINO, an individual; KAREN
WHALEN, an individual; LORI GRAESSER,
an individual; and RHONDA JOHNSON, an
individual,

       Defendants.

---

      **PLEASE TAKE NOTICE** that on June 25, 2018 at 10:00 a.m., pursuant to Rules 30 and

45 of the Federal Rules of Civil Procedure, counsel for Defendant First Data Corporation will

take the deposition, under oath, of Julie Kelly. The deposition will be taken at the offices of

Cook & Logothetis, LLC, 30 Garfield Place – Suite 540, Cincinnati, Ohio 45202, before a court

reporter or other officer authorized by law to administer oaths. The deposition will be recorded

using stenographic means and shall continue  day to day until completed, or as counsel shall

otherwise stipulate.

      DATED:  May 16, 2018.

                        By: */s/ Gary B. Eidelman*
                        Gary B. Eidelman, Esq.
                        (admitted *pro hac vice*)
                        Saul Ewing Arnstein & Lehr LLP
                        500 E. Pratt Street, Suite 800
                        Baltimore, MD  21202
                        T: (410) 332-8975
                        gary.eidelman@saul.com

Gillian A. Cooper, Esq.
Saul Ewing Arnstein & Lehr LLP
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
gillian.cooper@saul.com

Lindsey C. Kennedy
Saul Ewing Arnstein & Lehr LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
T: (412) 209-2555
lindsey.kennedy@saul.com

*Attorneys for Defendants,*
*First Data Corporation, Frank Bisignano, Dan*
*Charron, Anthony Marino, Karen Whalen, and*
*Rhonda Johnson*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of May, 2018, the foregoing Notice

of Intention to Take Oral Deposition by Subpoena of Julie Kelly and Subpoena was served by

U.S. First Class postage prepaid mail on:

Shawn E. Shearer, Esq.
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
T: (214) 434-1594
shawn@shearerlaw.pro
*Attorneys for Plaintiff*

Stephen M. Zeitlin, Esq.
David A. Zeitlin, Esq.
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, New York 11201
T: (718) 522-5644
david@zeitlinlawfirm.com
*Attorneys for Plaintiff*

/s/ *Gary B. Eidelman*
Gary B. Eidelman, Esq.