**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JULIE KELLY** | : | Case No. 1:19-CV-372 |
| | : | |
| **Plaintiff** | : | Judge Susan J. Dlott |
| **v.** | : | |
| | : | Magistrate Judge Stephanie K. Bowman |
| **FIRST DATA CORPORATION, ET AL.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

**MOTION TO DISMISS**
**BY DEFENDANTS JACKSON LEWIS P.C. AND MATTHEW BYRNE**

---

Defendants Jackson Lewis P.C. and Matthew Byrne move this Court to dismiss Plaintiff's claims against them with prejudice pursuant to Federal R. Civ. P. 12(b)(6). Plaintiff fails to state a claim upon which relief can be granted with respect to Jackson Lewis and Matthew Byrne. As a matter of law, Plaintiff cannot establish that these two defendants are subject to any liability under the claims she has asserted against them. Plaintiff's claims against these two defendants are further barred by the doctrine of judicial privilege. This Motion is supported by the attached Memorandum.

Respectfully submitted,

/s/ *Daniel G. Rosenthal*
Daniel G. Rosenthal, Trial Attorney (OH # 0010119)
Gretchen M. Treherne (OH # 0074376)
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Tel: (513) 898-0050
Email: Daniel.Rosenthal@jacksonlewis.com;
Gretchen.Treherne@jacksonlewis.com
*Attorneys for Defendants Jackson Lewis P.C.*
*and Matthew Byrne*

<u>**MEMORANDUM**</u>

**I.    <u>SUMMARY</u>**

In 2018, after Plaintiff Julie Kelly ("Kelly") raised many of the same objections that she raises in this case, this Court *twice* issued orders requiring Kelly to attend a third party witness deposition in Ohio. The deposition was taken in connection with a case pending in the U.S. District Court for the Eastern District of New York, *Barger v. First Data Corporation*, Case No. 1:17-cv-4689 ("Barger Case").  Defendant Gillian Cooper, an attorney at Defendant Saul Ewing Arnstein & Lehr, LLP ("SEAL") and counsel for First Data in the Barger Case, took Kelly's deposition. Defendant Matthew Byrne, an attorney at Defendant Jackson Lewis P.C., attended that deposition solely in his limited capacity as local counsel for Defendant First Data Corporation in the miscellaneous action filed in this Court to compel Kelly to attend the deposition.  The original subpoena that First Data sought to enforce was issued before Byrne's and Jackson Lewis' retention by First Data.

In her 46-page (not counting the 188 pages of exhibits), 354-paragraph Complaint (Doc. 1), Kelly now brings claims against Jackson Lewis and Byrne for Retaliation (Count IV), Violations of the Ohio Civil Rights Act (Count V), Negligent, Reckless, and Intentional Infliction of Emotional Distress (Count VII), and Eavesdropping/Invasion of Privacy (Count VIII). All of Kelly's claims against Jackson Lewis and Byrne relate solely to Jackson Lewis and Byrne's representation of First Data as local counsel in connection with First Data's successful attempt to enforce the subpoena.  Kelly brings these claims despite the fact that she stated in an e-mail to Byrne's undersigned counsel that: "Mr. Byrne appears to be an ethical professional, who would stick to the rules and not try to use the legal system as a way to make my life miserable just because I chose to exercise my rights under the OCRC."  (Affidavit of Matthew Byrne, "Byrne Aff.," at ¶ 17, Ex. D, attached as Exhibit 1).  Kelly's claims must be dismissed with prejudice under Fed. R.

Civ. P. 12(b)(6) because Plaintiff fails to allege any legally cognizable claim upon which relief can be granted against Jackson Lewis and Byrne. These claims must also be dismissed because the judicial immunity doctrine provides attorneys with an absolute privilege protecting them from claims brought regarding their advocacy for their client as attorneys in civil proceedings.

## II.    RELEVANT BACKGROUND FACTS[1]

Plaintiff Julie Kelly was previously employed by First Data.  (Compl. ¶¶ 38, 150, 155, Doc. No. 1, PAGEID# 6, 19-20).  In August 2017, Kelly's former supervisor, Steven Barger, filed the Barger Case, an employment lawsuit, against First Data and other defendants in the United States District Court for the Eastern District of New York.  (*Id*. ¶¶ 42, 162, PAGEID# 6, 21).  Defendant Saul Ewing Arnstein & Lehr, LLP ("SEAL") served as counsel for First Data.  (*Id*.  at ¶ 163, PAGEID# 21).  In November 2017, First Data identified Kelly, at that time still a First Data employee, as a potential witness in the Barger Case.  (*Id*. at ¶¶ 164-66).  Kelly resigned the same month.  (*Id.* at ¶ 165).

In May 2018, First Data learned that Kelly was represented by the same counsel as Barger when Kelly's counsel sent a letter to First Data's in-house legal department asserting various employment-related claims on behalf of Kelly. (*Id.* at ¶ 168). On May 10, 2018, SEAL notified Kelly's counsel that First Data would be taking Kelly's deposition as a third-party witness in the Barger Case.  (*Id*. at ¶ 169, PageID# 22).

