# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JULIE KELLY | : | Case No. 1:19-CV-372 |
|     Plaintiff | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| FIRST DATA CORPORATION, ET AL | : | |
|     Defendants. | : | |
| | : | |

## AFFIDAVIT OF MATTHEW R. BYRNE

STATE OF OHIO                  )
                                       ) ss:
COUNTY OF HAMILTON  )

Matthew R. Byrne, having been duly cautioned and sworn, and states as follows:

1. I am an attorney at the law firm of Jackson Lewis, P.C. in Cincinnati, Ohio. My job title is "Of Counsel."

2. On or about July 18, 2018, I was contacted about an employment litigation matter in the U.S. District Court for the Eastern District of New York, *Steven Barger v. First Data Corporation, et al.*, Case No. 1:17-cv-4689 (E.D.N.Y.) ("Barger Case"), in which First Data was represented by the law firm Saul Ewing Arnstein & Lehr, LLP ("SEAL").

3. I was retained only in the capacity of local counsel for purposes of filing a motion to compel third party witness and Ohio resident Julie Kelly's deposition in a miscellaneous action in this Court, *Steven Barger v. First Data Corporation,* Case No. 1:18-mc-00010 ("Miscellaneous Action").

1

4. The magistrate judge in the Miscellaneous Action ordered Ms. Kelly to attend a deposition in the Potter Stewart United States Courthouse on October 15, 2018.

5. The October 15, 2018 deposition of Ms. Kelly took place in a conference room at the Courthouse. Gillian Cooper of SEAL took Ms. Kelly's deposition. I attended in case issues involving local rules or practice arose.

6. I did not hire the court reporter or her court reporting agency for Ms. Kelly's deposition or communicate with the court reporter or her agency before the deposition. I was also not responsible or involved in the selection of court reporting methods and technology. SEAL handled all of these matters.

7. I was not involved in setting up the conference room at the courthouse for Ms. Kelly's deposition.

8. In-house counsel for First Data, Jill Poole and Lori Graesser, attended Ms. Kelly's deposition by telephone. At the beginning of the deposition, Ms. Cooper announced that Ms. Poole and Ms. Graesser were attending the deposition by telephone. Neither Ms. Kelly nor Barger's lawyer (Shawn Shearer) objected to their telephone participation.

9. I do not know what equipment was used for the recording of the deposition, or whether it was recorded or transmitted at all by the court reporter or anyone else. I have no reason to believe that the deposition was recorded or transmitted by Ms. Cooper, First Data representative Ms. Ording, or First Data in-house counsel Jill Poole or Lori Graesser (who attended by telephone). I did not record or transmit the deposition. I have no reason to believe any audio or video recording or transmission of Ms. Kelly's deposition was ever made.

10. I was present when Ms. Cooper initiated the call bringing in the two First Data in-house counsel so that they could attend the deposition by telephone, and to my knowledge, they

2

were the only people who participated in or listened to the call. I have no reason to believe that First Data's in-house counsel "eavesdropped" on any conversations in the deposition room, including any communications Ms. Kelly may have had during breaks in the deposition.

11. I have no personal knowledge regarding ownership or use of the iPad that was in front of Ms. Cooper during the deposition.

12. I was not involved in the selection of the questions Ms. Cooper asked Ms. Kelly during her deposition. I did not ask any questions of Ms. Kelly during the deposition.

13. My substantive involvement in the Barger matter and with regard to Ms. Kelly ended with the November 1, 2018 termination by the Court of the Miscellaneous Action filed in Ohio regarding Ms. Kelly's deposition, except to the extent that I needed to review or respond to emails that Ms. Kelly or Mr. Shearer continued to send after the conclusion of the deposition and the Miscellaneous Action. Jackson Lewis and I have not been retained by First Data or involved in connection with the OCRC charge Ms. Kelly filed in Ohio.

