# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| JULIE KELLY, | Case No. 1:19-cv-00372 |
| Plaintiff, | Judge Susan J. Dlott<br>Magistrate Judge Stephanie K. Bowman |
| v. | **MOTION TO DISMISS** |
| FIRST DATA CORPORATION, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANTS FIRST DATA CORPORATION, FRANK BISIGNANO, AND ROBIN ORDING'S (1) MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY UNDER FED. R. CIV. P. 12; OR (2) IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AS TO COUNT VIII UNDER FED. R. CIV. P. 56

Defendants, First Data Corporation, Frank Bisignano, and Robin Ording, by and through their undersigned counsel, respectfully move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint in its entirety, with prejudice, or alternatively, move for summary judgment pursuant to Fed. R. Civ. P. 56 as to Count VIII of the Complaint. The grounds and authorities for this Motion are set forth fully in the accompanying Memorandum of Law in Support of Defendants' Motion, which is incorporated herein by reference.

Respectfully submitted,

*/s/ Laura E. Salzman*
Laura E. Salzman (0095304)
Roetzel & Andress, LPA
250 East Fifth Street, Suite 310
Cincinnati, OH 45202
Telephone: (513) 361-0200
Facsimile: (513) 361-0335
Email: lsalzman@ralaw.com

14068857_1

*Of Counsel*:

Gary B. Eidelman, Esq. (*pro hac vice* to be filed)
Michael P. Cianfichi, Esq. (*pro hac vice* to be filed)
Saul Ewing Arnstein & Lehr LLP
500 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 332-8975
Facsimile: (410) 332-8976
gary.eidelman@saul.com
michael.cianfichi@saul.com

*Attorneys for Defendants, First Data Corporation,
Frank Bisignano, and Robin Ording*

14068857_1

## MEMORANDUM OF LAW

Defendants, First Data Corporation, Frank Bisignano, and Robin Ording, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of: (1) their Motion to Dismiss Counts I through VII of the Complaint under Fed. R. Civ. P. 12(b)(6); and (2) their Motion to Dismiss or, in the alternative, Motion for Summary Judgment as to Count VIII of the Complaint under Rules 12(d) and 56. As more fully set forth below, all of Kelly's claims should be dismissed, with prejudice.

## STATEMENT OF FACTS

**A.      Kelly's Prior FMLA Leaves.**  Plaintiff, Julie Kelly, was employed by First Data from 1998 until she voluntarily resigned on November 30, 2017. (Doc. # 1, PAGEID ("p.") 6, ¶¶ 38-39). During her employment, Kelly took leave for post-partum medical issues after giving birth to twins in December 2012. (*Id.*, p. 7, ¶¶ 46-49). She returned to work in March 2013 without restrictions. (*Id.*, p. 7, ¶ 49).

In 2014, Kelly became pregnant again and her doctor ordered she not travel. (*Id.*, p. 8, ¶ 63). First Data accommodated this request and she worked from home. (*Id.*, p. 8, ¶¶ 64-65). Kelly again took leave in 2015 for the birth of her child, and she returned without restrictions in April 2015. (*Id.*, pp. 9-10, ¶¶ 72, 78-79).

**B.      First Data's Policy Requiring Employees to Work in an Office.** In January 2015, Defendant Frank Bisignano, First Data's Chief Executive Officer, announced a neutral company-wide policy requiring employees to work in a First Data office, unless they were in direct outside customer sales. (*Id.*, p. 9, ¶ 67). First Data was already enforcing the "work from the office" policy uniformly for Kelly's group when she returned from her 2015 leave. (*Id.*, p. 10, ¶ 80). She alleges employees were either required to resign or move to a location close to an office. (*Id.*, p. 9, ¶ 69). Upon her return, Kelly was required to work in an office, which in her

case was the Cincinnati office. Kelly alleges that she had a choice: either commute or resign. (*Id.*, p. 10, ¶ 81). Even though she lived approximately 16 miles[1] from the office, she gave notice of her resignation on May 12, 2015. (*Id.*, p. 11, ¶ 83; Doc. # 1-2, p. 220).

Kelly alleges that her resignation letter "identified the effects on her health from complying with this new work-from-office requirements." (*Id.*, p. 11, ¶ 83). Her actual letter does not support this allegation. (*Id.*, p. 11, ¶ 83; Doc. # 1-2, p. 220). Rather, it states:

> After 17 years of successfully achieving projects, goals and requirements working from home office, the time and costs that it would take to commute into the Blue Ash corporate office (Cincinnati, OH) are prohibitive to my success both professional and personally.

