Julie Kelly (Pro Se)
823 Dorgene Lane
Cincinnati OHIO 45244
Telephone (513) 806.4893
*jul_kelly@mac.com*

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JULIE KELLY, an individual | Civil Case No. 1:19-cv-00372-SJD-SKB |
| Plaintiff | |
| v. | |
| FIRST DATA CORPORATION, a Delaware corporation; | |
| FRANK BISIGNANO, an individual; | **PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS** |
| ROBIN ORDING, an individual; | **[Docket Nos. 17, 19 & 22]** |
| JACKSON LEWIS PC, a Pennsylvania professional corporation; | |
| MATTHEW BYRNE, an individual; | |
| SAUL EWING ARNSTEIN & LEHR, a Delaware limited liability partnership; and | |
| GILLIAN COOPER, an individual | |
| Defendants. | |

## PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS [Docket Nos. 17, 19 & 22]

I am Julie Kelly, plaintiff in this case ("Plaintiff"), and representing myself *pro se*.

Plaintiff hereby provides the Court this Consolidated Response to the following Motions

submitted by the Defendants ("Defendants Motions"):

1. Motion to Dismiss by Defendants Jackson Lewis P.C. ("Jackson Lewis") and Matthew Byrne ("Byrne") supported by an Affidavit of Byrne ("Byrne Affidavit") [Docket Nos. 17 & 17-1] (the "JL Motion")

2. Defendants First Data Corporation ("First Data"), Frank Bisignano ("Bisignano"), and Robin Ording's ("Ording") (1) Motion to Dismiss the Complaint in its Entirety under Fed. R. Civ. P. 12; or (2) In the Alternative, Motion for Summary Judgment as to Count VIII under Fed. R. Civ. P. 56 supported by an Affidavit of Lisa M. Conley Yungblut ("Yungblut Affidavit") [Docket Nos. 19 & 20] ("FD Motion"); and

3. Defendants Sault Ewing Arnstean & Lehr LLP ("SEAL") and Gillian Cooper's ("Cooper") (1) Motion to Dismiss Counts IV, V, VII, and VIII of the Complaint in its Entirety under Fed. R. Civ. P. 12; or (2) In the Alternative, Motion for Summary Judgment as to Count VIII under Fed. R. Civ. P. 56 also supported by the Yungblut Affidavit [Docket No. 22] ("SE Motion").

Because I am responding to three different motions, this brief is slightly longer than would be

permitted to respond to any one of them. I would ask that in the interest of economy, we address

the issues one by one instead of me needing to type the same thing over and over again. I am

well under the aggregate page limit I would be entitled to if I responded to each of the

Defendants Motions separately.

## STATEMENT OF FACTS

This is an American's with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"), Family

and Medical Leave Act , 29 U.S.C. §261 et seq. ("FMLA"), Title VII and the Pregnancy

Discrimination Act ("PDA") 42 U.S.C. §§2000e-200e-17, the Ohio Civil Rights Act (Chapter

4112 of the Ohio Revised Code)("OCRA"), and tort liability lawsuit. The Plaintiff filed the

Complaint in this case [Docket No. 1] ("Complaint") on May 20, 2019. The Complaint contained

more than 350 paragraphs of allegations. The Plaintiff's statement of facts is in those paragraphs of the Complaint and incorporated herein.

The Defendants Motions contained their own statements of facts. Those statements of facts contain some factual statements inconsistent with the allegations in the Complaint and belong in an Answer to the Complaint, not in Motions pursuant to Rule 12. If there are factual disputes, the Defendants should answer the Complaint and discovery should begin.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court cannot look beyond the pleadings. To survive a Motion to Dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts to state a claim that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the court must construe the Complaint in the light most favorable to the Plaintiff, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1950. A complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

The Defendants' Motions amount to nothing more than attempts to dispute facts before discovery has even been done. The fact that all the Defendants' Motions rely on either the Byrne

Affidavit or the Yungblut Affidavit demonstrate that facts outside of the pleadings are necessary to decide this case and show that this case should proceed to discovery. If after discovery is completed, the theories in the Defendants' Motions can then be advanced in summary judgment motions. The Complaint adequately states its claims.

## Count I of the Complaint
## Adequately States a Claim under the FMLA against First Data, Bisignano, and Ording

The FD Motion states that there are no allegations the Defendants knew Plaintiff had a qualifying serious health condition requiring FMLA notice. This is incorrect. First Data is a corporation. If any of its management knows of an employee's serious health condition, then First Data knows of the serious health condition. The seriousness of Plaintiff's post-partum medical issues, including prior hospitalization and continuing treatment by physicians is alleged in Paragraphs 48, 51, 63, 75-77, 90 of the Complaint. The Complaint alleges that my former supervisors Barger and Fricke, and then my last supervisor Defendant Ording had knowledge of Plaintiff's serious medical condition in Paragraphs 56-77, 240-243. In Paragraph 238 of the Complaint, I allege that post-partum medial issues, liver issues, and cardiac events are "serious health conditions" for purposes of the FMLA. The FD Motion wants to quibble about the seriousness of those issues which can be done during discovery not through dismissal before facts are developed. The Complaint Paragraph 252 alleges that had I been notified of eligibility to take FMLA leave, I would have had the time to recuperate and would not have felt the need to quit my job for health reasons. These facts, as alleged, are sufficient to give defendants fair notice of the claim and set forth a plausible claim for relief for interference with my entitlements under the FMLA. The purpose of the FMLA interference count cause of action "is to permit a court to inquire into matters such as whether the employee would have exercised FMLA rights in the absence of the employer's action." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91

(2002). When an employer is on notice of an FMLA qualifying condition, it must notify the employee of the employee's eligibility to take FMLA leave. 29 C.F.R. §25.300(b)(1). *Reeder v. Cnty of Wayne, Mich.*, 694 F.App'x 1001 (6th Cir. 2017) (chest pain and anxiety, the court decided an employee does not need to expressly assert rights under the FMLA, but will be "deemed to have given sufficient notice by providing information an employer can reasonably conclude that an FMLA-qualifying circumstances is in play") *Chailia v. Scottsdale Healthcare Hosp*, 701 F.App'x 639 (9th Cir. 2017)(supervisor obligation to inquire further creates a triable fact). "An interference claim is not about discrimination. It is only about whether the employer provided the employee with entitlements guaranteed by the FMLA" *Beauvais v. City of Inkster & Booker Snow*, 2017 WL 5192249 (E.D.Mich. Nov 9, 2017)(quoting *Mrshall v. The Rawlings Co. LLC,* 854 F.3d 368, 364 (6th Cir. 2017).

