IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JULIE KELLY, | Civil Case No. 1:19-cv-00372-SJD-SKB |
| Plaintiff, | |
| v. | |
| FIRST DATA CORPORATION, *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants First Data Corporation, Frank Bisignano, Robin Ording, Saul Ewing Arnstein & Lehr LLP, and Gillian Cooper, by and through their undersigned counsel, respectfully submit this consolidated Reply in support of their Motions to Dismiss, or in the alternative for Summary Judgment. (Doc. # 19 and 22). As more fully set forth below, all of Plaintiff Julie Kelly's claims should be dismissed, with prejudice.

**ARGUMENT**

**1. The FMLA Interference Claim Fails**

Kelly raises no facts or argument in her Opposition that save her FMLA claim from dismissal as a matter of law. Crucial to this failure is that Kelly nowhere alleges First Data had notice she suffered from a qualifying serious health condition that would have triggered its obligation to provide her with a Notice of Eligibility.

Kelly's FMLA interference claim is based on her allegation that First Data, Ording, and Bisignano failed to provide her with a Notice of Eligibility for FMLA leave after her October 5, 2017, hospital visit. (Doc. # 1, PAGEID ("p.") pp. 18, 32-33, ¶¶ 145, 230, 241-44). Yet in her

Opposition, she pivots away from her claim about that specific event and instead broadly recites the myriad of health conditions she has suffered from over the years, with no explanation as to how those past conditions relate to whether First Data had to issue her a Notice of Eligibility on October 5, 2017. (Doc. # 29, pp. 380-82).

To survive a motion to dismiss, the question is not "did First Data know that Kelly suffered from various health conditions" as she alleges it to be. (*Id*., p. 4). The proper inquiry is "did Kelly put First Data on notice that on October 5, 2017, it was required to issue her an FMLA Notice of Eligibility." 29 C.F.R. § 825.300(b)(1). The answer is no.

First Data is only required to issue a Notice of Eligibility if it acquires knowledge that the employee suffers from a qualifying serious health condition making her eligible for FMLA leave. *Id*. Kelly's claim cannot survive a motion to dismiss because her one day visit to the hospital on October 5, 2017, as a matter of law, does not qualify as a "serious health condition" for FMLA leave. She does not plead, for example, that the condition required an overnight stay (29 C.F.R. § 825.114) or incapacitated her for three or more days (29 C.F.R. § 825.115).[1] Kelly returned to work the next day without further incident as to the October 5 hospital visit.[2] First Data had no knowledge of Kelly's qualifying serious health condition and it, therefore, had no obligation to issue her an FMLA Notice of Eligibility.

---

[1] This case is not one where Kelly requested FMLA leave and First Data denied it because her reason did not qualify. Kelly concedes that she never requested FMLA leave for this event. Instead, she merely complains that she should have been given a form notifying her that she could take leave. The fact that her Complaint is based on not being given a form leads to the second alternative reason why this claim must fail, which is because she suffered no harm even if there were a violation.

[2] The OCRC acknowledged Kelly had previously used leave, stating "it is undisputed that throughout [Kelly's] employment she was granted FMLA and reasonable accommodation requests when she presented medical certification." (Doc. # 1-2, pp. 121-22). This further bolsters First Data's position that the October 5, 2017, event did not give rise to sufficient knowledge requiring First Data to provide FMLA notice. As the OCRC found, when Kelly conveyed more information to her employer sufficient to constitute a serious health condition, she was given the mandated notices.

Even if the Court does not dismiss Count I for the reasons above, it should dismiss individual Defendants Bisignano and Ording from this claim. Kelly's citations in paragraphs 96 through 100 of her Complaint do not support her erroneous legal conclusion that Ording is an employer for purposes of FMLA liability. (Doc. # 1, p. 14, ¶¶ 96-100). For Bisignano, Kelly's only argument in her Opposition is that he, as the CEO, instituted the company-wide work from the office policy. (Doc. # 29, p. 382). Under this bizarre reasoning, every CEO in America could be an "employer" under the FMLA without ever having interacted with the plaintiff. There is not one allegation that Bisignano interacted with Kelly in any capacity with respect to her FMLA rights. The individual Defendants must be dismissed.

