**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JULIE KELLY,

        Plaintiff,

v.

FIRST DATA CORPORATION, et al.,

        Defendants.

Case No: 1:19-cv-372

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Julie Kelly, proceeding pro se[1], initiated this action on May 20, 2019 by filing a complaint against her former employer and six additional parties. Currently before the undersigned is Defendant First Data Corporation's motion for summary judgment. For the reasons that follow, Defendant's motion should be GRANTED.

**I.    Procedural Background**

Plaintiff filed a 47-page, 354-paragraph complaint against seven defendants, to which she attached 188 pages of exhibits. (Doc. 1). She sought and was granted the same electronic case filing privileges afforded to counsel. (Docs. 2, 4). She has actively participated throughout this litigation, including but not limited seeking two extensions of time. (*See*, *e.g.*, Doc. 28, Notation Order of 8/21/19).

In a prior Report and Recommendation ("R&R"), the undersigned recommended that most claims and defendants be dismissed under Rule 12, Fed. R. Civ. P, leaving only a single claim against First Data Corporation ("First Data") under the Americans with

---

[1] Although Plaintiff technically proceeds pro se, she previously admitted that her complaint was drafted by the attorney who represented her in her prior EEOC proceedings. (Doc. 35 at 25-26, discussing misrepresentation by Plaintiff concerning the drafting of her complaint).

Disabilities Act ("ADA"). (Doc. 35). In that ADA claim, Plaintiff alleged that First Data failed to reasonably accommodate Plaintiff's disability by requiring her to work in a First Data office rather than at home. (Count II of the Complaint).

Plaintiff subsequently sought a two-month extension to file objections to the R&R. The presiding district judge granted a shorter extension after determining that Kelly had failed to show good cause for the lengthy extension that she sought. Regarding court deadlines, the Court specifically pointed out that "[t]he laxity accorded to pro se litigants applies only to pleading standards, not to straightforward scheduling requirements, which are as understandable by laymen as by lawyers." (Doc. 40 at 2, citation omitted).

On March 30, 2020, Kelly and defense counsel participated in a telephonic scheduling conference, following which the undersigned stayed entry of a Calendar Order until the Court ruled on the then still-pending R&R. After the Court adopted that R&R, (Doc. 48), Kelly and defense counsel participated in another telephonic scheduling conference and the undersigned entered the Calendar Order. (Doc. 53). During the ensuing period of discovery, Defendant served Requests for Admission on Plaintiff. After Plaintiff failed to timely respond to those Requests and also failed to respond to a follow-up email, Defendant moved for an Order seeking to have the Requests for Admission deemed to be admitted. Plaintiff filed no timely response to Defendant's motion and did not seek an extension of time to respond. Nevertheless, in an effort to give Plaintiff one final opportunity to respond, the undersigned ordered Plaintiff to "**SHOW CAUSE** on or before **March 15, 2021** why the long-overdue requests for admission should not be deemed to be admitted under Rule 36(a)(3)." (Doc. 55 at 3, ¶ 1). On April 12, 2021, after Plaintiff failed to respond to the Show Cause Order, the undersigned granted Defendant's motion and deemed the Requests for Admission to be admitted. (Doc. 56 at 2). Plaintiff

filed no objections to that Order.

On May 10, 2021, Defendant timely filed a motion for summary judgment. (Doc. 57), Plaintiff filed a response in opposition to summary judgment on June 3, 2021, to which Defendant filed a reply on June 16, 2021. (Docs. 58, 60).

**II.      Standard of Review**

The standard of review on summary judgment differs significantly from the standard of review that this Court previously applied under Rule 12. Plaintiff may no longer rest on the allegations of her complaint.[2] Instead, the Court looks to the evidence submitted by the parties to determine if any triable issue remains. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

It is true that in applying this standard, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And Defendant, as the moving party, has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, once the moving party has met its burden of production, the nonmoving party (Kelly) cannot rest on her pleadings, but must present significant probative evidence to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Standing Orders on Civil Procedures of the presiding judge require a party moving

---

[2]Because a more lenient Rule 12 standard of review applied to review of Plaintiff's complaint, Plaintiff's allegations were accepted by the Court as true at that time. (*See* Doc. 48 at 3-6, summarizing "Relevant Factual Allegations As Kelly Pled in Her Complaint").

for summary judgment to file "Proposed Undisputed Facts" that set forth each material fact as to which the moving party contends there is no genuine issue to be tried. Each Proposed Undisputed Fact must be supported by a specific citation or citations to record evidence. In any opposition to a motion for summary judgment, the non-moving party must attach a "Response to Proposed Undisputed Facts" that states, in corresponding fashion, whether each fact asserted by the moving party is admitted or denied. If denied, the denial must be supported with a citation to contrary evidence. The non-moving party's response also must include a list of each issue of material fact that the opposing party contends must be tried.