On May 23, 2018, First Data served a third-party subpoena for deposition upon Kelly in the Barger Case*,* with the deposition scheduled to take place on June 25, 2018.  (*Id*. at ¶ 173). Kelly and SEAL communicated over the next several months regarding the scheduling of her deposition.

---

[1] For purposes of this Rule 12(b)(6) motion only, Jackson Lewis and Byrne assume that all facts alleged in Plaintiff's Complaint are true. Jackson Lewis and Byrne reserve the right to deny Plaintiff's allegations after the motion to dismiss stage.

(*Id*. ¶¶ 181-184, 186, 191-193). Neither Jackson Lewis nor Byrne were counsel for First Data in the Barger Case during any of the events described above. (*See Id*. at ¶¶ 173, 199; Byrne Aff. ¶¶ 2-3).

On July 23, 2018, First Data filed an action ("Miscellaneous Action") in the United States District Court for the Southern District of Ohio, Case No. 1:18-mc-00010, for the purpose of filing a Motion to Compel with respect to Kelly's appearance at a deposition in the Barger Case. (*Id*. at ¶ 199, PAGEID# 27). Jackson Lewis and Byrne became involved in the Barger matter for the first time on July 18, 2018, when First Data first retained Byrne only as local counsel to assist with compelling Kelly to appear for her deposition. (Byrne Aff. ¶¶-2-3)

This Court ultimately granted the Motion to Compel and ordered Kelly to comply with the subpoena for her deposition, which was to be held at the U.S. Potter Stewart Courthouse in Cincinnati. (Miscellaneous Action, Doc. Nos. 21 and 29). The Court also denied Kelly's Motion to Quash, Motion for Sanctions, and Motion for Protective Order. (*Id.*) Primary counsel for First Data, Gillian Cooper of SEAL, took Kelly's deposition on October 15, 2018. (Compl. ¶ 223-224, PAGEID# 30). Byrne simply attended the deposition as local counsel. (Byrne Aff. ¶ 5). Byrne asked no questions of Kelly during the deposition. (*Id*. at ¶ 12).

Kelly's allegations in the Complaint specifically referring to Byrne and Jackson Lewis are few and limited in nature:

- "Defendant Jackson Lewis is a law firm that has acted on behalf of, and as agent of, First Data, in *Barger v. First Data*, and subpoenaed and deposed Kelly as a third-party witness in that case in Ohio." (Compl. ¶ 18, Doc. No. 1, PAGEID 4).

- "Matthew Byrne is a partner at Jackson Lewis who signed documents related to Kelly's deposition filed with the Southern District of Ohio in the Barger v. First Data third-party discovery litigation." (*Id*. at ¶ 19).

- " . . . Matthew Byrne sponsored Defendant Cooper's pro hac vice admission in the Southern District of Ohio in the *Barger v. First Data* third-party discovery litigation." (*Id*. at ¶ 20).

- "On August 3, 2018, Copper [sic] and Byrne filed a response to Kelly's Motion to Quash the second subpoena seeking the deposition and production of documents." (*Id*. at ¶ 205, PAGEID# 27).

- "The deposition was held on October 15, 2018, and again First Data, SEAL, Jackson Lewis, Cooper and Byrne brought Ording as First Data's corporate representative." (*Id*. at ¶ 220, PAGEID# 30).

Kelly also alleges "upon information and belief" that First Data's counsel, including SEAL, Cooper, Jackson Lewis and Byrne "surreptitiously" made a video recording of her deposition. (Compl. at ¶¶ 342-347, PAGEID# 44-45).

According to Kelly, her claims for retaliation, violations of the Ohio Civil Rights Act, emotional distress, and invasion of privacy are premised on her being subpoenaed for and appearing at her deposition in the Barger Case. (Compl. ¶¶ 221-222, 289-292, 297, 308, 308, 311-322, 330-352, Doc. NO. 1, PAGEID # 30, 38-39, 42-46).

## III. <u>STANDARD OF REVIEW</u>

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). Pleadings offering mere "'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to

accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 106 S. Ct. 2932 (1986). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

"[W]hen deciding a motion to dismiss, a court may consider only matters properly a part of the complaint or pleadings." *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). The Sixth Circuit, however has taken "a liberal view of what matters fall within the pleadings" for purposes of Rule 12. *Id.* at 344 (6th Cir. 2001). Courts also consider documents referenced in the complaint. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). The Court may consider "exhibits submitted by the defendant which can properly be considered incorporated by reference into the complaint and, thus, a part of the pleadings." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). The Court will consider exhibits "part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))[2]. For the reasons set forth below, Plaintiff's Complaint against Jackson Lewis and Byrne must be dismissed.