14. On December 12, 2018, Julie Kelly sent a letter to Scott Carroll, the managing principal of the Cincinnati office of Jackson Lewis, P.C. In that letter, Ms. Kelly asked a series of questions regarding her deposition, including questions about recording equipment used at the deposition and who was responsible for connecting the telephone line with First Data's in-house counsel who participated in the deposition by phone. Mr. Carroll shared the letter he received with me. Attached as **Exhibit A** is a true and accurate copy of the letter.

15. On December 21, 2018, I received an e-mail from Julie Kelly following up on the questions she asked in her December 12, 2018 letter to Scott Carroll. Attached as **Exhibit B** is a true and accurate copy of the e-mail.

3

16. After my colleague and attorney Dan Rosenthal notified Ms. Kelly of his representation of me and Jackson Lewis with respect to her allegations against us, Ms. Kelly sent a letter to him on December 21, 2018. He shared the letter with me. Attached as **Exhibit C** is a true and accurate copy of that letter.

17. After Mr. Rosenthal responded to Ms. Kelly that neither I nor Jackson Lewis had any knowledge or involvement regarding a person Ms. Kelly alleged was on her property and that he would provide a response to her other questions after the holidays, Ms. Kelly sent another letter to Mr. Rosenthal on December 26, 2018. He shared the letter with me. Attached as **Exhibit D** is a true and accurate copy of that letter.

18. On January 3, 2019, Dan Rosenthal responded to Ms. Kelly's prior correspondence, answering her questions by stating that I was not involved in doing various things associated with her deposition. Mr. Rosenthal shared his e-mail response with me and it is accurate. Attached as **Exhibit E** is a true and accurate copy of his response.

19. In her December 26, 2018 letter to Dan Rosenthal, Ms. Kelly stated: "Mr. Byrne appears to be an ethical professional, who would stick to the rules and not try to use the legal system as a way to make my life miserable just because I chose to exercise my rights under the OCRC."

20. I saw no reason to believe that anything improper or unlawful was taking place with regard to Ms. Kelly's deposition or the subpoena that was served on her.

21. I received a rough draft of the court reporter's transcript of Ms. Kelly's deposition. During the deposition Ms. Kelly and Shawn Shearer did not object to Robin Ording's presence at the deposition. They also did not object to the attendance of First Data in-house counsel Jill Poole and Lori Graesser by telephone.

4

22. The above statement is true and correct to the best of my knowledge.

_____
Matthew R. Byrne

Sworn to and subscribed before me by Matthew R. Byrne on this 25th day of July, 2019.

_____
Notary Public

Patricia Andersen Pryor, Attorney at Law
NOTARY PUBLIC, STATE OF OHIO
My Commission has no expiration
date: Section 147-03 O.R.C.

4849-6418-0638, v. 1

# Exhibit A

# Julie Kelly

jul_kelly@mac.com
823 Dorgene Lane
Cincinnati OH 45244

12/12/18

Mr. Scott A. Carroll
PNC Center
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202

TO: Mr. Scott Carroll,

I am Julie Kelly, a resident of Ohio and I represent myself in the matter Barger v. First Data Corporation (S.D. Ohio Case #: 1:18-mc-00010). This letter is about the continued retaliation I experience from the defendants, Saul Ewing Arnstein and Lehr, LLP and First Data. Jackson Lewis sponsored the defendant's attorney to practice in Ohio only after I objected to Magistrate Stephanie Bowman that Jackson Lewis was permitting Ms. Gillian Cooper without having received her pro hac vice admittance. I am contacting you because I looked on the Jackson Lewis website for inside council who I could contact regarding my situation. If you are not the correct person to contact, please let me know who your lawyer is.