(emphasis added). Although she understood "the changes in the company" and even though she voluntarily resigned, she asked for more than six months of severance pay, payout of equity grants, and other items. (*Id.*). Kelly alleges that after delivering her resignation, she spoke to her supervisor about her post-partum depression. She later rescinded her resignation, and in April 2015, alleges her supervisor allowed her to work from home. (*Id.*, p. 11, ¶¶ 84, 86-87).

**C.      Ording Becomes Kelly's Supervisor.** In January 2017, Robin Ording, Vice President – Human Resources and Training, took over as the permanent leader of the sales training group where Kelly worked. Ording enforced the Company-policy requiring all employees to work in the office. (*Id.*, pp. 12-13, ¶¶ 94, 96). Kelly alleges she told Ording that her prior supervisor allowed her to work from home. (*Id.*, p. 13, ¶ 99). After Ording took over, Kelly began commuting to the Cincinnati office, which she claims took 1.5-2 hours each way, despite being only 16 miles. (*Id.*, pp. 16-17, ¶ 131; Doc. # 1-2, p. 205, fn.1).

---

[1] (Doc. # 1-2, p. 205, fn.1).

In February 2017, Ording promoted Kelly to a Director and she received an $8,000 raise plus increased job responsibilities. (*Id.*, pp. 14, 16, ¶¶ 114, 125). Kelly performed the essential functions of her job at the office. (*Id.*, pp. 14-15, 17, ¶¶ 110, 117, 119, 135).

**D.      Kelly Resigns.** Kelly alleges that on October 5, 2017, she went to the hospital for chest pains. (*Id.*, p. 18, ¶ 141). She asked Ording to cover her training session later that day. (*Id.*). Kelly does not allege she spent the night in the hospital or that she missed any other days of work. Kelly does not allege that she requested time off or medical leave regarding this event. Instead, she alleges no one at First Data provided her with a notice of FMLA rights. (*Id.*, p. 18, ¶ 145).

On November 14, 2017, Kelly resigned by email to Ording. Like her first resignation notice, Kelly referred to the "requirement to work in an office location," and said "I have lost many precious hours that could have been dedicated to what means the most, my health and my family. Lost time in the countless hours of commuting to a building where a handful of people report in to." (*Id.*, p. 19, ¶¶ 150-51; Doc. # 1-2, p. 226). Notably, her letter claims the "work at the office" requirement not only allegedly contributed to health problems, but also caused "financial constraints and extraordinary burdens" on her family. (*Id.*). Like before, Kelly asked for severance pay, a pro-rated bonus, unvested equity, and other items even though she voluntarily resigned. Because Kelly resigned, First Data did not pay her severance. (*Id.*, p. 20, ¶ 154). Kelly's last day of employment was November 30, 2017. (*Id.*, p. 20, ¶ 155).

**E.      The *Barger* Litigation and Kelly's OCRC Charge.** In 2017, Steven Barger, (Kelly's former supervisor), sued First Data and six of its employees in federal court in New York, alleging violations of the Family and Medical Leave Act and Americans with Disabilities Act. (*Id.*, p. 21, ¶ 162). In its initial Rule 26(a) disclosures exchanged with Barger's attorney

Shawn E. Shearer, Esq., First Data listed Kelly as a person with knowledge and, because she was still employed by First Data in a managerial role, indicated she could be contacted through First Data's counsel. (*Id.*, pp. 20-21, ¶¶ 155, 162).

On April 27, 2018, and May 3, 2018, Shearer, who by that time had become Kelly's attorney, sent demand letters to First Data alleging claims of discrimination under Title VII, the Pregnancy Discrimination in Employment Act, the ADA, and Ohio Civil Rights Act. (*Id.*, p. 22, ¶ 168; Doc. # 1-1, p. 106). On May 16, 2018, Kelly dual-filed a Charge of Discrimination with the EEOC and the OCRC, which she later amended. (*Id.*, p. 23, ¶ 172; Doc. # 1-1).

On January 21, 2019, the OCRC dismissed Kelly's charge finding no probable cause that First Data "engaged in an unlawful discriminatory practice." (Doc. # 1-2, pp. 232-33). The OCRC concluded that it could not substantiate Kelly's claims of retaliation and that "it is undisputed that throughout [Kelly's] employment she was granted FMLA and reasonable accommodation requests when she presented medical certification." (*Id.*). The OCRC further concluded that Kelly "did not provide [First Data] with medical certification requesting a reasonable accommodation after the 2015 work from home policy took effect." (*Id.*).