I also alleged in Paragraphs 247 to 251 that Defendants' practice of terminating employees in mass and while on leave created an atmosphere that discouraged me from exercising my FMLA entitlements. Defendants do not address this separate violation of the FMLA. *Preeson v. Parkview Med. Ctr., Inc.,* 2017 WL 1197298 (D. Colo. Mar. 30, 2017) (To succeed on an FMLA interference claim, the employee must only show that her employer provided a strong disincentive or discouraged use of available FMLA leave, such that would cause her fear invoking her rights under the FMLA).

The Complaint also adequately alleges that Bisignano was my employer for purposes of the FMLA. The Court's look to the definition of "employer" and the "economic reality test" under the Fair Labor Standards Act as interpretive guidance under the FMLA. *Graziadio v. Culinary Inst. Of Am.*, 817 F.3d 445 (2d Cir. 2016)(factors include the power to hire and fire employees, supervision and control of employee work schedules or conditions of employment,

determining rate and method of payment, and maintaining employment records); *Cordova v. State of N.M.* 2017 WL 4480748 (D.N.M. Oct. 6, 2017) The Complaint alleges in Paragraphs 67-71, & 80 that Bisignano unilaterally changed the terms and conditions of my employment (work-from-home policy) and in Paragraphs 96-100 alleges that Ording was my supervisor, controlled my work schedules, and determined my pay and kept employment records. The allegations sufficiently notify Bisignano and Ording that Plaintiff, based on stated facts, alleges that they were each "employers" for purposes of the FMLA. The FD Motion does not state that the Complaint does not make these allegations but merely contests the facts, which belongs in an Answer.

## Count II of the Complaint
## Adequately States an ADA Failure to Accommodate Claim against First Data

The FD Motion attempts to argue the facts of the case and not whether or not sufficient facts were alleged to provide notice of the claim that First Data knew of Plaintiff's disability and failed to provide the required accommodation. First Data first wrongly asserts that Plaintiff did not allege that Plaintiff's medical conditions constituted a disability. Paragraph 263 specifically alleges that post-partum induced illnesses were disabilities that impair a major life activity. As noted above, the Complaint thoroughly pleads complications related to my pregnancies, including post-partum depression, non-alcoholic liver disease, cardiac and blood pressure issues. In a case with factual issues nearly identical to those in the Complaint, *Hostettler v. College of Wooster,* the Sixth Circuit reversed the District Court's ruling on this exact issue. Determined that allegations of post-partum depression and the resulting medical issues is a disability for purposes of the ADA., *Hostettler v. College of Wooster*, 895 F.3d 844, 853-854 (6th Cir. 2018).[1]

---

[1] I found it interesting that the FD Motion cited the *Hostettler* case on page 19 for the proposition aht the claims should be dismissed. Counsel for First Data clearly did not read the *Hostettler* case if they are citing it for that purpose.  The 6th Circuit in *Hostettler* reversed a summary judgment for the Defendants and sent the case back for

This case is directly on point and the Complaint alleges all of the facts needed to satisfy the criteria outlined by the Sixth Circuit in that case. The Complaint alleges that my post-partum medical issues impacted major life activities  including the proper functioning of my liver, heart, and circulatory system, and well as my mental functions. Each of these are part of a major life activity as defined in the FD Motion.

The Complaint repeatedly alleges that First Data, through its officers (including Fricke, Britt, Barger, and Ording) knew that my medical condition impacted major life functions. It is impossible for First Data to even allege that it did not know of Plaintiff's disability when Plaintiff's two managers prior to Ording both granted me reasonable accommodations for my disabilities.  The existence of my prior accommodation that was revoked by Ording is more than sufficient to demonstrate First Data's knowledge of the disability.

The FD Motion also falsely states that the Complaint did not allege a request for an accommodation. Paragraph 270 and 271 clearly plead that I requested an accommodation and was denied - "Kelly requested that First Data and Ording reinstate her remote work accommodation." These Paragraphs and those in Paragraphs 83-91 and 264 give "adequate notice" that I had accommodations before Ording and my asking for the same accommodation was denied by Ording.

In *Hostettler* the Sixth Circuit held that the burden was on the employer to explain why work from an office is an "essential function" of the job. *Hostettler* 895 F.3d at 856 to 857. The case cited by the FD Motion (*Beishl v. Cty of Bucks*) does not apply. That case involved a groundskeeper (attendance at the workplace was an essential function of the job and the groundskeeper requested a different location to perform his grounds keeping work). In this case,

---

trial on issues nearly identical to the facts plead in the Complaint. Assuming the facts in the Complaint are true, *Hostettler* clearly stands for the proposition that claims have been stated in the Complaint.

the Complaint alleges that work from the Cincinnati office was not an essential function of the job as the Plaintiff did not interact with any of the employees in that office and her job had been performed remotely for numerous years prior to the change in policy and revocation of her accommodation.

The Complaint does allege that my abilities to perform my job function were impacted by the additional stress and anxiety of travel to the office when unnecessary.  The most obvious example being the cardiac event that caused my need to go to the emergency room resulting from complications from my post-partum medical issues. Certainly, being required to visit the emergency room due to working conditions constitutes an interference with my ability to perform any functions of the job.  Complaint Paragraph 132 to 144, for example, alleges that the commuting was damaging my health and with any use of common sense by the Court, the impacts on my health (anxiety, stress, blood pressure, and ultimately cardiac palpitations requiring an emergency room visit) were affecting my ability to perform my job functions. That interference with my functioning is alleged to have been directly related to my disability exacerbated by a requirement to attend at the office when attendance is not an essential function of the position that can be accommodated as it had been for years by remote work.

### Count III of the Complaint
### Adequately States Title VII and PDA Claims against First Data

The Complaint does allege all the requirements of a prima facia Title VII and PDA case. Plaintiff is female and qualified for the job, Plaintiff's terms and conditions of employment were adversely affected by Defendants' decisions while I was employed, leading ultimately to a constructive discharge and retaliation, and alleges that Plaintiff's job responsibilities were transferred to First Data employees in Europe (i.e. outside of the class protected by Title VII and the PDA of the United States).