### 2. Kelly's ADA Failure to Accommodate Claim Fails

Kelly's ADA failure to accommodate claim fails as a matter of law because her alleged disability did not require that she work from home as a reasonable accommodation. Stated differently, even with her alleged disability, Kelly was still able to travel to the First Data office and perform the essential functions of her job, as required by company policy. Alternatively, Kelly's claim fails because it is procedurally time-barred.

Kelly's Opposition argues at length regarding the myriad of medical conditions that she claims constitute her alleged disabilities under the ADA. (*Id.*, pp. 382-84). However, none of these medical conditions prevented her from commuting to work, or from performing her work-related duties at the office. Indeed, Kelly fails to identify what major life functions her alleged disabilities impaired, much less how that prevented her from driving to work. Instead, in conclusory fashion, Kelly recites without factual support that her disabilities "impair a major life activity." (Doc. # 1, p. 35, ¶ 263). But mere "labels and conclusions [or] a formulaic recitation of

3

the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These recitations cannot withstand a motion to dismiss.

By definition, Kelly's failure to accommodate claim fails because the definition of a "reasonable accommodation" contemplates a work restructuring, change, or other modification or training *because of one's disability*. *See* 42 U.S.C. § 12111(9) (emphasis added). Similarly, the ADA regulations state that a reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Here, the accommodation sought (working from home) is not related to the alleged disability.

Kelly asks this Court to rewrite history and find that commuting to work at the First Data office was damaging to her health and that without the reasonable accommodation of working from home, she could not perform the essential functions of her position. The glaring inconsistency in this demand is that Kelly concedes that she commuted to work at the office perfectly fine for almost a year after the implementation of the company policy. (Doc. # 1, p. 13, ¶ 96). Kelly is not able to reconcile what circumstances changed that made her suddenly incapable of driving to work.

Kelly mistakenly relied on *Hostettler v. College of Wooster* for the proposition that her claims should survive dismissal, incorrectly concluding that she has similar physical ailments to those alleged in *Hostettler*. 895 F.3d 844, 856 (6th Cir. 2018); (Doc. # 29, pp. 382-83). In *Hostettler*, the Sixth Circuit reversed summary judgment in favor of an employer in part because of an employee's well-pled need for a modified work schedule as a reasonable accommodation for her disability. Here, Kelly does not have facts to support that she needed a reasonable

accommodation because she has not adequately alleged what essential job functions were impaired by her disability.

Additionally, Kelly's claim is time-barred. 42 U.S.C. § 2000e-5(e)(1). She filed her Charge with the EEOC on May 16, 2018, more than 300 days after the alleged discriminatory act of Ording denying her an alleged accommodation when Ording took over in January 2017. (Doc. # 1, pp. 12-13, ¶¶ 94, 96, 100). Kelly's Opposition attempts to circumvent this fatal fact by asserting that the ADA discriminatory act occurred on the day she voluntarily resigned in November 2017. (Doc. # 29, p. 407). This argument fails because the 300-day period begins running on the date "the employee is aware or reasonably should be aware of the employer's decision." *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). If Kelly has any claim for denial of accommodation, her EEOC charge had to be filed within 300 days of the date on which she alleges that denial occurred. Kelly instead sat on her rights and now attempts to bootstrap a nearly three-year-old baseless claim onto the other disparate claims asserted in this action. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). The claim must be dismissed.

    3.    **Kelly's Title VII and PDA Claims Fail**

Kelly fails to state a claim under both Title VII and the PDA, and, therefore, Count III fails as a matter of law. In her Opposition, Kelly actually concedes that her claim has nothing to do with gender. For the first time in this litigation, Kelly clarifies her position on her purported gender discrimination claims, and, as a result, shows that they must be dismissed.

Kelly allege that the actions she complains of under Title VII or the PDA are based on the fact that "Plaintiff's terms and conditions of employment were adversely affected by

5

Defendants decisions while I was employed . . . [and] Plaintiff's job responsibilities were transferred to First Data employees in Europe." (Doc. # 29, p. 384). It is unclear how her employment was adversely affected and whether Kelly is alleging that the job responsibility transfer occurred before or after her voluntary resignation, or how these facts indicate discrimination even if they were based on gender.