Defendant complied with the Standing Orders by filing a Proposed Statement of Undisputed Material Facts along with other exhibits in support of its motion for summary judgment. (*See*, *e.g.* Docs. 57-1, 57-2, 57-3, 57-4, 57-5). Plaintiff filed an untimely response in opposition to summary judgment on June 3, 2021.[3] In addition to being untimely, Plaintiff's opposing memorandum does not respond to Defendant's Proposed Undisputed Facts and does not provide any citations to record evidence as required by Rule 56. Because Defendant's Proposed Undisputed Facts are well supported by the record, including but not limited to Plaintiff's Admissions to Defendant's Requests for Admissions ("RFA"), most of the findings of fact determined by the undersigned are derived from the Defendant's Proposed Undisputed Facts.

---

[3] The response was tardy under S.D. Ohio Local Rule 7.2(a)(2), which requires responsive memoranda to be filed within 21 days after the date of service of the motion. That date expired on June 1. An additional three-day rule that applies to service by mail does not apply to service through the ECF system under Rule 5(b)(2)(E). *See* Rule 6(d). And Plaintiff was specifically advised of her need to timely respond to Defendant's motion within 21 days. (Doc. 57-6). Therefore, Defendant urges this Court to strike the untimely response. (Doc. 60). While the Court easily could decline to consider the memorandum, the undersigned exercises her discretion to consider it in the interests of justice.

4

### III. Findings of Fact

1. Kelly began working for First Data in 1998 and ended her employment on November 30, 2017.

2. In April 2005, Kelly began working remotely from home.

3. In January 2015, First Data implemented a new company-wide policy that required all employees to work at an office location except for employees involved in direct sales. The new policy required Kelly to work in First Data's office.

4. Kelly was pregnant at the time the policy took effect. In late 2014, Kelly had submitted a Workplace Adjustment Form, signed by her physician, requesting that she be permitted to work from home with limited travel for the duration of her pregnancy based upon a history of uterine fibroid surgery and c-section. (*See* Doc. 1-2 at 22-24, requesting "no travel after 20 weeks pregnant due to history of myomectomy and c-section"). The form further asked for Kelly to be permitted to maintain "current work environment of working from home" "through the duration of high risk pregnancy," scheduled to end via c-section on February 20, 2015).

5. In late February 2015 or early March 2015, Plaintiff gave birth to her child.

6. After the expiration of the temporary work-from-home accommodation granted by First Data during the Plaintiff's high-risk pregnancy and supported by the Workplace Adjustment Form, Kelly never completed another Workplace Adjustment Form or provided any other notification to First Data of any disability.

7. Plaintiff was unhappy with the policy requiring her to return to work at an office location due to the length of her commute. She alleges that the travel time from her home to the Cincinnati office was approximately one and a half hours to two

5

hours each way. She preferred to stay home with her children. RFA Nos. 9-10, 19-20, 29-30.

8. Soon after the birth of her child, in an email dated May 12, 2015[4] and addressed to Plaintiff's supervisor at the time, Steven Barger, Plaintiff announced her intention to resign from her employment because "the time and costs that it would take to commute into the Blue Ash corporate office (Cincinnati, OH) are prohibitive to my success both professionally and personally." The same email notes her appreciation of her former "positive work life balance" while working from home. (Doc. 1-2 at 47). The letter invites Barger to "have a conversation…to discuss" terms of Plaintiff's departure. (*Id.*) While expressing a clear intention to "part on mutually positive terms," the May 2015 email does not list an effective date for Plaintiff's resignation.

9. After receiving the May 12, 2015 email, Barger allowed Plaintiff to work from home despite the "in-office" policy. Plaintiff elected not to resign at that time.

10. Kelly did not suffer from any disability from March 2015 through 2017 that prevented her from driving to work at First Data's office. RFA Nos. 4-5, 7-8, 14-15, 17-18, 24-25, 27-28.

11. Barger took a leave of absence in November 2016 and never again returned to work at First Data.

12. Beginning with Barger's leave of absence in November 2016, Robin Ording, Vice President of Talent Development for First Data, took over as Kelly's interim supervisor. ECF No. 1 at p. 12, ¶ 92; Doc. 57-5, Affidavit of Robin Ording (Ording

---

[4]Defendant does not dispute the authenticity of either this exhibit to Plaintiff's Complaint or the authenticity of a second email dated November 14, 2017, in which Plaintiff tendered her resignation effective November 30, 2017. (Doc. 1-2 at 106).

6

Aff.), ¶¶ 4-6. Ording assumed permanent leadership of the sales training group, which included Plaintiff, in January 2017.