---

[2] Jackson Lewis and Byrne submit Byrne's Affidavit to demonstrate the limited nature of his involvement in this matter. His representation of First Data is referenced throughout the Complaint and serves as the basis for Kelly's claims against him. The Sixth Circuit has "identified circumstances in which a district court may consider non-record material without converting the motion to dismiss into a motion for summary judgment." *Melton v. Blankenship*, Case No. 08-5346, 2009 U.S. App. LEXIS 686, *15-16, (6th Cir.), 2009 WL 87472 (6th Cir. Jan. 13, 2009). In *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997), the Court held that while "a plaintiff is under no obligation to attach to his complaint documents upon which his action is based . . . a defendant may introduce certain pertinent documents if the plaintiff fails to do so." Nevertheless, while Jackson Lewis and Byrne do not believe the submission of Byrne's Affidavit makes it necessary to convert the instant motion into a motion for summary judgment under Fed R. Civ. P.

## IV.   LAW AND ANALYSIS

### A.   Plaintiff Has Failed to State a Claim Against Jackson Lewis and Byrne Upon Which Relief Can Be Granted.

All of Kelly's claims against Jackson Lewis and Byrne should be dismissed because she fails to state a claim upon which relief can be granted.

#### 1.   *Plaintiff Cannot Establish a Claim for Retaliation.*

Kelly's retaliation claim against Jackson Lewis and Byrne (Count IV) is premised upon Byrne serving as local counsel for First Data in its attempt to compel Kelly's deposition in the Barger Case. (Compl. ¶ 292, Doc No. 1, PAGEID#38). Kelly claims that her selection as a deponent was "motivated solely as retaliation for raising charges of discrimination." (*Id*. ¶ 293). Her alleged retaliation claim is asserted under both the Ohio Civil Rights Act ("OCRA"), O.R.C. § 4112 *et seq*. and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

#### a.   Plaintiff cannot establish a retaliation claim under the ADA.

The ADA's retaliation provision states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The fact that Jackson Lewis and Byrne did not maintain an employment relationship with Kelly defeats Kelly's retaliation claim. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014 ("Adverse employment action requires an official act of the enterprise, a company act.") (internal quotation omitted). Though the ADA's anti-retaliation provision provides that "no person" may retaliate, the Sixth Circuit would clearly not hold that this provision applies to attorneys representing employers

---

56, they do not object to the conversion of the motion to dismiss to a motion for summary judgment if necessary. Under any standard of review, Plaintiff cannot properly assert her claims.

in litigation. When considering whether a retaliation claim under the FLSA -- which similar to the ADA prohibits retaliation by "any person" -- could be maintained against an employer's attorneys, the Sixth Circuit expressly held that outside counsel cannot be liable for retaliation for acts taken within the scope of their legal representation of the client. *Diaz v. Longcore*, 751 F. App'x 755, 759 (6th Cir. 2018). Although *Diaz* interpreted the "any person" language of the FLSA, the same analysis applies to the "no person" language of the ADA.[3] Thus, the scope of the ADA's anti-retaliation provision does not extend beyond to Jackson Lewis and Byrne, who were never Kelly's employers and played absolutely no role with respect to her employment. Kelly has not, and cannot, allege that First Data's local outside counsel were her employer. Kelly's ADA retaliation claim against Jackson Lewis and Byrne therefore fails.

In setting forth the elements of a *prima facie* case of retaliation under the ADA arising out of a plaintiff's employment, the Sixth Circuit has further established that the ADA's anti-retaliation provision only applies to employers. To establish a *prima facie* case of retaliation under the ADA, a plaintiff such as Kelly must demonstrate that "(1) the plaintiff engaged in activity protected under the ADA; (2) **the employer** knew of that activity; (3) **the employer** took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)(emphasis added); *see also Sharp v. Waste Mgmt.*, 47 F. Supp. 3d 584, 600 (S.D. Ohio 2014)

---

[3] When considering whether retaliation claims can be asserted against lawyers under Title VII, other courts have likewise concluded that lawyers for an employer may not be sued for retaliation because the definition of employer does not extend to outside counsel. *See Hofmann v. Fermilab Nal/Ura*, 205 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("[The plaintiff] may not sue her former employer's lawyers under the employment discrimination law; they were not her employer."); *Tolar v. Bradley Arant Boult Cummings*, No. 2:13-cv-00132, 2014 U.S. Dist. LEXIS 185272, at *21 (N.D. Ala. Nov. 18, 2014) ("[Title VII] does not extend so far as to the reach adverse treatment here, undertaken by a law firm defendant that undisputedly had no past, present, or prospective employment relationship with any party either claiming to be aggrieved or who engaged in activity protected under § 2000e-3(a)."); *Savarirayan v. Blue Cross Blue Shield of Illinois*, No. 10 C 4723, 2011 U.S. Dist. LEXIS 38868,, at *8 fn.5 (N.D. Ill. Apr. 7, 2011) (dismissing plaintiff's discrimination claims against his former employer's attorneys because "[the defendant's] litigation attorneys would not be considered plaintiff's employers").

(Black, J.). Specifically, "but for" causation between the protected activity and the adverse employment action is needed. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517 (2013). "But for" causation exists where "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 346-47.