I am in the process of filing my own complaint. Saul Ewing and Jackson Lewis are responsible for the continued harassment that began when I notified First Data Corporation of my complaint back in May of 2018. For SIX months, Saul Ewing and your law firm (Mr. Matthew Byrne) have colluded to bring a EDNY case into Ohio, solely in response to my own personal complaint against First Data. This was admitted in my October 15th, 2018 (second Kelly deposition) by Ms. Gillian Cooper of Saul Ewing, who was pro hac in Ohio by Mr. Matthew Byrne of Jackson Lewis, only after my objection on September 18th, 2018.

```
1      A.   But didn't Mr. Shearer -- I mean,
2   he's been involved with this case a long time.  I
3   mean, didn't he tell you or Mr. Eidelman that he
4   did not represent me?
5      Q.   Yes, he did.  But at that point, you
6   had a pending charge against the company, and we
7   made the decision to depose you, which is our
8   right under the rules of court.
```

Further proof that the entire circus in Ohio, that began in May of 2018 and still continues, is that 4/5 of the 5 hour deposition on October 15th, 2018 (second Kelly deposition) were questions about the actions Saul Ewing, Jackson Lewis, along with their client First Data, took against me in retaliation. For reference, this except is from page 107 of 202 in the unofficial transcript.

```
10      A.   Can I ask a question?
11      Q.   No.  Actually, go ahead.
12      A.   I just want to know if we're going to
13   be able to talk about the Barger case?
```

1 | Page

# Julie Kelly

jul_kelly@mac.com
823 Dorgene Lane
Cincinnati OH 45244

Because I represent myself in the above mentioned case, and I have been continuously harassed throughout the past months and am on the precipice of filling my formal complaint, I am requesting the answers to the following questions by **December 21st, 2018**.

**Outstanding Questions for the Second Kelly Deposition for the Barger v. First Data Corporation case on 10/15/18:**

1. Who was responsible for contracting Mike Mobley Court Reporting?

2. Who was responsible for the selection of court reporting methods and technology that would be used for my deposition at the Potter Stewart Courthouse on October 15th, 2018 (second Kelly deposition)?

3. Who was responsible for setting up the Potter Stewart Courthouse conference room for the deposition?

4. What was the equipment used for the recording of the deposition and who owns this equipment?

5. Who initiated the court house phone line and what time did this take place? What number(s) were dialed? Who owns the numbers that were dialed? What were the conference capabilities of the numbers dialed?

6. Who were all the parties logged into the conference phone directly or indirectly and what were their locations, company representing and roles?

7. Who owned the iPad that was active and directed at me for the deposition?

8. What was the purpose of the iPad during my deposition?

9. Did the iPad record or stream audio, video or both of the deposition?

10. Why was 4/5ths of the deposition used to ask me questions that were related to the harassment of Saul Ewing, First Data and Jackson Lewis from May – October 2018, which is now a part of my complaint that will soon be filed, instead of the Court Ordered Barger v. First Data Corporation?

Again, I would appreciate your assistance with answers to the above questions by **December 21st, 2018** of what transpired during the October 15, 2018 deposition (second Kelly deposition).

Respectfully,

Julie Kelly

*[signature: Julie Kelly Jue Kelly]*

823 Dorgene Lane
Cincinnati OH 45244
jul_kelly@mac.com

2 | Page

# Exhibit B

**From:** Julie <jul_kelly@mac.com>
**Sent:** Friday, December 21, 2018 2:31 PM
**To:** Byrne, Matthew R. (Cincinnati) <Matthew.Byrne@jacksonlewis.com>; Carroll, Scott A. (Cincinnati) <scott.carroll@jacksonlewis.com>
**Cc:** Jul Kelly <jul_glad@mac.com>
**Subject:** Outstanding Questions Regarding Second Kelly Deposition for Barger v. First Data Corporation (10/15/18)

Mr. Byrne and Mr. Carroll,

As you are aware, Mr. Shawn Shearer responded to your email earlier this week (email attached for your reference: *RE_ Julie Kelly - Request for information - iPad at 10_15_18 Deposition (second Kelly deposition)*) so you may freely respond to my questions. Mr. Shearer does not and has never represented me in the Barger v. First Data case. I represent myself.