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive such motion, the plaintiff must plead sufficient facts to state a claim that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. In considering a motion to dismiss, the court must "construe the

complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The court, "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). Even in the most favorable light, all eight of Kelly's claims should be dismissed with prejudice.

## ARGUMENT

1.    **The FMLA Interference Claim Fails.** Count I alleges that First Data, Bisignano, and Ording interfered with Kelly's FMLA rights by failing to send her a notice of FMLA eligibility after she went to the emergency room on October 5, 2017. (Doc. # 1, p. 32, ¶ 230). This claim fails because there are no allegations Kelly provided Defendants with information that would trigger the obligation for an employer to provide FMLA notice. Kelly also fails to plead how she suffered damages from the alleged failure to issue notice. Finally, Kelly alleges no facts that would require either Bisignano or Ording, (neither of whom were her employer), to provide FMLA notice.

1.1.    **There Are No Allegations Defendants Knew Kelly Had a Qualifying Serious Health Condition Requiring FMLA Notice.** FMLA regulations provide "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). For a health condition to be a "serious health condition" implicating the FMLA notice of eligibility, the employee must have a serious health condition that makes her unable to perform the essential functions of their job. 29 U.S.C. § 2612(D); 29 C.F.R. § 825.112(a)(4). Generally, a "serious health condition" is an illness, injury,

impairment, or some physical or mental condition that involves *inpatient care in a hospital requiring an overnight stay* (29 C.F.R. § 825.114) or *continuing treatment by a healthcare professional that includes a period of incapacity of more than three consecutive days*. *Id*. at § 825.115 (emphasis added).

Even if Kelly went to the emergency room on October 5, 2017, these bald allegations alone do not establish Defendants were required to provide FMLA notice. Kelly does not allege: (1) an overnight hospital stay; (2) a period of incapacity totaling more than three consecutive days; or (3) that she missed any time from work other than October 5th. Kelly does not allege she was eligible for FMLA leave. Because there is no "serious health condition" under the FMLA, there was no obligation to provide FMLA notice.[2] Yet, despite this absence of facts, Kelly alleges First Data, Bisignano, and Ording somehow had knowledge that her leave may qualify under the FMLA. No facts support Defendants being required to provide notice. Kelly's conclusory allegations do not support a claim of FMLA interference. *See Twombly*, 550 U.S. at 555. Count I should be dismissed with prejudice.[3]

**1.2. Bisignano and Ording Are Not Employers Under the FMLA.** Kelly also sued Bisignano and Ording individually for failing to provide FMLA notice. The "Sixth Circuit has never expressly decided the question of whether the FMLA imposes individual liability on private sector employees." *Shaw v. Total Image Specialists, Inc.*, 2010 WL 11537942, at *3 (S.D. Ohio Mar. 5, 2010). The Northern District of Ohio has ruled that

---

[2] Serious health conditions also include several other conditions that are inapplicable to this case as pled, including: pregnancy care, chronic conditions, permanent conditions, conditions requiring multiple treatments, or absences attributable to incapacity. 29 C.F.R. § 825.115(b)-(f). Kelly has not pled any facts indicating that any of these other serious health conditions apply to her case.

[3] There are no allegations Kelly provided notice of a "serious health condition" in October 2017. (Doc. # 1, pp. 7, 9, 10, 32, ¶¶ 46, 49, 72, 78-79, 239). The OCRC acknowledged Kelly had previously used leave, stating "it is undisputed that throughout [Kelly's] employment she was granted FMLA and reasonable accommodation requests when she presented medical certification." (Doc. # 1-2, pp. 121-22).

individual liability can only exist when the supervisor exercises sufficient control over the employee's leave and status as an employee. *Mueller v. J.P. Morgan Chase & Co.*, 2007 WL 915160, at *23 (N.D. Ohio Mar. 23, 2007). Liability may also exist when the defendant managed the company's FMLA compliance or terminated the employee. *See Carpenter v. Refrigeration Sales Corp.*, 49 F. Supp. 2d 1028, 1030 (N. D. Ohio 1999). The key issue is whether the individual had control of the violative action. *Mueller*, 2007 WL 915160 at *23.

Kelly alleges Bisignano "fail[ed] to provide [Kelly] notice of eligibility for FMLA leave." (Doc. # 1, p. 33, ¶ 244). There are no allegations that he, as CEO, had anything to do with her leave, her status as an employee, or that he managed First Data's FMLA compliance. Kelly speculates that the CEO of a large company should somehow know she went to the emergency room on October 5, 2017. Kelly fails to sufficiently plead facts to establish that Bisignano can be liable under the FMLA.