### Count IV of the Complaint
### Adequately States ADA and OCRA Retaliation Claims against All Defendants

The Complaint alleges that when I was discharged from employment, I remained subject to the terms and conditions of First Data's employment policies and practices.[2]  In Paragraph 158, I specifically allege that just five days after my last day, I received a letter advising me of my obligations to First Data (non-compete and non-solicit obligations) limiting my job search capabilities. When I first raised my charges to First Data's in-house legal department on April 27, 2018 and then May 3, 2018 (Paragraph 168 of the Complaint), my request for severance under First Data's severance policy was sent to a First Data committee for evaluation of my eligibility for compensation. The committee denied my request. See Exhibit B. The fact that my discrimination complaint was referred to a committee that evaluates First Data employee eligibility for severance benefits at the time of the termination of their employment directly means that the retaliation against me, that commenced a week after my initial complaints and before a determination was made about my severance eligibility was directly related to me raising questions about benefits to which I was entitled when I was employee. It was at that time that the retaliation started, and the coordinated plan by the defendants continued throughout the remainder of the summer of 2018 as alleged in the Complaint (Paragraphs 158 to 228).

I remained subject to the non-compete and non-solicit obligations of my employment terms when the retaliation began and then continued. If I am subject to restrictions on my

---

[2] The Supreme Court has held that retaliatory acts are not limited solely to acts directly related to employment or the workplace. For example, post-employment acts, such as negative job references, can constitute adverse action for purposes of asserting a retaliation claim. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). See also *Thompson v. North American Stainless*, 131 S.Ct. 863 (2011) (third-party claims within "zone of interest" protected by Title VII). [from *Wilson Elser Employment Newsletter June 2012*] The ongoing retaliation against me by calling me, bringing lawsuits against me to compel me to testify after I had already appeared, and then admitting the only reason for doing so was because I had filed a charge of discrimination is within the "zone of interest" of the conduct prohibited by the spirit of the ADA, Title VII, PDA and the OCRA..

potential employers while seeking employment, then I am still having my professional career negatively impacted by the hold-over covenants of my employment with First Data.

The Complaint also alleges that even after my termination, First Data believed that it could select my counsel for me when I was listed on First Data's Rule 26.(a)(1) disclosures as a witness that only could be contacted through First Data's counsel (Paragraph 180). In *Robinson v. Shell Oil Company*, 519 U.S. 337 (1997), the Supreme Court held that the term "employees" as used in Title VII's anti-retaliation provision should be read broadly to extend protection to former employees because the term "employee" contains no "temporal qualifiers" and that several provisions of Title VII use the term "employees" to be something more inclusive than "current employees." The Supreme Court stated that the statute plainly contemplates that "former employees will make use of the remedial mechanisms of Title VII." *Robinson*, 519 U.S. at 345. And the Court reasoned that the exclusion of former employees from protection would "undermine the effectiveness of Title VII by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims. *Robinson*, 519 U.S. at 346. All of the allegations in the Complaint regarding retaliation have a clear "nexus" to my former employment at First Data.

The FD Motion misstates my retaliation claim. It is not merely the calling of a deposition. It is the combined effect of me being the only employee of First Data (other than the Plaintiff in the Barger Case) that was called for a deposition. (Paragraph 180) The purported reason that I was called to testify as a third-party was because I had information to provide regarding my employment under Barger. I appeared as required and Defendants no-showed that deposition. Defendants then sought to compel me again and fought my protective order requests

that alleged I had already performed. Further, under the document production request I received, First Data was seeking for me to provide documents that arose from my employment activities at First Data. But for my employment at First Data, I would have never been called to testify as a third-party witness in the Barger Case. As also evident from no other current employees of First Data being deposed by First Data, "but-for" my constructive discharge, I would not have been deposed or suffered the financial and personal impacts of attending two depositions improperly. Further, as evidenced by Defendant Cooper's statement alleged in Paragraph 225 is that the sole reason for me being called is a deposition.

The cases cited by Defendants do not reflect this situation.[3] My being called as a third-party deponent, First Data no-showing the first deposition and then filing motions to compel me to appear again, demanding production of documents from when I was employed, bringing my last supervisor Ording to the second deposition solely to harass and intimidate, and then seeking another order for me to appear a third time, and all of that based solely upon the fact that I was employed by First Data and raised a charge of discrimination. That is retaliation. Even then, when my five hour deposition occurred, only 40 minutes related to Barger, the rest related to me and my claims.

The Court cannot allow an employer to use ongoing employment litigation in one case (Barger Case) as a forum to unnecessarily harass and intimidate another employee (Kelly) and to collect discovery before a case is even filed.  The implications are significant to bless that behavior. If this is allowed to occur, any time an ex-employee raises a charge of discrimination and the employer has an ongoing, and unrelated employment case, the employer merely

---

[3] I am not a lawyer, but I have read the cases cited by the Defendants that I can find. I can only say that their descriptions of the cases in parenthesis do not reflect the content of those cases as I read them. They seem to take a fact specific conclusion of a court and then try to make a generalization about the decision when that is not what the court wrote. I am not sure if this is a violation of the rules, but it seems like it should be.

subpoenas the complaining employee as a third-party in the unrelated case and deposes them about their own charge being raised. I was not able to do discovery on First Data while my charge was pending, but they were allowed, they claim, to do discovery on me. Many employees, like me, will be unable to hire an attorney to file for protective orders or file motions to quash. After the number of years I have at a large employer drafting training materials, I was able to at least try to raise these issues. Most wronged-employees will not be able to do so. Talk about circumventing the administrative process. If Defendants are allowed to succeed with this strategy, the process of investigating claims by the EEOC and OCRC will be significantly hampered and the employers will be allowed to obtain discovery from those employees making charges more than a year prior to the commencement of discovery in that employee's case, as will have happened to me.