Nevertheless, even if Kelly's newly asserted allegations are true, they fail to show that any alleged discriminatory action was *because of* her gender or pregnancies. With no causal connection, the claims fail as a matter of law. *See Hensley v. Boddie-Boell Enterprises, Inc.*, 221 F.3d 1334 (6th Cir. 2000) (affirming summary judgment as there was no causal connection between termination of an employee and her pregnancy); *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998).

Count III also must be dismissed because Kelly alleges no dates on which the alleged discriminatory conduct occurred, making it impossible to determine whether she filed her EEOC charge within 300 days of these elusive events. The claims are, therefore, time-barred. 42 U.S.C. § 2000e-5.

4. **Kelly's Retaliation Claims Under the ADA and OCRA Fail**

Kelly's retaliation claim under the ADA and OCRA fail as a matter of law and Kelly's Opposition demonstrates that she is unable to show the required elements of adverse action or causal connection to any protected activity.

Kelly cannot demonstrate that she suffered an adverse action, which is a required element of a retaliation claim. *Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (6th Cir. 2012). A deposition is not an adverse action and Kelly cites no legal authority indicating otherwise. Count IV fails for this simple reason. Kelly's Opposition posits additional theories that she

6

claims amount to an adverse employment action that were not included in the Complaint, including a denied request for severance pay (even though she voluntarily resigned) and how she was sent a letter reaffirming her post-employment non-compete and non-solicitation obligations (consistent with her employment agreement). (Doc. # 29, pp. 385-87). Neither of these additional theories can be considered an adverse action because, first, they were not pleaded in the Complaint and, second, they were caused directly by Kelly's decision to voluntarily resign, which is not a protected activity.

Second, Kelly's retaliation claim fails because it lacks another crucial element: causal connection. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Kelly's Opposition misapplies the proper test for analyzing causation. Kelly proclaims that "but for" her working at First Data, she never would have been deposed (the alleged adverse action), and that for that reason, she has proven causation. (Doc. # 29, p. 387). The causation test for retaliation, however, requires a causal connection between the protected activity and the adverse action, not simply that the adverse action would not have occurred but-for the employment relationship. To survive a motion to dismiss, Kelly must show that but-for her filing of the EEOC charge (the protected activity), she never would have been deposed (the alleged adverse action). *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (stating that a prima facie case for Title VII retaliation includes a "causal connection between the protected activity and the adverse employment action or harassment"). She cannot meet this burden.

Assuming *arguendo* that a deposition qualifies as an adverse action, Kelly cannot show that her filing of the EEOC charge was the reason she was deposed because First Data had listed Kelly as a potential witness to be deposed in the *Barger* matter as far back as November 2016— before Kelly had voluntarily resigned from First Data and certainly before she engaged in the

protected activity of filing an EEOC charge in May 2018. (Doc. # 1, pp. 21, 23, ¶¶ 164, 172). The retaliation claim fails for this additional reason.

Additionally, the Court may recall that the deposition in question was compelled by this Court after Kelly had the opportunity to raise all of the baseless objections that she recites again here. Lastly, even if the Court does not dismiss Count IV on the merits, it must dismiss all Defendants other than First Data from Count IV as First Data is the only entity that was Kelly's employer. *See Mays v. City of Oak Park*, 285 F. App'x 261, 262 (6th Cir. 2008).

    **5.**    **Kelly's OCRA Discrimination and Retaliation Claims Fail**

Kelly states that the Title VII, PDA, ADA, and retaliation claims "also constitute a claim under the OCRA. (Doc. # 1, p. 39, ¶297). The Sixth Circuit has clearly stated that the OCRA "prohibitions mirror those of the ADA and Title VII" and for that reason "the state-law claims rise or fall on the resolution of the federal claims." *Hostettler*, 895 F.3d at 848, n.1 (*citing Braun v. Ultimate Jetcharters, LLC,* 828 F.3d 501, 510 (6th Cir. 2016) (analyzing Chapter 4112 under Title VII); *Rorrer v. City of Stow,* 743 F.3d 1025, 1031 n.1 (6th Cir. 2014) (analyzing Chapter 4112 under the ADA)). Count V, therefore, fails along with the prior Counts II-IV.