13. Ording, who was based in New York, began to enforce the pre-existing in-office policy.

14. Kelly did not make any request for a reasonable accommodation based upon any type of medical condition or disability between March 2015 and November 2017, including during Ording's tenure as her supervisor. RFA Nos. 1-3, 11-13, 21-23; Ording Aff., ¶ 8.

15. Had Kelly previously been granted an ongoing accommodation due to a medical disability, the Human Resources Department would have advised Ording of that existing medical accommodation. Ording Aff., ¶ 7.

16. On November 14, 2017, Kelly sent another email resignation letter, this time addressed to Ording. Unlike the May 12, 2015 email to Barger, the 2017 resignation letter included an definite departure date - November 30, 2017. As in the May 2015 email, Kelly requested severance pay and related payments. But in another difference from her 2015 letter, she did not invite Ording to "discuss" any terms of her resignation. Doc. 1, Complaint at 19, ¶150; Doc. 1-2 at 106; Ording Aff., ¶14.

17. When Kelly notified Ording of her resignation, Kelly stated it was due to personal and family issues and her desire to spend more time with her family. Ording Aff., ¶¶ 12-14.

18. Ording suggested that Kelly could instead request a leave of absence or to temporarily work from home, which Kelly declined. Ording Aff., ¶¶ 12-14.

19. Ording accepted Kelly's resignation.

**IV.	Analysis**

To establish a prima face case for failure to accommodate, Kelly must show: (1) she is disabled under the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) First Data knew or had reason to know about her disability; (4) she requested an accommodation; and (5) First Data failed to provide a reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 Fed. Appx. 347, 350 (6th Cir. 2015). In its motion for summary judgment, First Data argues that Kelly cannot prove four of the five elements of her claim. The undersigned agrees.

**A. Failure to Establish a Disability Under the ADA**

Plaintiff's Admissions conclusively establish that she did not suffer from any disability, between March 2015 and her resignation in November 2017, that prevented her from reporting to the Cincinnati office. *See* RFA Nos. 4-5, 7-8, 14-15, 17-18, 24-25, 27-28. Plaintiff does not point to any contrary evidence of record, and her Admissions establish that Defendant is entitled to judgment as a matter of law. "[C]onclusive admissions 'cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record.'" *Goodson v. Brennan*, 688 Fed. Appx. 372, 375-76 (6th Cir. 2017) (quoting *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 244 (5th Cir. 2014)).

In lieu of offering evidence of record, Kelly has attached to her memorandum a portion of what appears to be a single medical record, dated June 12, 2018, from a visit to Christ Hospital.[5] The partial record, which is not authenticated and is not accompanied

---

[5]The record contains redactions and is incomplete.

by any sworn statement, affidavit or declaration as required by Rule 56(c)(1)(A), purports to contain a list of "active problems" that include fatty liver, obesity, high blood pressure disorder, elevated liver function tests, and Adult Situational Stress Disorder ("ASSD"). Each of the referenced "problems" has a "Noted Date"; the "Noted Date" for the ASSD diagnosis is 04/27/2016.

The undersigned recommends that the unauthenticated and otherwise wholly improper "exhibit" not be considered. However, even if the exhibit were to be considered by the Court, it still would not be sufficient to create a genuine issue of material fact sufficient to defeat summary judgment. Contrary to Plaintiff's belief, a mere diagnosis does not constitute a disability. "A medical diagnosis alone is not enough to demonstrate a disability under the ADA." *McNeil v. Wayne County*, 300 Fed. Appx. 358, 361 (6th Cir. 2008); *see also Badri v. Huron Hosp*., 691 F.Supp.2d 744, 757 (N.D. Ohio 2010). Plaintiff has admitted that she did not suffer from a disability and the referenced partial record does not contradict that undisputed fact.

**B. Failure to Establish First Data's Knowledge of Ongoing Disability**

Employers are "not required to speculate as to the extent of [an] employee's disability or the employee's need or desire for an accommodation." *Gannt v. Wilson Sporting Goods Co*., 143 F.3d 1042, 1046-47 (6th Cir. 1998). While "there is no bright-line test for determining when an employee like [Plaintiff] has made such a request, 'at a minimum [s]he must make it clear from the context that [the request] is being made in order to conform with existing medical restrictions.'" *Tennial v. United Parcel Service, Inc*., 840 F.3d 292, 307 (6th Cir. 2016).

Once again, Defendant has carried its burden of showing that it had no knowledge of any alleged disability, because Plaintiff never communicated the fact of her alleged

9

medical needs/disability to Ording or to any other decisionmaker at First Data after March of 2015 through the date that she resigned. *See* RFA Nos. 1-3, 11-13, 21-13, Ording Aff. ¶ 8. The evidence offered by Defendant is uncontested; Plaintiff offers only argument, devoid of citation to contrary evidence of record that would create a genuine issue of material fact on this issue.