Kelly cannot establish a *prima facie* case of retaliation against Jackson Lewis and Byrne for several reasons.  First, as set forth above, Jackson Lewis and Byrne were not her employer; therefore, she cannot establish that Jackson Lewis and Byrne took an adverse employment action against her.  Second, Kelly admittedly resigned her employment.  (Compl. ¶ 148, 150, Doc. No. 1, PAGEID# 19).  A voluntary resignation is not an adverse employment action.  *See Laster,* 746 F.3d  at 727 *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003) (referring to lack of involuntary discharge as "fatal defect" in Title VII case).  Additionally, at the time she resigned her employment, neither Jackson Lewis nor Byrne were representing First Data.  Kelly's last day of employment was November 30, 2017. (Compl. ¶ 155).  Jackson Lewis and Byrne did not become local counsel for First Data (in their very limited capacity) until almost eight months later.[4] (Byrne Aff. ¶ 2).

Third, to the extent that Kelly is claiming that First Data's issuance of a subpoena to appear at a deposition was an adverse action, her claim is not supported by law. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006) ("In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse,

---

[4] First Data listed Kelly as a potential witness in the *Barger Case* before the last day of her employment and before she filed a charge of discrimination against First Data with the EEOC and OCRC.  (Compl. ¶ 164).  Thus, Kelly should have known that she may be subpoenaed for a deposition before she filed her administrative charges and the issuance of a subpoena was in no way a retaliatory act.  Regardless, Kelly had already been issued a subpoena for her deposition well before Jackson Lewis and Byrne were retained as local counsel.

which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")  "In light of this [*Burlington*] standard, issuance of a subpoena is not an adverse action." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 598 (E.D. Pa. 2017).

Kelly similarly cannot establish a causal connection between Kelly's protected activity and any actions taken by Jackson Lewis and Byrne. In order to establish the causal connection required in the fourth prong, "the employee must produce evidence sufficient to infer that the employer would not have acted had the employee not engaged in protected activity." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003). Jackson Lewis and Byrne did not begin their limited involvement in serving as local counsel to compel Kelly's deposition until July 18, 2019, almost eight months after Kelly resigned her employment, over two months after she had filed her charge of discrimination, and more than two months after First Data subpoenaed her for her deposition. (Compl. ¶ 199).  Jackson Lewis and Byrne were not even involved in the core events that Kelly alleges give rise to her retaliation claim.  Nor have Byrne or any attorney from Jackson Lewis ever represented First Data or participated in any way in the charges of discrimination that Kelly filed with the EEOC and the OCRC.  (*See* Byrne Aff. at Ex. E).

This Court ordered Kelly to appear for her deposition in the miscellaneous proceedings relating to the *Barger Case*.  (See S.D. Ohio Case No. 1:18-mc-00010 at Doc. Nos. 21 and 29). Kelly had raised the issue of retaliation in her Motion for Sanctions (see Doc. No. 7, PAGEID# 256, 263 in the *Barger Case*) and her Motion for Protective Order (see Doc No. 10 at PAGEID# 9 in the *Barger Case*).  This Court rejected her retaliation argument when it denied Kelly's motions (see Doc No. 21 at PAGEID# 602 and Doc. No. 29 at PAGEID# 773 in the *Barger case*).  The Court's rejection of Kelly's retaliation allegations confirms that the limited actions taken by

Jackson Lewis and Byrne with respect to Kelly were reasonable and legitimate and not retaliatory. Thus, the reasonable legal actions taken by Jackson Lewis and Byrne in compelling Kelly's appearance at her deposition do not constitute retaliation. *See, e.g., Ellis v. Prospect Airport Servs.*, Case No. 17-13852, 2019 U.S. Dist. LEXIS 54305, *23-24 (E.D. Mich. Jan. 25, 2019) (*quoting Hatton v. United Parcel Serv.*, 2006 U.S. Dist. LEXIS 47734, 2006 WL 1895724, *3 (E.D. Ky. July 7, 2006) (internal citations omitted) ("[r]easonable legal positions, without more, do not constitute retaliation.") "[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [the ADA and Title VII] statutes." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).

Accordingly, Kelly's ADA retaliation claim against Jackson Lewis and Byrne must be dismissed.

### 2. *Plaintiff Cannot Establish a Claim Under the Ohio Civil Rights Act.*

Kelly's claim under the Ohio Civil Rights Act (which appears in Counts IV and V of her Complaint) appears to be brought under Ohio Rev. Code § 4112.02(I) and (J). (Compl. ¶¶ 288, 294, 298-299, Doc No. 1, PAGEID# 39). O.R.C. 4112.02 (I) is the anti-retaliation provision of the Ohio Civil Rights statute. *See, generally, Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 327, 879 N.E.2d 174, 2007-Ohio-6442, ¶ 13. Claims for retaliation under the Ohio Civil Rights Act are analyzed in the same manner as retaliation claims under the ADA. *See Brown v. Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 822 ("the essential elements of a claim under Ohio law [Ohio Rev. Code § 4112.02] and the ADA are the same"). Thus, Kelly's Ohio Civil Rights Act retaliation claim(s) must be dismissed for the same reasons as her ADA retaliation claim.