As a courtesy, I've added the questions directly into this email. ***Please answer me as soon as possible.***

Because I represent myself in the above mentioned case, and I have been continuously harassed throughout the past months and am on the precipice of filling my formal complaint, I am requesting the answers to the following questions by *immediately*.

**Outstanding Questions for the Second Kelly Deposition for the Barger v. First Data Corporation case on 10/15/18:**

1. Who was responsible for contracting Mike Mobley Court Reporting?

2. Who was responsible for the selection of court reporting methods and technology that would be used for my deposition at the Potter Stewart Courthouse on October 15th, 2018 (second Kelly deposition)?

3. Who was responsible for setting up the Potter Stewart Courthouse conference room for the deposition?

4. What was the equipment used for the recording of the deposition and who owns this equipment?

5. Who initiated the court house phone line and what time did this take place? What number(s) were dialed? Who owns the numbers that were dialed? What were the conference capabilities of the numbers dialed?

6. Who were all the parties logged into the conference phone directly or indirectly and what were their locations, company representing and roles?

7. Who owned the iPad that was active and directed at me for the deposition?

8. What was the purpose of the iPad during my deposition?

9. Did the iPad record or stream audio, video or both of the deposition?

10. Why was 4/5$^{ths}$ of the deposition used to ask me questions that were related to the harassment of Saul Ewing, First Data and Jackson Lewis from May – October 2018, which is now a part of my complaint that will soon be filed, instead of the Court Ordered Barger v. First Data Corporation?

Respectfully,

Julie Kelly

# Exhibit C

jul_kelly@mac.com

# Julie Kelly

12/21/18

Mr. Rosenthal,

Thank you very much for your prompt and respectful answer to my email of December 21, 2018. As I clearly stated in my inquiry on December 20, 2018, I took nearly a week to decide whether I had any reason to suspect that my former employer, First Data, would dispatch any kind of agent to photograph my property and look in my windows – through your firm or in any other capacity – in their effort to silence me on my claims against them.

The reason I thought about the matter for so long is because prior to the treatment I received by First Data and Ms. Robin Ording and then Ms. Gillian Cooper and Saul Ewing, I had never been subject to any kind of targeting or harassment that rose to the level that frightened me. Before the events that began to unfold in the latter half of 2017 took place, I may have brushed off the idea of a man taking pictures at my house – chalked it up to a possible real estate agent or just an odd passerby.

The problem for me now, is this. I have been, and continue to, experience retaliation as a result of my decision to tell the OCRC the truth about my supervisor at First Data. I never expected to be singled out or targeted by a company I gave over 20 years of service to.

Unfortunately, I have been subject of multiple acts of retaliation. Saul Ewing, Ms. Gillian Cooper and Mr. Gary Eidelman have been the primary agents of First Data's attacks against me.

What really bothers me, is that I have asked many times exactly who was on the courthouse phone line during my October 15th, 2018 deposition (Second Kelly Deposition) how the call was made, why an active iPad was pointed at me during the deposition and many other very simple questions that – if answered truthfully – may have alleviated my ever increasing stress level.

The problem is, even though these questions have answers, and, as counsel for myself in the Barger v. First Data, et al, matter First Data's counsel could have easily provided me those answers – no one will do so.

I am not a paranoid person. But, First Data did transport my former supervisor from New York to Cincinnati TWICE, under the guise of a deposition in the Barger v. First Data et al, case even through Ms. Ording is only a party to MY Pending action against First Data in Ohio and had no place in the Barger deposition beyond menacing me.

First Data, Saul Ewing and Jackson Lewis then outfitted Ms. Ording with an active recording / streaming device for the duration of my October 15th, 2018 deposition (Second Kelly Deposition) – without any permission or notice.

Then – the deposition was designed to be nearly 100% of the questions being about me and my case in Ohio. The subpoena issued in New York was supposed to be limited to the Barger v. First Data et al, case. Instead, the day became an electronic surveillance of me. And most recently, I spent nearly a week agonizing over whether or not First Data, Saul Ewing, Ms. Gillian Cooper, Jackson Lewis, Mr. Matthew Byrne and / or Mr. Gary Eidelman is involved in a strange man's presence on my property is upsetting and also interfering in my ability to seek employment because I am nearing the point where I'm nervous to leave my children in their home.