Kelly alleges First Data has a specialized Leave Management Team in Human Resources to handle FMLA leaves and that Ording knew she did not work on October 5, 2017. (Doc. # 1, pp. 33-34, ¶¶ 242, 253). Kelly's allegation that Ording knew she was out for one day does not and cannot establish that Ording is individually liable as an "employer" under the FMLA.

**2. Kelly's ADA Failure to Accommodate Claim Fails.** In Count II, Kelly alleges First Data failed to accommodate her disability by requiring her to work in a First Data office rather than at home. Count II should be dismissed because Kelly does not allege she suffered from a disability triggering First Data's obligation to provide an accommodation that would enable her to perform the essential functions of her job. Further, her ADA claim is time-barred and she also failed to obtain a Right to Sue letter from the EEOC before filing suit.

14068857_1

**2.1. Kelly Does Not Allege a Disability Requiring an Accommodation to Work Remotely.** Under Title I of the ADA, an employer must provide a reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9. A qualified individual with a disability is someone who, with or without reasonable accommodation, is able to perform the essential functions of the job. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). Reasonable accommodations include adjustments or modifications to the work environment or policies of the employer that enable a qualified individual with a disability to perform the essential functions of the job. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(1)(ii). To establish a *prima facie* case for failure to accommodate, Kelly must allege: (1) she is disabled under the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) First Data knew or had reason to know about her disability; (4) she requested an accommodation; and (5) First Data failed to provide a reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015).

First, Kelly has failed to plead that she is an individual with a disability, which is a prerequisite for a failure to accommodate claim. It is not enough under the ADA to simply allege having various medical conditions. (Doc. # 1, pp. 12, 18, ¶¶ 48, 77, 90, 141). To be *disabled* under the ADA, however, one must have a physical or mental impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The lack of factual allegations is fatal to her ADA claim. *See Alessio v. United Airlines, Inc.*, 2018 WL 6064866 (N.D. Ohio Nov. 20, 2018) (dismissing ADA failure to accommodate claim where plaintiff failed to identify any physical or mental impairment from which she suffered); *see also Currie v. Cleveland Metro. Sch. Dist.*, 2015 WL 4080159 (N.D. Ohio July 6, 2015). Count II should be dismissed

with prejudice because Kelly does not allege any of her medical ailments substantially limited one or more major life functions.

Second, Kelly fails to plead facts establishing that First Data knew or should have known she had a disability. *Reddy v. JPMorgan Chase Bank, N.A.*, 2013 WL 3147949 (S.D. Ohio, June 19, 2013) (holding that "a plaintiff must request an accommodation and a defendant must receive notice, either actual or constructive, that the plaintiff's request is linked to a disability"). Kelly alleges Ording became her supervisor in January 2017, and enforced the work-from-office policy. (Doc. # 1, pp. 12-13, ¶¶ 94, 96). Kelly alleges Ording was "aware of Kelly's medical condition" and her request for a work-from-home accommodation. (*Id*., p. 14, ¶ 107). As stated above, having a "medical condition" is *not* the same as having a "disability" triggering an ADA accommodation. Kelly fails to plead any facts that in January 2017, First Data knew or should have known that she suffered from a disability as defined by the ADA. Kelly only pleads First Data was aware of her need for an ADA accommodation in 2015, when her doctor requested she not travel during her pregnancy. (*Id*., p. 8, ¶ 63). Kelly admits that First Data fully accommodated that request. (*Id*., p. 8, ¶ 65).

There are no allegations that Kelly advised First Data she suffered from a disability under the ADA preventing her from driving to work. Rather, Kelly alleges that commuting to an office resulted in "lost time" and she wanted to be closer to her family. Kelly alleges in conclusory fashion, "First Data and Ording denied Kelly's work from home and modified schedule reasonable accommodation requests." (*Id*., p. 36, ¶ 271). The Court need not accept the unwarranted factual inferences that First Data somehow knew she was suffering from a disability that required an accommodation to work from home. *Total Benefits Planning Agency, Inc. v.*

*Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Because Kelly fails to plead First Data knew of a qualifying disability under the ADA, Count II fails as a matter of law.

    **2.2.    Kelly Fails To Plead She Requested an Accommodation.** The ADA makes employers responsible for failing to accommodate known physical or mental limitations, 42 U.S.C. § 12112(b)(5)(A), and Kelly therefore bears the initial burden of requesting an accommodation that it is "objectively reasonable." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007). Because the burden of requesting an accommodation is on the employee, "the employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." Count II should be dismissed with prejudice because there are no allegations that Kelly requested any accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011); *Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 fn.5 (6th Cir. 2010) (holding that "a plaintiff may not rely on accommodations that he did not request").