The FD Motion's "No Causation" section to Count IV (page 18) is a perfect example of the deception, hyperbole, mischaracterization, and, possibly, intentional misrepresentation evident in the FD Motion and the SEAL Motion: "[She alleges that Defendants only scheduled her deposition in retaliation for filing a charge, yet she also alleges that First Data scheduled her deposition because she had retained counsel."   What a ridiculous and dishonest statement. All of Defendants' arguments should be read against the light of this misrepresentation. The Complaint alleges that I tried to resolve the issues while I was employed, seeking reinstatement of my accommodation. The Complaint alleges that the working conditions became so severe that I was hospitalized for cardiac issues and that I again asked to work from home as I had done for years. The Complaint alleges that when I got no response to these requests, I was constructively discharged and I was forced to quit. The Complaint then alleges that I sought the advice of counsel to seek a remedy and that when my counsel wrote, the retaliation started. The hiring of

counsel then led to my filing of charge of discrimination.  I am not sure what point they are trying to make other than to discourage employees who have failed to obtain resolution on their own to not seek counsel and give-up. Yes, it was when I sought counsel that First Data started retaliating because my own personal attempts to resolve the situation were completely ignored. This is not a mixed causation issue. Defendants' treatment of me led to me seeking relief from my supervisor, that was not accommodated, I was constructively discharged, I asked a lawyer for help, when my lawyer wrote a letter, First Data started retaliating.  It's all one chain. The reference to the involvement of a lawyer was only meant to demonstrate how little the Defendants respected my requests for assistance when I was asking for accommodations and assistance before I hired a lawyer. This merely demonstrates the lack of seriousness that First Data gives to its obligations under employment statutes. There was no reason to retaliate until a lawyer was involved because until then, they simply ignored my requests.

The ADA "Discrimination" section 42 U.S.C. §12112(a) says:

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employee, employee compensation, job training, and other terms conditions, and privileges of employment.

The ADA "Prohibition against retaliation and coercion" section 42 U.S.C. §12203(a) says:

No person shall discriminate against an individual because an individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under this chapter.

To me, there is a difference between  "no covered entity" and "no person." The prohibition against retaliation applies to more than covered entities, it applies to persons. In 42

13

U.S.C. §1211(7) the ADA defines "person" to have the meaning in "section 2000e of this title."

42 U.S.C. §2000e(a) defines "person" to include:

> one or more individuals, governments, governmental agencies, political
> subdivisions, labor unions, partnerships, associations, corporations, legal
> representatives, mutual companies, joint stock companies, trusts, unincorporated
> oraganizations, trustees, trustees in cases under title 11 or receivers.

Ording, Bisignano, Byrne and Cooper are all individuals and therefore persons prohibited

from retaliating. First Data, SEAL and Jackson Lewis are also persons prohibited from

retaliation. Cooper, SEAL, Byrne and Jackson Lewis also were legal representatives of

First Data making them persons under the definition. All of the lawyers were also acting

as agents of First Data in defending First Data in the Barger Case. They were acting on

behalf of First Data when they decided to depose and harass me. The argument in Cooper

and SEAL's SE Motion and that SEAL and Cooper are not "employers" for retaliation is

not responsive. "Employer" is not in the retaliation section. They are persons prohibited

from discriminating against me.

 As I read 42 U.S.C. §12203(a) this means that each of the Defendants is a "person" that is

prohibited from discriminating against me because I made a charge of discrimination. The

Complaint pleads numerous reasons as to why each of those Defendants were involved in

retaliation against me. See for example Paragraphs 158 to 228 of the Complaint One of the

reasons I was run through a ringer being the only employee of First Data deposed and subjected

to motions to compel, multiple subpoenas, and being forced to attend multiple depositions, which

created anxiety and a visit to my doctors and ruined my entire summer of 2018 making searching

for a job nearly impossible, was because I filed a claim of discrimination. In Paragraph 225 of

the Complaint I provided a portion of my deposition transcript in which Cooper stated that the

other employees at First Data had not been deposed and I was singled out to provide a third-party deposition in the Barger Case because I had "filed a charge."

The Complaint's allegations sufficiently plead that the Defendants are all persons and the Defendants all decided to depose me and not others in my position because I had filed a charge. The retaliation section does not say anything about an adverse employment action. The retaliation section says no person may discriminate against me because I made a charge of discrimination. That is exactly what has been done. The Complaint states a claim against all Defendants.

The SE Motion also says that the retaliation claim fails because a deposition is not an adverse employment action. I have addressed that argument above. But also, the retaliation section 42 U.S.C. §12203(a) includes a number of actions outside of employment. For example, that section says that a person cannot discriminate against someone because that "assisted or participated in <u>any manner</u> in an investigation." I could see an example of a customer witnessing an employee being badgered by his boss because of his disability and that customer participating in an investigation. The retaliation section as I read it would prohibit the company or the manager from discriminating against the customer because the customer participated in the investigation. The retaliation section is not limited to "adverse employment action" as stated in the SE Motion.

The SE Motion also cites a number of cases as to lawyer liability.  These cases do not apply. My Complaint is not against them for what they have done to me in this case or in my OCRC complaint. The lawyers retaliation is related to their representation of First Data in the Barger Case. I was not a party to that case. I was a third-party singled out because I had filed a charge of discrimination. That is different than me complaining about the way they will likely

treat me in my own case against First Data. Simply because Cooper, SEAL, Byrne and Jackson

Lewis have represented First Data in a case unrelated to me does not mean they get to engage in

retaliation against me because I filed a charge of discrimination against First Data.

### Count V of the Complaint
### Adequately States Discrimination and Retaliation Claims under OCRA

All of the Defendants Motions merely cite cases stating that the OCRA is the same as the

ADA and Title VII, and then apply their arguments discussed above to conclude the OCRA

claims receive the same treatment. They also assert that the individual defendants are not liable

under the OCRA for the same reasons why they are not liable under provides: the ADA, Title

VII and the PDA. However, the retaliation language in the OCRA is different than the retaliation

language in the ADA, Title VII, and the PDA. It is as if the Defendants are arguing that the

decisions interpreting the federal laws somehow deprives the Ohio legislature of their ability to

state a different rule for the people of Ohio.

O.R.C. §4112.02(A) makes it unlawful <u>for any employer</u> because of sex, disability, etc.

of any person, to discharge, refuse to hire, or otherwise discriminate with respect to employment.

On the other hand, the prohibitions as to retaliation are different. O.R.C. § 4112.02(L)

provides that "It shall be unlawful discriminatory practice[4]:

> <u>For any person</u> to discriminate in any manner against any other person because
> that person has opposed any unlawful discriminatory practice defined in this
> section or because that person has made a charge, testified, assisted, or
> participated in any manner, in any investigation, proceeding, or hearing under
> Sections 4112.01 to 4112.07 of the Revised Code.

This prohibits Bisignano, Ording, SEAL, Cooper, Jackson Lewis, and Byrne (each a person)

from discriminating against me because I opposed a discriminatory practice and filed a charge

---

[4] Note the difference – under the ORC it is an unlawful discriminatory practice if the act falls on the list, and the list extends to such topics as housing, schooling, etc. The OCRA is not merely an employment act and should be read as it states, a prohibition on the listed discriminatory acts.

and I testified, assisted, participated in any manner in an investigation under 4112.01 to 4112.07.
All of the alleged retaliatory events occurred in direct response to my raising charges of
discrimination and my filing of a charge that was investigated by the OCRC. This section
prohibits "any person", not just an "employer".