Second, the OCRA claim cannot be sustained against the individual Defendants for discrimination as there can be no individual liability for discrimination under Chapter 4112. *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 752 (S.D. Ohio 2018).

Third, the claims against the lawyers and law firms cannot be sustained under the OCRA, as lawyers and law firms cannot be liable as a matter of law for disputes between employees and an employer. *Hofmann v. Fermilab Nal/Ura*, 205 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("[The plaintiff] may not sue her former employer's lawyers under the employment discrimination law; they were not her employer.").

**6. Kelly Fails to Plead Constructive Discharge**

The constructive discharge claim also fails as a matter of law. First, Kelly concedes that Count VI must fail if Counts II through V fail (which they do). If the Court dismisses those counts, it must dismiss Count VI.

Second, Count VI fails because Kelly does not allege facts showing that First Data deliberately created an intolerable work environment that forced her to resign. *Russell v. CSK Auto Corp.*, 739 F. App'x 785, 794 (6th Cir. 2018). Kelly has no allegations in her Complaint that can meet this standard. None of the conditions she complains of were intolerable, nor does she plead that First Data intentionally caused any such conditions to force her to resign. Instead, she did good work, was promoted, and received additional compensation. (Doc. #1, pp. 14-15 at ¶¶ 114-20).

In fact, Kelly clarifies that what she actually seeks is for this Court to create new law under the constructive discharge doctrine holding that if an employer has a neutral policy of requiring its employees to work at the office, then that policy causes an intolerable work environment giving rise to a constructive discharge claim. (Doc. # 29, pp. 395-96). The holding that Kelly asks of this Court is absurd and beyond the bounds of any case law on this cause of action. Kelly concedes that her claim hinges on the Court issuing such a finding. Therefore, as long as the Court does not find that a neutral policy requiring employees to work at an office is intolerable, then Count VI must be dismissed with prejudice.

**7. Kelly Fails to State a Claim for Negligent or Intentional Infliction of Emotional Distress**

Kelly's claims for negligent and intentional infliction of emotional distress must be dismissed with prejudice. To survive dismissal, a proper claim for negligent infliction of emotional distress (NIED) must demonstrate that the plaintiff faced "physical peril." *Francis v.*

9

*Gaylord Container Corp.*, 837 F. Supp. 858, 864 (S.D. Ohio 1992). Without physical peril, the claim must fail. *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008). Kelly has no facts to support that she faced physical peril.

In Opposition, Kelly seeks to salvage this claim by claiming that she faced physical peril during her deposition because First Data's corporate representative was Kelly's former supervisor, Robin Ording. Kelly alleges that because Ms. Ording caused her "stress and anxiety" as her boss, she felt that she was in physical peril to justify a claim for NIED with just Ms. Ording's presence in the room. (Doc. # 29, p. 396-97).

To recover for NIED, the plaintiff must show that "she (1) was a bystander to an accident, (2) reasonably appreciated the peril thereof, and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril." *Dodge v. United States*, 162 F. Supp. 2d 873, 879 (S.D. Ohio 2001). Again, for Kelly to survive a motion to dismiss, she would require the Court to issue a far-reaching holding transforming tort law such that anytime a former employee encounters her former supervisor who allegedly caused that employee stress, a claim for NIED can be made. In requesting this outrageous holding, Kelly makes a mockery of the tort of NIED, which is reserved for serious emotional distress. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (Ohio 1983) ("Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."). The claim for NIED must be dismissed with prejudice.

The claim for intentional infliction of emotional distress (IIED) fares no better. To make a claim for IIED, Kelly must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

10

utterly intolerable in a civilized community." *Kovac v.Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013). Kelly concedes that she has no allegations reaching this high burden, as she makes no argument in her Opposition to this claim being dismissed. Kelly cites no legal authority supporting that attending a deposition under the facts as pled can give rise to a claim for IIED.