For example, Plaintiff argues that "[i]t was made known to Mr. Barger and HR that the Plaintiff was medically diagnosed on 4/27/2016 as having a diagnosed stress disordered of Adult Situational Stress Disorder – ASSD." (Doc. 58 at 3). She further suggests that she provided "documentation" to the supervisors she worked under *prior to* Ording, and was "first granted an accommodation in April of 2015 for complications related to a difficult pregnancy and post-partum depression," prior to the alleged diagnosis with ASSD in April 2016. Apart from the tenuous connection to the relevant time frame, Plaintiff's arguments are devoid of citations to any evidentiary exhibits of record as required under Rule 56.

Last, Plaintiff argues that her November 14, 2017 resignation letter provides notice of both her disability and a request for accommodation.[6] Similar to her May 2015 letter, the November 2017 resignation letter begins with a paragraph complaining that First Data's enforcement of its in-office policy has "proven prohibitive to my success both professionally and personality [sic]." In a second paragraph, Plaintiff states that over the past two years, she has

> lost many precious hours that could have been dedicated to what means the most, my health and family. Lost time in the countless hours of commuting to a building where a handful of people report in to. After working successfully from home for nearly 10 years, the change First Data

---

[6] Although Plaintiff failed to provide any citation to the document in the record, the Court was able to locate the document among the exhibits attached to Plaintiff's complaint.

10

> made has contributed to my numerous health issues with increased stress, financial constraints, and extraordinary burdens on my family.

(Doc. 1-2 at 106). Aside from the fact that this was a letter of resignation providing just over two weeks' notice and inviting no discussion of continued employment, no reasonable employer could have been expected to interpret Plaintiff's vague and fleeting references to "health issues" as a statement of a "disability" or as a request for accommodations.

In sum, Plaintiff's unsupported arguments stand in stark contrast to Defendant's unrefuted evidence that Plaintiff requested no disability-related accommodations between March of 2015 and her resignation in November of 2017. Plaintiff's argument that her April 2016 diagnosis could have been discovered because her medical records were "available to Ording," (Doc. 58 at 3), is not sufficient to create a genuine issue of material fact on whether Plaintiff notified Ording that she was requesting to continue working from home *as a result of a medical disability*. *See generally, Tennial*, 840 F.3d at 306 (holding that the record evidence did not show that plaintiff's supervisors were aware of plaintiff's alleged stress-related disability); *see also Marshall v. Alabama College of Osteopathic Medicine*, 2018 WL 4955211, at *4 (M.D. Ala. Feb. 12, 2018) (summary judgment granted where plaintiff did not refer to his stress as a disorder or disability, did not otherwise claim a disability, and did not state that his request for an accommodation was related to a disability).

### C. Failure to Request an Accommodation During the Relevant Time Frame

For the same reasons, Plaintiff has failed to show that she requested an accommodation relating to any disability during the relevant time period. Without citations to record evidence, Plaintiff baldly asserts that she "formally requested accommodations

11

through her [former] direct supervisor Fricke and then Steve Barger as well as First Data HR Manager James Britt," and "was given an accommodation by both Fricke and Barger." (Doc. 58 at 6). The undersigned can only assume that Plaintiff is referring to the 2014 request by her physician for a temporary limitation on travel during a high-risk pregnancy that ended in the spring of 2015. But there is no evidence of record that Plaintiff made any request for any medically-based accommodations after that time, and her Admissions and Ording's Affidavit provide irrefutable evidence that she did not.

### D.  First Data did not Fail to Provide a Reasonable Accommodation

An employer has no legal obligation to provide an accommodation when none is requested. Here, Plaintiff has admitted that she had no disability and made no request for any accommodation related to a disability between March of 2015 and November of 2017 when she resigned. First Data also has confirmed that it had no knowledge of Plaintiff's alleged disability or any request for a disability-related accommodation during the relevant time frame. Accordingly, First Data had no obligation to provide Plaintiff with a work-from-home accommodation under the ADA.

### E.  Plaintiff's Constructive Discharge Claim

Plaintiff's memorandum in opposition to summary judgment includes argument relating to a constructive discharge claim. As Defendant points out, that claim was previously dismissed by this Court and is no longer at issue in this case.

### V.  Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 57) be **GRANTED** in its entirety, and that this case be **DISMISSED** from the active docket of this Court.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JULIE KELLY, | Case No: 1:19-cv-372 |
| Plaintiff, | Cole, J. |
| v. | Bowman, M.J. |
| FIRST DATA CORPORATION, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).