### 3. *Plaintiff Cannot Establish A Claim for Negligent, Reckless, and Intentional Infliction of Emotional Distress.*

Kelly's emotional distress claims are presumably brought pursuant to Ohio common law. As best as can be discerned by the allegations in her Complaint, Kelly's emotional distress claims against Jackson Lewis and Byrne are related to compelling Kelly to appear at her deposition, the attendance of her former supervisor, Robin Ording, at her deposition as the corporate representative for First Data, and sponsoring the *pro hac vice* admission of a SEAL attorney. (Compl. ¶¶ 311-315, 318-319, Doc. 1 at PAGEID# 41-42). Kelly cannot establish any type of emotional distress claim based on these allegations as a matter of law.

Ohio courts have consistently held that "[r]ecovery on a claim of negligent infliction of emotional distress has been limited "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person" and there is "cognizance of a real danger." *Sericola v. Johnson*, 98 N.E.3d 874, 880, 2017-Ohio-8200, ¶ 33 (11ᵗʰ Dist.)(citations omitted); *Frazier v. City of Kent*, 11th Dist. No. 2006-P-0082, 2007-Ohio-5782, ¶ 71. *See also*, *Walker v. Firelands Community Hosp.*, 170 Ohio App.3d 785, 869 N.E.2d 66, 2007-Ohio-871, ¶ 59 (6th Dist.) (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 80, 451 N.E.2d 759 (1983)(citing elements of a negligent infliction of emotional distress claim). Kelly was not a bystander of the alleged actions taken against her and was not subject to an accident that caused her to fear physical consequence to her own person. Rather, she was the subject of the actions allegedly taken by the Defendants in requesting her deposition. She therefore cannot assert a claim for negligent infliction of emotional distress as a matter of law.

To prevail on a claim for intentional infliction of emotional distress or reckless infliction of emotional distress under Ohio law, Kelly must prove (1) that Jackson Lewis and Byrne intended to cause or recklessly caused Kelly serious emotional distress, (2) that the conduct of Jackson

Lewis and Byrne was extreme and outrageous, (3) that the conduct of Jackson Lewis and Byrne was the proximate cause of Kelly's serious psychic injuries, and (4) Kelly's emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it. *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005); *Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286 (1994) (intentional); *David v. Matter*, 2017-Ohio-7351, ¶16, 96 N.E.3d 1012, 1017-18 (Ohio App. 6 Dist. 2017) (reckless). A plaintiff may establish such a tort only if "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union* 20, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (1983)(abrogated on other grounds); *see also Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999). The actions of Jackson Lewis and Byrne in compelling Kelly's deposition and attending said deposition – which was sanctioned by this Court even after Kelly complained about alleged retaliation -- is not "so extreme in degree, as to go beyond all possible bounds of decency." *See Yeager*, 6 Ohio St. 3d at 375 .

First Data, as a defendant in the Barger Case, had a right to have whomever it chose to attend Kelly's deposition as its corporate representative, including her former direct supervisor, Ording.  Kelly's Suppliment [sic] to Request for Protective Order and Reply in Support of Motion to Quash states that if the Court ordered her to attend a deposition, it should prohibit Ording from attending.  (Miscellaneous Action, Doc. No. 13, at PAGEID # 420 n.4). The Court ordered Kelly to attend the deposition but did not grant her request to have Ording barred from attending, and therefore First Data was free to have Ording attend.  (Miscellaneous Action, Doc. Nos. 21 and 29). And critically, Kelly failed to object to Ording's attendance at the time of her deposition. (Byrne Aff. at ¶ 21).  Under such circumstances, Kelly cannot claim that Ording's attendance at her

deposition is "outrageous in character" or "utterly intolerable in a civilized community." The same goes for Byrne sponsoring the *pro hac vice* admission of Gillian Cooper which was a purely technical legal function routinely performed by local counsel.   Kelly therefore cannot maintain a claim for intentional infliction of emotional distress.

All claims for infliction of emotional distress must be dismissed.

### 4.    Kelly Cannot Maintain a Claim for Eavesdropping / Invasion of Privacy.

Kelly's eavesdropping and invasion of privacy claim is premised upon the fact that representatives of First Data attended Kelly's deposition by telephone and on SEAL attorney Gillian Cooper's use of an iPad during the deposition.  Neither set of facts can support Kelly's claim as a matter of law, nor has she stated a claim for which relief can be granted.