No one should be treated this way. Especially for just exercising my rights. Even Ms. Cooper admitted on the record on October 15th, 2018 that I am the only depondent in the Barger v. First Data et al, case being treated this way. I haven't done anything wrong.

I do see that you work at Jackson Lewis, so I do not exactly understand your role here, but I will take you at your word that you will at least investigate.

jul_kelly@mac.com

# Julie Kelly

I do notice in your response to me you say that "Matthew Byrne has no knowledge or involvement whatsoever" regarding the person who was on my property. However, you never say that Jackson Lewis has no knowledge or involvement of that event. Is this because you only represent Mr. Byrne? Or is this because Jackson Lewis isn't prepared to answer my question? Can you please clarify this immediately?

One matter I do want to be very clear about – I do intend to find out who was on that courthouse phone line during my deposition. I intend to find out why the call was initiated before I arrived and why I was not offered any conferencing ability. I also intend to find out why I was surveilled from an iPad set up across from me just by Ms. Robin Ording.

Providing me truthful answers to those questions will go along way to helping me decide if I need to fear my former employer, or if legitimate answers are available.

Neither you, for Mr. Matthew Byrne or Ms. Cooper had a problem answering me quickly and definitively about the man who was on my property last week.

If the truth about the conference call and iPad is just as simple and truthful and not unethical, why all the delays? It makes no sense.

I will assume your interest in aiding me in finding an honest answer here about what happened during my October 15th, 2018 deposition (Second Kelly Deposition) is sincere. I hope that is the case.

Respectfully,

Julie Kelly

# Exhibit D

jul_kelly@mac.com

# Julie Kelly

12/26/18

Mr. Rosenthal,

Thank you for clearing up that confusion. I am pleased to know that Jackson Lewis is willing to state that they have no involvement in the recorded incident that took place on my property on December 13th, 2018.

My hope is that someone will be able to finally explain the events that took place during my October 15th, 2018 deposition (Second Kelly Deposition) that are contributing daily to my anxiety (which my former employer First Data and supervisor Ms. Robin Order were aware of when they deprived me of accommodation). From my vantage point – First Data has armed themselves with a team of people – starting with a FedEx impersonator who entered my property under disguise and served me a subpoena, to no-showing me on my first deposition date, to transporting my tormentor, Ms. Ording from New York to Cincinnati TWICE, in order to punish, intimidate and scare me during a deposition for a case where Ms. Ording is not even a named party.

Unfortunately, it seems that First Data and Saul Ewing used Mr. Matthew Byrne and Jackson Lewis as a conduit to locally intimidate me. This is not only discouraging, but disappointing. Mr. Byrne appears to be an ethical professional, who would stick to the rules and not try to use the legal system as a way to make my life miserable just because I chose to exercise my rights under the OCRC.

In my capacity as my own counsel in the Barger v First Data, et al matter, I have sought Mr. Byrnes's honest answer to my questions about the sketchy way in which a conference call that claimed to include two members of First Data's in house counsel (who never announced themselves on the record) was initiated during the October 15, 2018 deposition from the Potter Stewart Courthouse, and about why an iPad was active, engaged and pointed at me during that deposition. Mr. Byrne will not give me the respect of a straight answer.

Mr. Rosenthal, you have, at least, give me a timely response. What I do not understand, is why you can complete a thorough investigation and provide me a definite answer to my questions about the events that happened on my property on December 13th, 2018, yet no one at Jackson Lewis can (or will) answer any of my questions about the events that Mr. Byrne participated in on October 15, 2018 – after nearly three months have elapsed. I began to ask questions about Jackson Lewis' role in First Data's persistent retaliation against me in October. It is now nearly January.