    Not once does Kelly allege she submitted a request for a reasonable accommodation to First Data or Ording *because of a disability*. In fact, Kelly admits she did not request an accommodation to work from home from Ording. (*Id.*, p. 14, ¶ 109). At best, she pleads in conclusory fashion "First Data and Ording denied Kelly's work from home and modified schedule reasonable accommodation requests." (*Id.*, p. 36, ¶ 271). Kelly cannot avoid dismissal of Count II based on conclusory statements. *Iqbal*, 556 U.S. at 678.

    **2.3.    Kelly Was Not Denied A Reasonable Accommodation.** Although the Sixth Circuit has yet to address whether a requested accommodation must bear a relationship or connection to the major life activity limited by the underlying disability, this case presents a perfect opportunity for this Court to rule that an employer's duty to accommodate arises only

where the employee requires a specific accommodation in order to be able to perform the essential functions of her job. In other words:

> [A]n employer need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of her job— not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place.

*Brumfeld v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). Since Kelly does not allege how working at the First Data office in Cincinnati prevented her from performing the essential functions of her job, she fails to allege any causal connection to her "need" to work from home.

A reasonable accommodation is one that alleviates disability-induced limitations that impact an employee's job-related activities. *See Danielle-Diserafino v. Dist. Sch. Bd. of Collier Cty., Fla.*, 2016 WL 4247633, at *4 (M.D. Fla. Aug. 11, 2016) (noting that "accommodations requested must have been sought for the purpose of alleviating the workplace effect of the impairment"). Other circuits have also adopted this causal requirement between the limitation and the accommodation. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003); *Buckley v. Consol. Edison Co. of N.Y.*, 155 F.3d 150, 157 (2d Cir. 1998) (en banc).

In a strikingly similar case, a former employee sued his employer for failing to grant him an accommodation of working closer to home. The employee claimed that his commuting time caused increased symptoms of his medical condition. In granting the motion to dismiss the failure to accommodate claim, the court opined:

> What [the plaintiff] wanted was not an accommodation to perform the essential functions of his job as a groundskeeper. He wanted more time to himself outside of his job. Indeed, the accommodation he sought—a job closer to his home—is not necessary to perform the essential functions of the groundskeeper's

> job. [The plaintiff] makes no allegation that he was unable to do his job at [employer]. The accommodation requested was not necessary in order for him to be able to perform the essential functions of the job of groundskeeper. In other words, [the plaintiff] did not need an accommodation to perform the essential functions of his job.

*Beishl v. Cty. of Bucks*, 2018 WL 6812132, at *2-3 (E.D. Pa. Dec. 27, 2018). Here, there are no allegations Kelly was unable to perform the essential functions of her job *unless* she worked from home. To the contrary, Kelly alleges that she *was* able to work in the office, as demonstrated by her doing so from November 2016 through her voluntary resignation. (*Id.*, pp. 13-14, 20, ¶¶ 100, 110, 155). She concedes this point in her resignation letter, stating she resigned because her commute to work contributed to "increased stress, financial constraints and extraordinary burdens on my family." (Doc. # 1-2, pp. 225-27). Although the commute allegedly put burdens on her family, she makes no allegation that it substantially limited her ability to perform her essential job functions. Disliking a commute is not the same as needing an accommodation to perform essential functions. Kelly's failure to accommodate claim under the ADA fails and should be dismissed with prejudice.

2.4.     **Kelly's ADA Failure To Accommodate Claim is Time Barred.** Under the ADA, an employee is required to file a charge of discrimination within 300 days of the alleged discriminatory act, which, here, is the requirement to work in the office. 42 U.S.C. § 2000e-5(e)(1); (Doc. # 1, pp. 35-36, ¶¶ 269-71). Kelly alleges Ording permanently became her supervisor in January 2017, which is when she began enforcing the work from the office policy. (Doc. # 1, pp. 12-13, ¶¶ 94, 96, 100). Kelly did not file her charge until May 16, 2018, which is more than 300 days from the alleged discriminatory act (January 2017). (Doc. # 1-1, p. 50). Kelly's ADA claim is therefore time-barred. *Van Buren v. Ohio Dep't of Pub. Safety*, 996 F.

Supp. 2d 648, 659 (S.D. Ohio 2014) ("A claim is time barred if it is not filed within this [300 day] time limit.").