Further, O.R.C.  §4112.02(M) adds to that and provides "It shall be an unlawful
discriminatory practice:

> For any person to <u>aid, abet, incite, compel, or coerce</u> <u>the doing of any act</u> declared
> by this section to be <u>an unlawful discriminatory practice</u>, to obstruct or present
> any person from complying with this chapter or any order issued under it, <u>or to
> attempt directly or indirectly to commit any act declared by this section to be an
> unlawful discriminatory practice.</u>

This section prohibits aiding, abetting, inciting, and compelling another to commit a
discriminatory act or to "attempt" (directly or indirectly) to commit a discriminatory act.  There
is no similar provision within the ADA or Title VII.  There is no doubt that the Complaint has
alleged sufficient facts to find that all of the Defendants were aiding, abetting, coercing, or
attempting (directly or indirectly) to commit a violation of the OCRA. Section O.R.C.
§4112.02(M) applies to any person.  There is no exception for lawyers or employees. The
Complaint adequately alleges that each of the individual defendants in their own way aided and
abetted in violations of the OCRA (including retaliation for merely raising my claims). See *Arias
v. Raimondo*, 860 F.3d 1185 (9th Cir. 2017)(FSLA anti-retaliation not limited to employers –
attorney was part of the plan to retaliate is actionable). The Complaint alleges that Bisignano and
Ording were employers and persons directing the discrimination and retaliation by First Data.
The Complaint alleges that SEAL, Cooper, Jackson Lewis and Byrne, were initially acting as
counsel to Plaintiff when Plaintiff was listed as a witness in the Barger case that was subject to
SEAL's control. SEAL was not acting merely as counsel to the employer, SEAL was actively

acting as my counsel and while serving in that role, also aided, abetted, incited and compelled First Data and Ording to take actions in violation of the OCRA against me. This is not a case of the lawyers merely representing their client in litigation. This is a case of the attorney's actively planning and incenting their clients to retaliate against me before I had even filed a case because I had merely raised the possibility of filing charges of discrimination. The attorneys in this case took a far more active role than merely serving as defense counsel. The attorneys were serving as advisors and directed the retaliation, and Cooper admitted that the reason they did so was because I had decided to raise charges of discrimination. Complaint Paragraph 225.

The OCRA does not apply only to employment. The OCRA address many different areas where discrimination is prohibited, employment being one of them. The provisions the OCRA on retaliation and aiding and abetting apply to all of those areas. Adverse employment action is not required for the Defendants actions to be retaliation or aiding and abetting retaliation. The lawyer and law firm defendants at a minimum aided and abetted First Data's retaliation.

The Complaints against the attorneys and firms are not related completely to their actions on behalf of First Data directly in connection to my claims against First Data. SEAL, Cooper, Jackson Lewis, and Byrne were always acting as counsel to First Data against Barger and then, just as I raised my discrimination claims, they (although purporting to be my lawyers) turned against me to compel me to testify in the Barger Case and, because of my request for protective orders and to quash subpoena because I appeared when they did not for my first deposition, the coordinated and conspired with all of the defendants to conduct a coordinated campaign against me as a third-party witness in the Barger Case. Their actions in the Barger Case were unrelated to their representation of me in my claims against First Data. They are like any other person and prohibited under the OCRA from aiding and abetting First Data, Bisignano and Ording from

discriminating or retaliating against me because I had raised a wholly-separate claim of discrimination while the Barger Case was proceeding.  The OCRA prohibits SEAL, Cooper, Jackson Lewis, and Byrne from aiding, abetting and directing the discrimination and retaliation against me.

**Count VI of the Complaint**
**Adequately States a Claim for Constructive Discharge**

Count VI was plead for the convenience of the proceedings. The FD Motion is correct in that constructive discharge without more is not a cause of action.  However, the elements of constructive discharge are distinct and were separated for purposes of clarity in the pleadings. However the Court would like to handle this Count is acceptable as long as the factual and legal allegations remain. The viable supporting claims for supporting my constructive discharge have been adequately pled. *Brister v. Mich Bell Tel.*, 705 F.App'x 356 (6th Cir. 2017)(employee must show (1) employer deliberately created intolerable working conditions as a reasonable person would perceive them to be and (2) employer with the intent to force employee to resign  - listing of non-exclusive factors). There are also other factors that were not presented in the facts of *Brister*. That is why the list is "non-exclusive." The facts as plead in the Complaint possibly could lead to the development of other factors (e.g. piling work onto a known good, but disabled employee, to force them to quit so as to avoid further severance expense) that were not relevant to the negative employment actions in *Brister*.

The FD Motion asserts that I plead no facts that my work environment was made intolerable. I am not sure what Complaint they read, but the Complaint alleges for hundreds of paragraphs that the environment was working fine for nearly a decade until Bisignano began implementing mass firings, Ording started bragging about her cost savings from implementing firings, Bisignano ceased the work-from-home policy forcing employees to resign or relocate, and then the health issues I experienced from trying to comply with these changes in working circumstances. The pleading does adequately plead that First Data, Bisignano, and Ording

implemented and created a working condition that was intolerable. My reaction to the intolerable policies was reflected when I went to James Britt and Barger several years earlier and was granted an accommodation. I allege that I was reasonable then and I was also reasonable when I complained to Ording that about the same conditions she was enforcing exacerbating my health conditions that her predecessors had not.  The Complaint alleges that the atmosphere was to drive employees to leave so that the Company would not need to pay severance or incur other separation expenses.

The FD Motion then proceeds to go through the presented evidence and pick-out whether it proves the allegation. That is not the purpose of a 12(b)(6). Those types of arguments are for when discovery is done and a summary judgment motion is filed or an argument to a jury is made.

As plead, the Complaint satisfies each and every element for pleading constructive discharge. The issues raised by the FD Motion are solely fact question as to the exact nature of the change in my working conditions, the exact change in my health, and whether given those changes a reasonable person would feel resigned to resign as I did.  Those are all fact questions and not questions to be decided now when the allegations in the Complaint are presumed to be true. Complaint Paragraphs 301 (incorporating all of the other Complaint allegations) and 303 and 304.