        **8.    Kelly Fails to State a Claim for Invasion of Privacy**

Lastly, Kelly's claim for invasion of privacy fails under both Rule 12(b)(6) and Rule 56. Under Rule 12(b)(6), accepting Kelly's far-fetched allegations as true, her claim still fails because under state law, an intrusion upon seclusion claim must "shock the ordinary person to the point of emotional distress." *Haller v. Phillips*, 69 Ohio App. 3d 574, 578 (1990). Nothing Kelly complains of can meet this high standard. See, *supra*, Part 7. Contrary to Kelly's request, there is no need for discovery on this issue because the test does not look at whether Kelly subjectively felt emotional distress as a result of the alleged conduct, but instead whether an ordinary person would be shocked by it. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 374-375, 453 N.E.2d 666, 671-672 (1983). Even assuming the allegations are true and that a rogue iPad somehow recorded her deposition (which was already being recorded by a court reporter) this would not shock the conscience. And, even if Kelly's unfounded theory that unnamed individuals attended the deposition by telephone, the conscience would not be shocked either.

Under Rule 56, Kelly's claim still fails. Kelly writes in her Opposition that "there is no evidence or statements on the record" showing that Ms. Poole and Ms. Graesser were the only

11

individuals attending the deposition by telephone. (Doc. # 29, p. 398). The evidence however indisputably shows that Ms. Poole and Ms. Graesser were, in fact, announced on the record as the only individuals attending the deposition by telephone. *See* Deposition of Plaintiff at 8:20-22, attached as Exhibit A (with emphasis in highlights).[3] Moreover, the sworn affidavit of the court reporter (a neutral party who Kelly somehow manages to impugn the credibility of) also indisputably demonstrates that no iPad was used to stream or record Kelly's deposition.

Lastly, Kelly introduces a plethora of new facts and allegations in response to this and other claims in her Opposition that were neither in her Complaint nor appended to an affidavit. The Court must strike and ignore all of the newly offered facts contained in the Opposition.

### 9. Kelly Admits the Complaint was Ghostwritten

Kelly admits that Mr. Shearer (her alleged former lawyer in this matter) wrote the Complaint that she filed in this action. (Doc. # 29, p. 402) ("I asked him if he could began [sic] drafting a complaint."). She then states that she could no longer afford to pay him and could not find local counsel (because Mr. Shearer is not admitted to practice in Ohio). (*Id.*) Because Kelly admitted that the Complaint was drafted by an attorney, the Court must not provide Kelly with any leniency that it would otherwise provide to a *pro se* plaintiff in deciding whether to dismiss her claims with prejudice.

### CONCLUSION

For the above reasons, Defendants respectfully request the Court grant its Motion to Dismiss and dismiss the Complaint with prejudice.

---

[3] Julie Kelly's deposition transcript has been filed separately with the Court. The referenced page of her deposition are attached hereto as Exhibit A for the Court's Convenience.

12

Respectfully submitted,

/s/ Laura E. Salzman
Laura E. Salzman (0095304)
Roetzel & Andress, LPA
250 East Fifth Street, Suite 310
Cincinnati, OH 45202
Telephone: (513) 361-0200
Facsimile: (513) 361-0335
Email: lsalzman@ralaw.com

*Of Counsel*:

Gary B. Eidelman, Esq. (*pro hac vice*)
Michael P. Cianfichi, Esq. (*pro hac vice*)
Saul Ewing Arnstein & Lehr LLP
500 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 332-8975
Facsimile: (410) 332-8976
gary.eidelman@saul.com
michael.cianfichi@saul.com

*Attorneys for Defendants, First Data Corporation, Frank Bisignano, Robin Ording, Saul Ewing Arnstein & Lehr LLP, and Gillian Cooper*

Dated: September 17, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, the foregoing was electronically filed with the Court's CM/ECF system and the system will send electronic notification to all counsel of record via the Court's electronic filing system.

/s/ Laura E. Salzman
Laura E. Salzman