The Ohio Supreme Court has defined the "right to privacy" as: "[t]he right to a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters to which the public is not necessarily concerned."  *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956), paragraph one of the syllabus[5].  The *prima facie* elements of an actionable invasion of privacy claim are:

> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Id.,* at paragraph two of the syllabus. The elements of this claim clearly cannot be met in this case. First, a deposition is not a private activity.  The court reporter, opposing parties, and opposing

---

[5] Unreasonable intrusion into seclusion is one of the four separate branches of tortious invasion of privacy.  *Sustin v. Fee*, 69 Ohio St.2d 143, 145, fn. 4, 431 N.E.2d 992 (1982). The other three branches are: (1) appropriation of the other's name or likeness, (2) unreasonable publicity given to the other's private life, and (3) publicity that unreasonably places the other in a false light before the public.  *Hahn v. Satullo*, 1456 Ohio App. 3d 412, 427, 2004-Ohio-1057, ¶ 56, fn.7 (Ohio Ct. App. 2004), citing Restatement of the Law 2d Torts (1977) 376, Section 652A. None of the other three branches apply here.

counsel are present at a deposition, and often times, third parties are also present. It is well understood that a deposition transcript may be filed with the Court and become a public record. Second, Kelly has not alleged any of the elements a claim for invasion of privacy in her Complaint. Third, even if Kelly had properly alleged the elements of the claim, there are no set of facts under which she can establish that Jackson Lewis and Byrne appropriated or exploited her personality, publicized her private affairs with which the public had no legitimate concern, or wrongfully intruded into Kelly's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. All they did was file a motion to compel her attendance at a deposition and then attend the deposition as local counsel.

Kelly was aware that First Data's in-house counsel were attending her deposition by telephone, as counsel for First Data, Gillian Cooper, announced their presence to Kelly before the start of the deposition and on the record at the beginning of the deposition. (Compl. ¶ 335, Doc. No. 1, PAGEID# 44). Kelly did not object to their participation in the deposition by telephone. (Byrne Aff. at ¶ 21). Kelly alleges that the phone was never disengaged during breaks. (Compl. ¶ 341, PAGEID # 44). Because she was aware of the presence of First Data in-house counsel representatives on the phone call – and even identifies the individuals by name in her Complaint – she cannot now claim that she did not consent to their participation by phone. Additionally, the deposition room was open to the public, and the court reporter was present, so Kelly had no expectation of privacy. (Compl. ¶¶ 332, 339, Doc. 1, PAGEID # 43-44).

Kelly speculates, without any basis for her speculation, that a live video recording was somehow created of her deposition without her knowledge. (*Id*. ¶¶ 337-342). This speculative allegation defies credibility. An allegation based solely on speculation is insufficient to avoid dismissal under Rule 12(b)(6). *See Twombly*, 550 U.S. at 556 ("Factual allegations must be enough

to raise a right to relief above the speculative level"). To the knowledge of Jackson Lewis and Byrne, no such surreptitious recording took place.  (Byrne Aff. at ¶ 9). Contrary to Kelly's assertion, the undersigned counsel responded to Kelly's inquiry regarding the recording and confirmed Byrne was not aware of any such recording.  (Byrne Aff. at ¶ 18, Ex. E).  Consequently, Kelly has no basis for asserting this final claim.

Kelly's eavesdropping and invasion of privacy claim must be dismissed.

B.     **Judicial Privilege Bars Plaintiff's Claims Against Jackson Lewis and Byrne**.

Not only does Kelly fail to state any claim upon which relief can be granted, the doctrine of judicial privilege further bars all of her claims.  Plaintiff's claims against Jackson Lewis and Byrne arise out of their advocacy for First Data in judicial or quasi-judicial proceedings; specifically, the claims arise out of their representation of First Data in attempting to compel Kelly's subpoena in the *Barger Case* and out of Byrne's attendance at Kelly's deposition.  Such actions are absolutely privileged.

All actions and statements in the course of and reasonably related to civil proceedings are absolutely privileged.  *Surace v. Wuliger*, 25 Ohio St. 3d 229, 233-34, 495 N.E.2d 939 (1986); *Hecht v. Levin*, 66 Ohio St. 3d 458, 461-62, 613 N.E.2d 585 (1993)[6]. The reasons for this are clear:

> Lawsuits filed against lawyers by their clients' adversaries primarily seek vengeance.  Lawyers, however, are absolutely immune from civil liability for statements **or conduct** that may have injured, offended, or otherwise damaged an opposing party during the litigation process.  This protection, often referred to as the "litigation privilege," shields a litigator regardless of malice, bad faith, or ill will of any kind.  It originated at the very

---

[6] Almost all of Plaintiff's claims against Jackson Lewis and Byrne arise under Ohio law.  In determining whether judicial immunity applies, federal district courts within Ohio have relied upon Ohio case law to decide the issue.  *See, e.g., Frey v. Prior*, Case No. 91-3567/3725, 1991 U.S. App. LEXIS 28681, *4 (6th Cir. Nov. 27, 1991) (Ohio law regarding judicial immunity applies to defamation claims); *Erlich v. Kovach*, 135 F.Supp.3d 638, 673-674 (N.D. Ohio 2015) (defamation context); *City of Dayton v. A.R. Envt'l., Inc.*, 886 F. Supp.2d 775, 781 (S.D. Ohio 2012) (alleged defamatory statements in complaint); *Ventura v. Cincinnati Enquirer*, 246 F. Supp.2d 876, 882 (S.D. Ohio 2003) (defamation context).

beginning of English jurisprudence for the purpose of protecting the advocacy system and its participants….