For someone in your position, this may be inconsequential. However, the longer I must go without answers about what happened in the courthouse while I was there, under court order, representing myself, the greater my anxiety becomes.

I spent my entire summer defending myself and now, minus what should be very simple, truthful responses about my October 15, 2018 deposition (Second Kelly Disposition), I am questioning my ability to safely leave my elderly mother in law or children at home without my presence, making job interviews a near impossibility.

No American should have to choose between exercising his or her rights to file a complaint against an employer, and the American's ability to live in a harassment – free, safe home while that person seeks employment. First Data, Saul Ewing, Ms. Gillian Cooper and Mr. Gary Eidelman are putting me in that position.

What is left for me to decide, is what roles Jackson Lewis and Mr. Byrne played in this needless drama. The fact that you gave me the courtesy of *any* response at least makes me hopeful that Jackson Lewis may be willing to simply provide me the truth about what happened in that room at the courthouse on October 15, 2018. I am well aware, that unlike Saul Ewing, Jackson Lewis never claimed to represent me, and then oppose me later. There is no

*Julie Kelly*

question that Saul Ewing transgressions against me are far worse than the ones I know or suspect may have been committed on Jackson Lewis' watch to this point. It is very hard on me, day to day having to wonder if First Data and Saul Ewing are going to use Mr. Byrne and / or Jackson Lewis as a local way to continue to surveille me.

I guess I am just naïve. First Data was the only employer I ever had. I never expected this kind of cruel retaliation from a company I, at one time considered family. What has been done to me by First Data and Saul Ewing to this point is so upsetting and just appalling. I am just trying to gather truthful information, so I can make rational decisions for my family.

Any honest answers that you can provide that are responsive to the questions I have asked Mr. Byrne and Jackson Lewis would be very helpful in my analysis of the retaliation I am experiencing at the hands of my former employer, First Data and its agents.

Respectfully,

Julie Kelly

*[signature: Julie Kelly]*

# Exhibit E

**From:** Townsend, Tracy R. (Cincinnati) **On Behalf Of** Rosenthal, Daniel G. (Cincinnati)
**Sent:** Thursday, January 03, 2019 9:37 AM
**To:** 'jul_kelly@mac.com' <jul_kelly@mac.com>
**Subject:** Jackson Lewis / Matt Byrne

Julie,

Here are the answers to your questions. All answers for Matt Byrne also apply to Jackson Lewis.

Matt was not hired by First Data until after the incident with the process server you say impersonated a Federal Express employee. Matt knew nothing about the Barger case or you at that time and had nothing to do with that process server.

Matt did not hire the court reporter for your deposition or communicate with the court reporter in advance of the deposition.

Matt was not responsible for the selection of court reporting methods and technology.

Matt was not involved in setting up the conference room for the deposition. He was present when Gillian Cooper asked the court room deputy if she could use the court's speakerphone to conference in two First Data in-house counsel.

Matt does not know what equipment was used for the recording of the deposition, or whether it was recorded at all by the court reporter. Matt has no knowledge or reason to believe that the deposition was recorded by Gillian Cooper, Robin Ording, or First Data in-house counsel Jill Poole or Lori Graesser (who attended by phone). Matt did not record the deposition.

Matt and you were present when Cooper initiated the call bringing in the two First Data in-house counsel, and to his knowledge, they were the only people who participated in the call.

Matt has no knowledge regarding the iPad ownership or use. Matt believes the iPad was owned by the court reporter.

Matt was not involved in the selection of the questions Cooper asked you at your deposition.

Matt's and Jackson Lewis' involvement in the Barger matter and with regard to you ended with the termination by the court of the miscellaneous case filed in Ohio regarding your deposition, except to the extent that Mr. Byrne has needed to review or respond to emails that you and Mr. Shearer have continued to send. Mr. Byrne and Jackson Lewis have not been retained by First Data in connection with the OCRC charge you filed in Ohio and are not involved in that case.

I hope this alleviates your concerns about Matt Byrne and Jackson Lewis.


Dan Rosenthal

2