      **2.5.**    **Kelly Failed to Exhaust Administrative Remedies.** Finally, Kelly's ADA claim fails because she did not obtain a Right to Sue letter from the EEOC before filing suit. The ADA requires a plaintiff to exhaust her administrative remedies before filing an action. 42 U.S.C. § 2000e-5(f)(1); *see also Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004) ("The exhaustion of administrative remedies is a condition precedent to a Title VII or ADA action."); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) ("An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies."). Although Kelly titles it as a "Right to Sue" letter in her "Table of Exhibits," the document attached to the Complaint is *not* a Right to Sue letter but instead the OCRC Determination finding no discrimination. (Doc. # 1-2, pp. 232-33). Because she failed to exhaust her administrative remedies, Count II should be dismissed.

      **3.**    **Kelly's Title VII and PDA Claims Fail.** Kelly alleges she had medical conditions arising out of her 2012 and 2015 pregnancies and that First Data knew of her conditions. (Doc. # 1, p. 37, ¶¶ 281-82). Based on these allegations, she alleges in Count III in a conclusory fashion that First Data somehow violated Title VII and the PDA. These allegations do not meet the Rule 8 standard. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

      Among other things, Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions or privileges of employment because of employee's sex. 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII to reflect that because of sex includes "because of" or "on the basis" pregnancy, childbirth, or related medical

conditions. *Id*. § 2000e(k). To establish a *prima facie* claim for discrimination under Title VII and the PDA, Kelly must allege that she: (1) is a member of a protected class; (2) was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Kelly does not allege that she suffered an adverse employment action "because of" or "on the basis of" her sex, which is fatal to Count III. To the contrary, Kelly alleges she suffered no adverse action after she twice became pregnant and went out on leave. (Doc. # 1, pp. 7, 10, ¶¶ 49, 79). Count III should be dismissed with prejudice.[4]

**4. Kelly's Retaliation Claims Under the ADA and OCRA Fail.** In Count IV, Kelly alleges that Defendants retaliated against her under the ADA and the OCRA by scheduling her deposition in the *Barger* case because she raised complaints of discrimination. (Doc. # 1, pp. 37-38, ¶¶ 286, 293-94). To establish a *prima facie* case of retaliation, she must allege: (1) she engaged in protected activity; (2) Defendants knew that she engaged in the protected activity; (3) an adverse employment action was taken; and (4) a causal connection exists between the protected activity and the adverse employment action. *Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (6th Cir. 2012). She must prove that engaging in protected activity was the but-for cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The retaliation claim fails for four reasons: (1) Kelly was not an "employee" when First Data scheduled her deposition thus, First Data, Bisignano, and Ording were not her "employer";

---

[4] Kelly's claims under the PDA and Title VII should also be dismissed because they are also time barred and she failed to obtain obtained a Right to Sue letter from the EEOC. *See*, *supra*, Part 2.4-2.5.

(2) scheduling a deposition is not an adverse employment action; (3) it fails the causation requirement; and (4) the ADA does not allow individual liability for retaliation claims.[5]

### 4.1. No Employment Relationship Existed At The Time Of The Alleged Adverse Action.

The anti-retaliation provisions in the ADA and the OCRA prohibit retaliation for opposing practices made unlawful by the underlying anti-discrimination statutes in those laws, which are limited to the employee's "terms, conditions, or privileges of employment." 42 U.S.C. § 12112(a); Ohio Rev. Code Ann. § 4112.02(A). Therefore, there must be an employment relationship between the employer and the plaintiff at the time of the alleged retaliation. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 515-16 (3d Cir. 2004) ("Once her employment was terminated it was not possible for her to suffer adverse employment action."). Kelly's last day of employment following her resignation was on November 30, 2017. (Doc. # 1, p. 20, ¶ 155). She alleges that six months later, First Data scheduled her for a deposition in the *Barger* case in retaliation for her own alleged complaints. (Doc. # 1, pp. 22, 37, ¶¶ 169, 286-88).

As a former employee, Kelly cannot state a claim for retaliation. In *Roshen v. Int'l Bus., Machines Corp.*, 2016 WL 950363, at *14 (S.D. Ohio Mar. 14, 2016), this Court rejected the claim that a former employer's written opposition to an EEOC charge was retaliation for the former employee filing a charge of discrimination. The Court ruled that an "adverse employment action" is only one that could "significantly impact an employee's wages or professional advancement." *Id.* (*quoting Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 433 (6th Cir. 2007); *see also Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 597 (6th Cir. 2009) (holding that employer's post-employment conduct could not constitute an adverse action because the action occurred after plaintiff was no longer its employee). Since Kelly was

---

[5] Defendants also incorporate by reference the arguments in support of the Motion to Dismiss Count IV of the Complaint filed by Defendants Jackson Lewis P.C. and Matthew Byrne. (Doc. # 17).

not an employee of First Data, Bisignano, or Ording at the time of the alleged retaliatory act, she fails to state a claim for retaliation under the ADA and the OCRA.[6]

      **4.2.   A Deposition is Not an Adverse Employment Action.** Kelly must also allege she suffered an adverse *employment* action. *Blizzard v. Marion Technical College,* 698 F.3d 275, 288 (6th Cir. 2012). An adverse employment action is a materially adverse change in the terms of *employment* that includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Deposing Kelly had no effect on her employment because she had already resigned. Therefore, the deposition cannot be an adverse employment action.