<u>**Count VII of the Complaint**</u>
<u>**Adequately States Claims for Emotional Distress Against all Defendants**</u>

The Complaint alleges many facts that my attendance at a deposition created a risk of "physical peril" that SEAL and Jackson Lewis say is required. The Complaint alleges that Ording was a source of my stress and anxiety during my employment. The Complaint alleges that this stress and anxiety lead to my cardiac issues in October 2017. The Complaint alleges that

First Data and Ording were aware of my blood pressure, anxiety and stress issues. The Complaint alleges that I did not attend my second scheduled deposition because of stress and anxiety attacks that forced me to seek medical attention. The Complaint alleges that Ording, Cooper, SEAL, Byrne, and Jackson Lewis were aware the cause of my non-attendance at that deposition was Ording's presence for no discernable reason because she did not work with Barger. The Complaint alleges that First Data, Ording, Byrne, Cooper, SEAL, and Jackson Lewis, knowing of the physical effects on me of Ording's presence at the second scheduled deposition had on me physically, they intentionally chose to have Ording attend my third scheduled deposition in the Barger case.

These allegations all plead sufficient facts under the standards for negligent, reckless, and intentional infliction of emotional distress as outlined in the Defendants Motions. The Complaint alleges that the Defendants intentionally chose Ording to attend my depositions because they knew the stress and anxiety that would impose upon me. These facts state a claim for the infliction of emotional distress. I was forced to seek medical attention once and previously had suffered cardiac issues sending me to the emergency room. These pled facts are more than sufficient to state a claim and the "severity" "atrociousness" or other qualifiers SEAL and Jackson Lews say are required are all questions of fact (how much is serious? What is atrocious?) not a failure to state a claim and not reasons to dismiss the Complaint now, as the facts if plead are true, the Defendants meant to inflict emotional stress, anxiety, and stress on me knowing my prior medical history and prior needs to seek medical attention.

## Count VIII of the Complaint
## Adequately States a Claim for Eavesdropping/Invasion of Privacy Against all Defendants

The Complaint alleges that the Defendants were given ample opportunities to clear-up any issues as to whether or not there was eaves dropping, live video or audio streaming, or other

transmission of my deposition numerous times prior to the filing of the Complaint. I, and Barger's counsel, gave the Defendants numerous opportunities to state who was on the phone and who was listening. They would never commit to a finite group of people.  Only Jill Poole and Lori Graesser are said to have been listening. However, Ms. Poole and Ms. Graesser never spoke. The Court reporter (Yungblut) in the transcript wrote that Poole and Graesser were present on the phone, but there is no evidence or statements on the record that they were.

The SE Motion argue that depositions are public events. In a way they are, but as the deponent, I have a right to know who is listening and in attendance. If I do not know who is there, I would be unable to go to the court and seek to have someone excluded from the deposition. Rule 26c of the Federal Rules of Civil Procedure all for the exclusion of people from depositions. If the deposition was listened to or watched by anyone unannounced, I could not possibly have objected to them being present. Magistrate Bowman scheduled the deposition to occur at the Potter Stewart Courthouse during a hearing on a motion to compel and protective order. During that hearing she told me that she would be available if I had any concerns or there were any issues during the deposition. If I did not know who was listening or watching, I could not seek Magistrate Bowman's assistance to prevent it. Magistrate Bowman was sensitive to my issues that caused me to go to the doctor when I knew Ording was there for my second scheduled deposition. Even when I saw Ording was at the deposition at the courthouse, I did not go to Magistrate Bowman and proceeded. Had I known I was being listened to or being watched by other people (possibly my former colleagues or Mr. Eidelman) I may have then sought assistance from Magistrate Bowman. To find out later that I possibly was listened to during my deposition was upsetting.

Also, during breaks, Ording, Byrne and Cooper would leave the room to have a private conversation. They left the phone-line open and the iPad in place while they were gone. The Complaint alleges that I was being listened to and watched during these breaks. These breaks were not public and there was no reason for me to suspect my conversations would be listened to while there was no one in the room besides me and Mr. Shearer. Privileged conversations between me and Mr. Shearer (who was representing me in my EEOC charge) could have occurred and been listened to by First Data employees or First Data lawyers. The Complaint adequately alleges these facts that if assumed to be true constitute an invasion of privacy and violation of the rules.

The phone records of the Court should be able to determine what numbers were called from the conference room speaker-phone. The Complaint sufficiently alleges facts to state a claim and I should be able to discover who was listening, recording, or watching my deposition unannounced. I do not think Magistrate Bowman believed that when she opened the Court's facilities for use to me for my comfort and protection that she meant for unannounced people to be eavesdropping on my off-the-record conversations. The phone line remained open and the iPad in place during all three breaks in my deposition

My subpoena did not state that my deposition was to be video recorded. A video recording or live transmission would be against the rules as it was not disclosed to me prior to the deposition.

The SE Motion relies on an Affidavit of Yungblut filed as (Doc #20). First, reliance on the Yungblut Affidavit means that the Defendants Motions on this Count are not Motions for Judgment on the pleadings because they are relying on documents outside of the pleadings to create fact issues. Second, the Yungblut Affidavit and SE Motion state that the iPad pointed at

me my entire deposition was for "Realtime Translation." Ms. Yungblut did not offer an iPad to me or Mr. Barger's counsel for also receiving "Realtime Translation" of the deposition. If the service was available, it was not offered, making this a question of whether Ms. Yungblut is telling the truth.

Yungblut states in her Affidavit that the iPad was for "Real Time Translation." However, by looking at the Mike Mobley website (www.mobleyreporting.com/video-and-text-streaming/), Ms. Yungblut's firm states:

> Our firm offers the ability to view the realtime text of an out-of-town deposition remotely on your computer at your home or office. Allow one of our Certified Realtime Court Reporters to transmit your proceedings to a secure Internet server, enabling 1 to 500 people to watch a transcript and listen to an audio feed from any computer connected to the Internet. Optionally, you can choose to view a video feed as well.

Imbedded in that same page on the Mobley website is a YouTube video placed by Mobley Reporting.( https://youtu.be/G8qLuC6XORM). Please watch this Mobley Reporting video. It describes the technology used to transmit depositions to remote locations through the use of a video stream using iPads provided by Mobley reporters. The Yungblut Affidavit should not be taken at face value without me being able to do discovery.

The litigation privilege does not apply to this situation. Most of the complained of invasions of privacy occurred off-the-record. The announcement of Graessr and Poole's presence was not on the record. It occurred before the recording began. The keeping of the lines and video open during breaks did not occur during the on-the-record sessions. The communications by Mr. Byrne to the clerks at Potter Stewart Courthouse following the deposition did not occur as part of litigations.