Volume 31, Issue 4 Pepperdine Law Review, *Absolute Immunity from Civil Liability (emphasis added)*.

In explaining the rationale behind the privilege[7], the Ohio Supreme Court stated: "[t]he most basic goal of our judicial system is to afford litigants the opportunity to freely and fully discuss various aspects of a case in order to assist the court in determining the truth, so that the decisions it renders is both fair and just." *Surace*, 25 Ohio St. 3d at 235. The absolute privilege extends to "every step in the proceeding, from beginning to end." *M.J. DiCorpo, v. Sweeney*, 69 Ohio St.3d 497, 506, 634 N.E.2d 203, 209 (1994). "The rights of clients should not be imperiled by subjecting their attorneys to the fear of suits for libel or slander." *Theiss v. Scherer*, 396 F.3d 646, 649-650 (6th Cir. 1968).

"Whether the absolute privilege applies is a question of law." *Morrison v. Gugle*, 142 Ohio App.3d 244, 260, 755 N.E.2d 404, 416 (2001). Accordingly, a motion to dismiss should be granted where it is undisputed that the plaintiff's claims are barred by the doctrine of judicial privilege. See *Surace*, 25 Ohio St. 3d at 234 (the question of whether absolute privilege applies in a given case is necessarily one of law for the trial court to determine pursuant to the standards set forth in Civ. R. 12(B)(6)).

The privilege not only applies in judicial proceedings, but also to statements made and actions taken in quasi-judicial settings. *See Hecht*, 66 Ohio St.3d at 458, paragraph two of the syllabus. This includes depositions of third-party witnesses. *See Fallang v. Cromier*, 63 Ohio App.3d 450, 452, 579 N.E.2d 258 (1989) (holding that "the absolute privilege that applies to trial

---

[7] The privilege is often referred to as the "judicial privilege."  It is also referred to as the "litigation privilege."

and **deposition** testimony likewise extends to communications involving pending litigation as between parties, counsel, and potential witnesses.") (emphasis added).

Although *Surace* and *Hecht* are defamation cases, the privilege is broader, and applies to all claims attacking **conduct** in civil proceedings.  "While the privilege historically was raised to defeat defamation suits, the modern version has broadened in most states to include all kinds of tort liability." *Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769, 777 (S.D. Ohio 2004)[8] (citations omitted).  *See, also, e.g., Seminatore v. Dukes*, 2004-Ohio- 6417, ¶¶ 38-40 (8th Dist.) (extending absolute litigation privilege to civil conspiracy claims against lawyers who represented plaintiff's adversaries in previous civil lawsuit; "To the extent that [plaintiff's] complaint might be construed as alleging state law claims against the attorney-appellees, any such claims would also be barred by absolute immunity … 'It is necessary for [the lawyers] to be protected not only from liability but from the danger of even an unsuccessful civil action.'") (quoting Restatement of the Law, Torts, § 584.1); *Hines v. Chandra,* Case No. 1:06 CV 2233, 2009 U.S. Dist. LEXIS 139834, *38-39 (N.D. Ohio Feb. 23, 2009) (extending absolute litigation privilege to intentional infliction of emotional distress claim and tortious interference with contract claim); *Lisboa v. Lisboa*, 2011-Ohio-351, ¶¶ 17-24 (8th Dist.) (finding that judicial immunity barred claims for fraud, conspiracy, aiding and abetting, and intentional infliction of emotional distress); *Kutnick v. Fischer*, 2004-Ohio-5378, ¶ 27 (8th Dist.)(citing *Pisani v. Pisani,* Case No. 72136, 1997 Ohio App. LEXIS 5549 (8th Dist. Dec. 11, 1997))(judicial immunity precludes actions for invasion of privacy).

---

[8] Although the *Hartman* court recognized the judicial privilege's application to state law claims, it declined to extend it to a federal Fair Debt Collection Practices Act ("FDCPA") claim because the FDCPA provides an exception to the judicial privilege in that the Act specifically applied to litigation activities in an attempt to collect a debt because a lawyer who regularly engages in consumer-debt-collection activity meets the definition of a "debt collector" under the Act.  *See, Hartman*, 467 F. Supp.2d at 777, citing *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489 (1995).

Although many of the cases applying the judicial privilege doctrine relate to claims arising out of statements made by attorneys (or parties and witnesses), the same rationale for applying the absolute privilege to attorney's statements also applies to any actions taken by an attorney in civil proceedings. *See Hartman*, 467 F. Supp. 2d at 766 ("The litigation privilege . . . broadly protects **all actors** in the course of judicial proceedings from subsequent liability for **acts and conduct** related to the proceeding.")(emphasis added). This includes the filing of motions, the issuance of subpoenas, the taking and defending of depositions, and attendance at depositions and court-related appearances. In *Kimmel & Silverman, P.C. v. Porro*, for example, the U.S. District Court for the District of Massachusetts determined that the defendant attorney's actions in filing deposition transcripts and engaging in a chain of e-mails during the course of litigation were protected from liability for contract and tortious interference claims under the judicial privilege. 53 F. Supp. 3d 325, 342-343 (D. Mass 2014)(noting that in addition to applying to statements made in the course of litigation, "the privilege applies to an attorney's conduct in carrying out the tasks associated with the litigation process.")