      **4.3.   No Causation**. Kelly alleges that while still an employee, First Data included her on its Rule 26(a) initial disclosures as a person with knowledge in the *Barger* case. (Doc. # 1, p. 21, ¶ 164). Despite this, she alleges that Defendants only scheduled her deposition in retaliation for filing a charge, yet she also alleges First Data scheduled her deposition because she had retained legal counsel. (Doc. # 1-2, pp. 183, 185). By pleading that there were different reasons for the deposition, she concedes that that the filing of her charge was not the but-for reason of the alleged "adverse action." *Nassar*, 570 U.S. at 360. For these reasons, Kelly's retaliation claim under the ADA and OCRA fails as a matter of law and should be dismissed with prejudice.[7]

---

[6] An employee under the ADA is defined as "an individual employed by an employer." 42 U.S.C. § 12111(4). The OCRA has virtually an identical definition. Ohio Rev. Code Ann. § 4112.01(A)(3). Kelly does not plead that she was an employee at the time the deposition was scheduled.

[7] Another reason to dismiss Kelly's ADA retaliation claim is that she never obtained a Right to Sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see also Mayers*, 101 F. App'x at 593.

**4.4.    Bisignano and Ording Cannot Be Sued For ADA Retaliation.** There is no individual liability for discrimination under Title I of the ADA. *Mayes v. City of Oak Park*, 285 F. App'x 261, 262 (6th Cir. 2008) (affirming dismissal of individual defendants because the ADA and Title VII do not provide for individual liability); *Woods v. Moore*, 2018 WL 1363806, at *2 (6th Cir. Feb. 8, 2018). Kelly's retaliation claims against Bisignano and Ording under Title IV of the ADA similarly fail. Title IV of the ADA provides that "no person" shall retaliate against an individual who engages in protected activity. 42 U.S.C. § 12203(a). A careful tracing of the retaliation statute reveals that, like its Title VII and ADEA sister statutes, there is no individual liability. The statute states that the "remedies and procedures available under sections 12117, 12133, and 12188 of this title" are the remedies available to plaintiffs for retaliation. *Id*. at § 12203(c). Section 12117 in turns adopts the Title VII remedies under § 2000e-5, which does *not* permit individual liability. 42 U.S.C. § 12117(a); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). Bisignano and Ording therefore cannot be liable for retaliation under the ADA.[8]

**5.    Kelly's OCRA Discrimination and Retaliation Claims Fail.** In Count V, Kelly claims that the conduct allegedly supporting her Title VII, PDA, and ADA claims establish liability for a violation of the OCRA. (Doc. # 1, p. 39, ¶¶ 297). She also claims retaliation under the OCRA, which is seemingly duplicative of her claims in Count IV. (*Compare* Doc. # 1, p. 38, ¶¶ 293-94, *with* p. 39, ¶¶ 298-300). Like those claims, Count V should be dismissed for failure to state a claim for the reasons above. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 848 (6th Cir. 2018) (holding that because the OCRA prohibitions mirror those of the ADA and Title VII, OCRA claims fail when the federal claims fail); *Fledderman v. Daiichi Sankyo, Inc.*, 930 F.

---

[8] Other Circuits have similarly held there can be no individual liability for ADA retaliation claims under § 12203 as in accord with Congressional intent. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Butler v. City of Prairie Vill., Kan*., 172 F.3d 736, 744 (10th Cir. 1999).

Supp. 2d 899, 908 (S.D. Ohio 2013) (holding that claims brought under the OCRA Ch. 4112 and Title VII are "evaluated under the same standard").

Kelly also cannot maintain suit against Bisignano and Ording for discrimination under § 4112.02(A) because neither were Kelly's "employer." *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 752 (S.D. Ohio 2018) (collecting cases and ruling that individuals are not "employers" under the OCRA § 4112.02(A)).[9]

**6.    Kelly Fails to Plead Constructive Discharge.** In Count VI, Kelly sues First Data, Bisignano, and Ording for constructive discharge under the ADA, Title VII, PDA, and OCRA. This claim fails because constructive discharge "is not itself a cause of action" but instead must be based on an underlying employment discrimination action. *Lucarell v. Nationwide*, 44 N.E.3d 319, 331 (Ohio Ct. App. 2015) (citing *Starks v. New Par*, 181 F.3d 103 (6th Cir. 1999)). Because Kelly has failed to plead any viable discrimination claim, there is no underlying action to support a constructive discharge claim.