The litigation privilege cases cited do not say that lawyers are completely immune from liability for all of their acts during litigation. I know attorneys have obligation to be truthful to

24

the court or face liability. I know there are ethical rules requiring attorneys not to make false statements of fact or law to third-persons.

The cases cited by SEAL and Jackson Lewis all deal with cases alleging defamation claims by attorneys during the course of litigation. This makes sense because some facts a person alleges may turn-out not to be true. Attorneys should not be sued when that occurs. Attorneys do have to make sure that what they are saying may be correct otherwise they have violated their obligation to be truthful to the court.

The summaries of the cases by SEAL do not match what the cases say. SEAL makes the cases they cite sound like a broad prohibition against attorney liability of all types. The cases merely say there is immunity from defamation. This is not a defamation count. This is a claim that the attorneys set-up and allowed others to listen and view private conversations. It is possible that even during breaks, those attorneys in attendance when they went out to their separate room to privately talk could still watch and listen to me in the deposition room. The Hartman case cited by SEAL is about the Fair Debt Collection Practices Act and whether an affidavit signed by a debt collector's attorney was false is it a false statement by the debt collector. That case does not apply either. But that Hartman case does state:

> Other federal remedial statutes have been found to implicitly abrogate state law litigation privilege. See e.g. *Nix v. O'Malley*, 160 F.3d 343 (6th Cir. 1998, holding that defendant and his attorneys were not immune from civil liability under the federal wiretap statute (18 U.S.C. § 2510), and the similar Ohio statute for attaching a transcript of the intercepted communication to a summary judgment motion filed in underlying state court litigation.

There is no immunity for eavesdropping. I may be asking to amend my complaint to add violations of the federal and Ohio statute (Ohio Rev. Code Ann. §2933.51-2933.65 against wiretapping.

There is no attorney privilege to use federal government property at the Potter Stewart Courthouse to knowingly eavesdrop for purposes of collecting evidence in a yet to be filed case or to intentionally listen to my conversations with my lawyer in my OCRC charge that was being investigated.

### **The Complaint Should Not be Dismissed Based on Ghost-writing Allegations**

I will address the hardships concerned with getting the Complaint filed as a pro se. I was forced to file the Complaint personally at the clerk's office. I did not have electronic filing capability like all of the lawyers in this case.

I engaged The Law Office of Shawn Shearer, P.C. to assist me in the preparation of my charge of discrimination filed with the EEOC and the OCRC. Mr. Shearer also represented Barger in the Barger Case. When I was retaliated against by the Defendants seeking my deposition, I represented myself in the litigation about the subpoenas, motions to compel, motions to quash and motions for protective orders because I could not afford legal counsel. I had lost my job five months earlier because First Data had illegally fired me and I could not look for employment in the payments industry because of the non-compete Ms. Graesser threatened to enforce.

As part of Mr. Shearer's work as my lawyer on the EEOC and OCRC charge, I asked him if he could began drafting a complaint. After I received my letter from the OCRC, I began a search for Ohio counsel to file the case. That search has not been productive because family finances would not support the hiring of another lawyer and the amount involved did not raise the interest of any contingency fee lawyers. Because Mr. Shearer had completed the work for me and I had paid him for his time, and because I was unable to afford Ohio counsel, Mr. Shearer transferred my file to me. This file included his drafted complaint, his research, his memoranda,

articles, cases, etc. This file is my privileged file from my engagement of Mr. Shearer on matters

outside of this proceeding. I did take Mr. Shearer's work and research from when he was my

lawyer and I have used it in completing the filing of the Complaint and this Response. None of

that conduct by me justifies a dismissal of the Complaint.

SEAL and Jackson Lewis argue that a pro se is not subject to Rule 11. I have read Rule

11, and SEAL and Jackson Lewis are misrepresenting that rule.

> Every pleading, written motion or other paper must be signed by at least one
> attorney of record in the attorney's name- <u>or by a party personally if the party is
> unrepresented.</u>
>
> By presenting to the court a pleading, written motion, or other paper – whether by
> signing, filing, submitting, or later advocating it – an attorney or <u>unrepresented
> party certifies</u> that to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances (1) It is not being
> presented for any improper purpose, such as to harass, cause unnecessary delay, or
> needless increase in the cost of litigation; (2) the claims defenses, and other legal
> contentions are warranted by existing law or by non-frivolous argument for
> extending, modifying, or reversing existing law or for establishing new law; (3) the
> factual contentions have evidentiary support or, if specifically identified, will
> likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery

I signed my Complaint. I know the facts. My good faith belief as to the facts does not require

significant investigation.  Any attorney signing my Complaint would have to take my word for

the facts. My signature is worth more on this Complaint than a newly hired attorney's would be.

Even though I do not have Westlaw, I was able to find the cases with only Westlaw

citations used by SEAL and Jackson Lewis in their briefs. The <u>Ostevoll</u> case involved a party

that kept rescheduling and his attorney kept writing the court and then the party filed a complaint

pro se. There have not been any games like that in this case. I found the <u>Gordon</u> case, but I do

not see where it addresses "ghost-writing."

As another example of the cutting and pasting, or intentional misrepresentation, there is the statement in the SE Motion on page 13 that "For these reasons, federal courts in Ohio have stricken ghost-written complaints after appropriate inquiry" and they cite *Doe v. Bollaert*, 2013 WL 12123908, *1 (S.D. Ohio Oct. 22, 2013). This case did not involve striking a complaint. The court struck four MOTIONS not complaints because the pro se litigants admitted that they had hired an off-shore company to write the documents. That is not the same as my situation. I could not afford a lawyer. I filed a document in my file. I do not have any other documents or briefs that I can use. Just some research and memorandum that were in my client file. I also have the ABA Section of Labor and Employment Law 2018 Midwinter Meeting Report of 2017 cases under the FMLA. I have the cases Mr. Shearer had in his research file. I have the internet where there are blogs and attorney posts and law review articles that I can find and read that refer to cases I can read. I have the cases cited in the Defendants' Motions. If I use their work in finding those cites and I use them, has Jackson Lewis and SEAL ghost-written this brief? I demonstrated my ability to write for myself and argue before Magistrate Bowman during all of the motions about my subpoenas. I have not abused the system like in the cases being cited by SEAL and Jackson Lewis.