Such immunity from being sued by opposing parties is necessary for an attorney to properly represent his client. Attorneys would be reluctant to provide proper representation to their clients if they had to live in fear that an opposing party would bring an action against them.

Kelly's allegations against Byrne and Jackson Lewis arise exclusively out of their limited role, as local counsel, in representing First Data, and are based on alleged actions taken in the course of civil proceedings. Fairness and justice are served when First Data's attorneys are permitted to act freely and fully in defending the claims against their clients. Kelly is therefore precluded by the doctrine of judicial privilege from asserting all of her claims against Byrne and Jackson Lewis.

### C.     <u>Plaintiff's Ghostwritten Complaint Should Be Stricken</u>

Although Kelly claims to be acting pro se in this case, it appears that she is represented by counsel. In her Complaint, Kelly even references the fact that she has counsel in this case. She states:

- "During breaks in Kelly's deposition, Kelly spoke off the record with the court reporter casually, and then privately with Barger's counsel, **who is her counsel in this case**." (Complaint ¶ 339, Doc. 1, PageID #44) (emphasis added).

- "Upon information and belief, subject to further discovery, SEAL, Cooper, Jackson Lewis and Byrne, intentionally left the conference room line open so that the participants on the other end of the call could eavesdrop on the conversations between Kelly **and her attorney in this case**." (Complaint ¶ 343, Doc. 1, PageID #44-45) (emphasis added).

- "Conversations occurred between Kelly **and her attorney in this case** that were privileged and listened to by opposing counsel." (Complaint ¶ 349, Doc. 1, PageID #45) (emphasis added).

Of course, Kelly also attached numerous documents to her complaint that show that the same attorney represented her in the OCRC administrative process. (Complaint Exhibits, Doc. No. 1-1 at PAGEID# 97-106, 122, 128, 134-137, 176-177, 212-224).  Also, in her request for relief, Kelly requests an award of attorney's fees.  (Complaint, PAGEID# 47).  It appears from the face of the Complaint that Kelly's attorney, Shawn Shearer[9], was involved in the drafting of the Complaint in this case.

"It is well established that a litigant may not hold [her]self out as pro se if [s]he is receiving help from attorneys in preparing [her] briefs. *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 U.S.

---

[9] Mr. Shearer does not appear to be admitted to practice law in Ohio, or in this Court.

Dist. LEXIS 54147, at *95 (N.D. Ohio June 26, 2009), citing *Duran v. Carris*, 238 F.3d 1268, 1272-1273 (10th Cir. 2001).  A ghostwritten submission is "inconsistent with the intent of the procedural, ethical and substantive rules of the Court." *Ostevoll v. Ostevoll*, No. C-1-99-961, 2000 U.S. Dist. LEXIS 16178, at *30 (S.D. Ohio Aug. 16, 2000). "The federal courts have almost universally condemned ghostwriting." *Evangelist v. Green Tree Servicing, LLC*, No. 12-15687, 2013 U.S. Dist. LEXIS 76875, fn.6 (E.D. Mich. May 31, 2013)(citing a list of cases supporting this proposition). The court in *Gordon* struck a "pro se" ghostwritten motion and stated that it would continue to strike any ghostwritten submissions from any party. *Gordon, supra,* at *96.  It also stated that it would entertain motions for contempt against a party submitting ghostwritten material.  *Id*; see *also, Doe v. Ballard*, No. 2:13-CV-486, 2013 U.S. Dist. LEXIS 195019, *3-4 (S.D. Ohio) (striking ghostwritten motions from the record). This court should similarly strike Kelly's ghostwritten complaint, and dismiss this case with prejudice.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Byrne and Jackson Lewis respectfully request that the Plaintiff's Complaint against them be dismissed in its entirety, with prejudice.

Respectfully submitted,

/s/ *Daniel G. Rosenthal*
Daniel G. Rosenthal, Trial Attorney (OH # 0010119)
Gretchen M. Treherne (OH # 0074376)
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone: (513) 898-0050
Email:  Daniel.Rosenthal@jacksonlewis.com;
         Gretchen.Treherne@jacksonlewis.com
*Attorneys for Defendants Jackson Lewis P.C.*
*and Matthew Byrne*

## **CERTIFICATE OF SERVICE**

I certify that on July 29, 2019, the foregoing was electronically filed with the Court's

CM/ECF system and the system will send electronic notice to Plaintiff Julie Kelly.


/s/ *Daniel G. Rosenthal*
Daniel G. Rosenthal

4811-6178-1662, v. 1

21