Furthermore, Kelly pleads no facts that First Data[10] made her work environment so intolerable that it forced her to resign. To demonstrate constructive discharge, Kelly must plead that First Data deliberately created intolerable working conditions, as perceived by a reasonable person, to force her to quit. *Russell v. CSK Auto Corp.*, 739 F. App'x 785, 794 (6th Cir. 2018). Relevant factors in this analysis include whether the employee was demoted, had a reduction in salary or job duties, was reassigned to menial or degrading work or to a younger supervisor, or

---

[9] *Parker* left open the question as to whether there can be individual liability for retaliation under Ch. 4112, but granted the motions to dismiss the OCRA retaliation claims because the plaintiff failed to allege specific acts of retaliation against the individual defendants and, because, like here, she did not suffer any harm. *Parker*, 307 F. Supp. 3d at 753. The Court need not resolve whether the OCRA permits individual liability for retaliation claims because Kelly has failed to plead facts to support a claim of retaliation. See, *supra*, Part 4.

[10] Kelly cannot sue Bisignano and Ording for constructive discharge under Title VII, PDA, ADA, or OCRA since there is no individual liability under those statutes. See, *supra*, Part 4, and *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 406 (6th Cir. 1997) (no individual liability under Title VII or the PDA).

was badgered, harassed, or humiliated. *Id*. at 794-95. The level of proof is high. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018). Her allegations fail to meet this bar.

Kelly argues the intolerable environment was because First Data failed to provide her with FMLA notice and because of the irrelevant allegation that it laid off her supervisor while he was on leave. (Doc. # 1, p. 39, ¶ 303). Against these conclusions, Kelly pleads that after Ording became her supervisor, she was: promoted and given a raise (Doc. # 1, p. 16, ¶ 125); granted restricted stock for her leadership and performance (Doc. # 1, p. 14, ¶ 115); and given more responsibility (Doc. # 1, p. 15, ¶¶ 117-18). Kelly's own resignation letter says nothing of an intolerable work environment, but instead states that she resigned because she wanted to be home. (Doc. # 1-2, pp. 225-27). There can be no constructive discharge simply because an employer's policy requires employees to go to work in an office. For these reasons, Count VI should be dismissed with prejudice.

**7.      Counts VII and VIII Should Be Dismissed.** Kelly also sued First Data and Ording, along with other Defendants, for negligent, reckless, and intentional infliction of emotional distress (Count VII) and eavesdropping/invasion of privacy (Count VIII). First Data and Ording adopt and incorporate by reference the arguments in the Memorandum of Law filed by Defendants Saul Ewing Arnstein & Lehr LLP and Gillian A. Cooper, Esq.. Counts VII and VIII should be dismissed with prejudice or in the alternative, summary judgement should be granted as to Count VIII.[11]

---

[11] Defendants First Data and Ording also incorporate by reference the arguments stated by Defendants, Jackson Lewis LLP and Matthew Byrne, Esq., in their Motion to Dismiss for Counts VII and VIII. (Doc. # 17).

## CONCLUSION

For the above reasons, Defendants respectfully request the Court grant its Motion to Dismiss and dismiss the Complaint with prejudice.

Respectfully submitted,

*/s/ Laura E. Salzman*
Laura E. Salzman (0095304)
Roetzel & Andress, LPA
250 East Fifth Street, Suite 310
Cincinnati, OH 45202
Telephone: (513) 361-0200
Facsimile: (513) 361-0335
Email: lsalzman@ralaw.com

*Of Counsel*:

Gary B. Eidelman, Esq. (*pro hac vice* to be filed)
Michael P. Cianfichi, Esq. (*pro hac vice* to be filed)
Saul Ewing Arnstein & Lehr LLP
500 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 332-8975
Facsimile: (410) 332-8976
gary.eidelman@saul.com
michael.cianfichi@saul.com

*Attorneys for Defendants, First Data Corporation,*
*Frank Bisignano, and Robin Ording*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 30, 2019, the foregoing was electronically filed with the Court's CM/ECF system and the system will send electronic notification to all counsel of record via the Court's electronic filing system.

*/s/ Laura E. Salzman* _____
Laura E. Salzman (0095304)

14068857_1