I had only 90-days to hire a lawyer and file. I did not have the money and time ran out. Striking the complaint would mean my entire claim goes away even if I am able to find the money and a lawyer in a few months to step-in to represent me. It would not be a fair to strike the complaint and it would punish me for not having money because I was illegally forced to quit my job.

These lawyers making this argument would exclude harmed employees that cannot afford a lawyer from the system if they write well and argue well without a lawyer. These lawyers

should be sanctioned.  Jackson Lewis, SEAL, Cooper and Byrne are well respected lawyers (why?). To suggest that I should be excluded from the system because I gathered information and drafts of documents in my client file from my lawyer on my EEOC charge, that I paid for, and have used them to bring this case against their client is an elitist stance and overly protects to lawyering business. Do you know how many violations of the FMLA, ADA, Title VII, PDA, etc. are ongoing in the world because it is just too hard to find counsel? Or how many times people find a lawyer but cannot afford them so employer's get away with discrimination? I now understand why case after case I read goes against the employee. Employees and the lawyers they hire on a budget cannot afford to fight behemoth entities like First Data, SEAL, and Jackson Lewis. The statute says one thing about discrimination, but the big companies and the well-paid firm v. the little guy with no money. The little guy loses because the little guy's lawyers with half-hearted efforts have created a bunch of bad decisions.

Unlike the associates at Jackson Lewis and SEAL, I have actually read the cases that I have cited in this brief.  I can tell by the writing of Defendants Motions that the associates are merely copying and pasting summaries from articles, blogs, and compilations. Some of my writing reflects that as well.  But I am not a lawyer and I have read the cases.

"Ghost-writing?" The entirety of the Defendants Motions to dismiss are "ghost-written". No one actually knows where the law and the words come from.  They are merely cutting and pasting the work of others (sometimes completely improperly such as the lawyer immunity cases) and because they passed a test back when they were 25 they get some sort of credibility. When I was 25 I had already been working in developing training programs and writing myself. The internet is a great equalizer.  It is time for the legal profession to stop being so protectionist

and understand that it does not take a legal degree to read the elements of the law in cases. I can read just like they can.

What is distressing to me is that the Defendants feel so free in distorting writings or compilations, or compilations of compilations, or compilations of summaries and citing them in their briefs. Those diluted half sentences in parenthesis then get quoted over and over. I can see this problem in just reading a few cases as I pointed-out earlier.

The result has been silliness like an argument that the prohibition against retaliation does not apply to actions taken to harass me because I raised a claim due to the fact that I was no longer an employee.  That argument alone tells you where employment law is.  A wrongly discharged employee cannot be retaliated against after they leave because they are no longer employed.  The fact that argument was made, really should make the Court sit back and think about what the ADA, Title VII, PDA, FMLA, etc. means. If the Defendants are to be believed, pro se's are barred from bringing claims and ex-employees are barred from bringing claims.

The ghost-writing sections in the SE Motion and the JL Motion are nearly identical and cite the same cases. Which firm ghost-wrote for the other? Or, did one write this section give it to the other who made minimal changes to call it their own writing? Is cutting and pasting the writing of others not ghost-writing by the undisclosed author?

I am pro se because I could not afford a lawyer. My client file is my property. I obtained a copy of my EEOC/OCRC Charge client file from Mr. Shearer because I could not afford a lawyer. It would be extremely unfair for the Complaint to be dismissed and the Defendants walk free of their discrimination against me for this reason. Everyone, including SEAL and Jackson Lewis, knew Mr. Shearer wrote the Complaint. It was not trying to be hidden. As they both point

out, it was obvious from the Complaint itself. That is not "ghost-writing" and striking the Complaint would be severe punishment to me for using the resources I had available to me.

### Counts II and III of the Complaint
### Are Not Administratively or Time Barred

The ADA failure to accommodate, Title VII and PDA claim are not time barred.  The discriminatory act was Ording's failure to grant my repeated requests for the reinstatement of her previously revoked accommodation. The Complaint alleges that these requests were made as late as November 2017 in her resignation letter.  The ADA failure to accommodate and failure to engage in an interactive process are not time barred.

Finally, the EEOC Administratively closed the charge on June 6, 2018. See Exhibit A. The right to request EEOC review of the OCRC determination also expired on March 8, 2019. Thereafter, Plaintiff did not have any administrative remedies available to further exhaust when the Complaint was filed as confirmed by the EEOC. The Complaint can simply be amended or supplemented and that request to amended is hereby made. For purposes of preserving Plaintiff's rights, the Plaintiff will file a Complaint re-alleging Counts asserted by Defendants to require the EEOC letter dated June 18, 2019 that I received by mail on June 20, 2019 before the expiration of the 90-day period. That process seems like a waste of time and resources, but I will do so if necessary.

The sum total of what I take from the Defendants' Motion is that (i) it is completely permissible to make an employee's life at work miserable and damage their health, when you know that there is an accommodation for their health issues that works, (ii) if the employee chooses to avoid the health issues being created by the employer's refusal to accommodate, that employee's decision to leave is their own to make and they can just go, (iii) once they are gone, they are a former employee with no remedies and can then be harassed at will directly, or by

hired guns, if they raise complaints. When I read the statutes and regulations for the FMLA, ADA, Title VII, and PDA, I do not think that is what the law says.

## **CONCLUSION**

The Motions are all 12(b)(6) Motions.  They would make very nice Rule 56 motions, be this case is not at that point.  The Complaint alleges facts, that assumed true, set forth more than enough to satisfy or at least make out a "plausible" claim for each of the counts in the Complaint. Now is not the time to dismiss a pro se plaintiff before I even get a chance to prove the alleged facts. I have not been given any opportunity to make my proof or depose anyone.  You have only heard their lawyers talk.  That is not evidence.  I signed the Complaint and Rule 11 has been explained to me and I believe in good faith I can prove all of the allegations in the Complaint. Those allegations are presumed to be true for purposes of Rule 12(b)(6). If the story I told in the Complaint is true, the Defendants have violated the law. That is all that is required at this time.

The Complaint more than sufficiently pleads alleged facts (300 paragraphs of them) that this Court, drawing on its judicial experience and common sense, can draw the reasonable inference the Defendants, based on the allegations assumed to be true, is liable. That is sufficient to survive a Rule 12(b)(6).

 DATED:       September 3, 2019

Respectfully Submitted,

 /s/ Julie Kelly
Julie Kelly, Plaintiff (Pro Se)